United States District Court
Southern District of Texas
**ENTERED**
February 26, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| VTX COMMUNICATIONS, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-269 |
| | § | |
| AT&T INC., et al., | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

The Court now considers the "Motion for Remand to State Court and Opposing Removal to Federal Court"[1] (hereafter, "motion for remand") filed by VTX Communications, LLC and its wholly-owned subsidiary VTX Investments, LLC (collectively, "VTX Plaintiffs"), individually and derivatively on behalf of McAllen-Edinburg-Mission SMSA Limited Partnership ("McAllen Partnership"); VTX Plaintiffs and SWT Unregulated Properties, Inc. ("SWT"), individually and on behalf of Texas RSA 18 Limited Partnership ("RSA 18"); and VTX Plaintiffs and Riviera Cellular & Telecommunications, Inc. ("Riviera"), individually and on behalf of Texas RSA 19 Limited Partnership ("RSA 19") (VTX, SWT, and Riviera collectively, "Plaintiffs") (McAllen Partnership, RSA 18, and RSA 19 collectively, "Partnerships"). The Court also considers the response[2] filed by AT&T Inc.; New Cingular Wireless PCS, LLC d/b/a AT&T Mobility ("AT&T Mobility"), individually and in its capacity as General Partner of the Partnerships; AT&T Mobility Corporation; Cricket Communications, LLC; and Cricket Wireless LLC (collectively, "Defendants");[3] Plaintiffs' reply;[4] VTX Plaintiffs' supplemental reply;[5] Defendants' first and

---

[1] Dkt. No. 14.
[2] Dkt. No. 25.
[3] While the Partnerships are listed as Defendants, the term "Defendants" herein does not include the Partnerships. Whether the Partnerships are nominal defendants remains disputed, as discussed in this Order.

1

second notices of supplemental authority;[6] Plaintiffs' response to Defendants' second notice of supplemental authority;[7] and Defendants' reply to Plaintiffs' response to Defendants' second notice of supplemental authority.[8] Finally, the Court considers Plaintiffs' "Alternative Motion for Leave to Amend"[9] (hereafter, "motion for leave to amend"), and Defendants' response;[10] Defendants' "Motion for Leave to Amend Notice of Removal"[11] (hereafter, "motion for leave to amend notice of removal"), Plaintiffs' response,[12] and Defendants' reply;[13] and Defendants' "Motion to Strike Plaintiffs' Amended Complaint [] Improperly Filed Without Leave of Court"[14] (hereafter, "motion to strike"), Plaintiffs' response,[15] and Defendants' reply.[16]

After considering the motions, record, and relevant authorities, the Court **DENIES** Plaintiffs' motion for leave to amend; **GRANTS** Defendants' motion to strike; **DENIES** Plaintiffs' motion for remand; and **DENIES** Defendants' motion for leave to amend notice of removal.

## I.   BACKGROUND

### a.   Factual Summary

---

[4] Dkt. No. 27.

[5] Dkt. No. 29.

[6] Dkt. Nos. 30 (Defendants' Notice of Supplemental Authority in Opposition to Plaintiffs' Motion for Remand to State Court and Opposing Removal to Federal Court"), 31 (Defendants' Second Notice of Supplemental Authority in Opposition to Plaintiffs' Motion for Remand to State Court and Opposing Removal to Federal Court").

[7] Dkt. No. 32.

[8] Dkt. No. 33.

[9] Dkt. No. 20.

[10] Dkt. No. 23.

[11] Dkt. No. 34.

[12] Dkt. No. 36.

[13] Dkt. No. 39.

[14] Dkt. No. 38.

[15] Dkt. No. 41.

[16] Dkt. No. 42.

This case centers on a telecommunications partnerships' dispute over (1) revenue compensation and distributions allegedly withheld from certain limited partners of three different partnerships by the common general partner of the three partnerships; and (2) the authorized scope of the partnerships' network utilization and operation by the general partner and its managing and parent entities.[17] For over thirty years, Plaintiffs, affiliates of rural South Texas telephone companies, have provided through their Partnerships "AT&T-branded wireless networks" in their Partnerships' respective South Texas service areas.[18]

Defendant AT&T Mobility is the general partner of Defendant McAllen Partnership, with VTX Plaintiffs as limited partners.[19] AT&T Mobility is also the general partner and a limited partner of Defendant RSA 18, with VTX Plaintiffs and Plaintiff SWT as limited partners; and the general partner and a limited partner of Defendant RSA 19, with VTX Plaintiffs and Plaintiff Riviera as limited partners.[20] Defendant AT&T Mobility and its parent and manager, AT&T Mobility Corporation, are indirect subsidiaries of Defendant AT&T Inc., the controlling parent of Defendants AT&T Mobility and AT&T Mobility Corporation (collectively, "AT&T Defendants"); and Defendants Cricket Communications, LLC, and Cricket Wireless LLC[21]

---

[17] Dkt. No. 1-2 pp. 66–103 (Plaintiffs' Second Amended Petition).

[18] *Id.* at pp. 67–69, ¶¶ 1–2 (Plaintiffs' Second Amended Petition); Dkt. No. 1 pp. 2–3, ¶ I (Defendants' Notice of Removal).

[19] Dkt. No. 6-1 p. 65, ¶ 5 ("Amendment No. 3 to Agreement Establishing McAllen-Edinburg-Mission SMSA Limited Partnership Amended September 27, 1988 and March 16, 1993" filed under seal).

[20] Dkt. No. 6-2 p. 67, ¶ 7 ("Amendment No. 3 to Agreement Establishing Texas RSA 18 Limited Partnership Amended June 13, 1991 and March 16, 1993" filed under seal); Dkt. No. 6-3 p. 59 ¶ 6 ("Amendment No. 3 to Agreement Establishing Texas RSA 19 Limited Partnership Amended on November 24, 1992" filed under seal).

[21] Plaintiffs and Defendants separately detail AT&T Inc.'s acquisition of "Cricket Wireless." Dkt. No. 1-2 pp. 68, 70 (Plaintiffs' Second Amended Petition); Dkt. No. 5 (Defendants' Motion to Dismiss). Defendants allege in their motion to dismiss "Cricket Communications, LLC and Cricket Wireless LLC [] were indirect affiliates of AT&T Inc. as of March 14, 2014 when AT&T Inc. closed its acquisition of prepaid wireless provider Leap Wireless International Inc. Cricket Communications, LLC has merged into Cricket Wireless LLC and no longer exists." Dkt. No. 5 pp. 12–13. In a footnote, Defendants cite to a Certificate of Merger between Cricket Communications, LLC and Cricket Wireless LLC and request the Court "take judicial notice of this publicly-available document for purposes of this motion." Dkt. No. 5 p. 13, n.11; Dkt. No. 5-1 (September 28, 2017 Certificate of Merger of Cricket Communications, LLC with and into Cricket Wireless LLC). Plaintiffs respond that "[w]hen Plaintiffs filed their Original Petition on October, 2016, the 'Cricket' wireless business was operated out of two entities: Cricket Wireless LLC and Cricket Communications, LLC. Plaintiffs learned for the *first time* through Defendants' Motion to

("Cricket Defendants" or "Cricket") (AT&T Defendants and Cricket Defendants collectively, "AT&T").[22] The Partnerships are Delaware limited partnerships governed by Partnership Agreements providing that Delaware law substantively applies.[23]

Plaintiffs primarily base the instant suit on AT&T's conduct and transactions following AT&T's acquisition of Cricket in 2014.[24] Specifically, Plaintiffs allege AT&T (1) uses the Partnerships' networks to operate Cricket as a separate wholly-owned wireless provider in competition with the Partnerships; (2) withholds the Partnerships' spectrum licenses from the Partnerships and imposes excessive rates for the Partnerships to license the spectrum in unilateral "service agreements;" and (3) fails to allocate or share with the Partnerships certain revenue streams associated with the Partnerships' assets and network and data sales to third parties.[25] In sum, AT&T allegedly continues to wrongfully derogate from its obligations as general partner under the long-standing Partnership Agreements, financially immobilizing the Limited Partners and Partnerships.[26]

### b. Procedural History

---

Dismiss that Cricket Communications, LLC was merged with Cricket Wireless LLC in October 2017. AT&T apparently effected this merger without notifying Plaintiffs as potential creditors through this lawsuit. Nevertheless, Plaintiffs' claims against Cricket Communications, LLC survive and are properly asserted against Cricket Wireless LLC in this lawsuit." Dkt. No. 20 p. 9, ¶ 1 (Plaintiffs' Response to Defendants' Motion to Dismiss). Accordingly, in light of Plaintiffs' apparent lack of objection, the Court takes judicial notice of the certificate of merger.

[22] Dkt. No. 1-2 pp. 67–68; Dkt. No. 5 pp. 12–13, ¶ A.

[23] Dkt. No. 1-2 p. 79, ¶ 26 (Plaintiffs' Second Amended Petition) ("Plaintiffs and [the Defendant Partnerships] are all Delaware limited partnerships with their principal places of business in the State of Texas . . ."); Dkt. No. 5 p. 27 (Defendants' Motion to Dismiss, and, In the Alternative, Motion for Judgment on the Pleadings) ("The Partnerships are Delaware limited partnerships governed by the Partnership Agreements and Delaware's Limited Partnership Acts."); Dkt. No. 6-1 pp. 47–48, ¶ 19.6 (McAllen Partnership Agreement filed under seal); Dkt. No. 6-2 p. 34, ¶ 19.6 (RSA 18 Partnership Agreement filed under seal); Dkt. No. 6-3 p. 34, ¶ 19.6 (RSA 19 Partnership Agreement filed under seal). "In Texas, where parties contractually agree to apply the law of another state, the courts apply the substantive law of the contractually-chosen state but apply the law of the forum state to matters of remedy and procedure." *Albritton v. Acclarent, Inc.*, No. 3:16-CV-03340-M, 2017 WL 6628122, at *6 (N.D. Tex. Dec. 27, 2017). Accordingly, the Court applies the law of the forum state for purposes of this Order because this Order addresses procedural issues.

[24] Dkt. No. 1-2.

[25] *Id.* at pp. 68, ¶ 1; 78, ¶ 18 (Plaintiffs' Second Amended Petition); Dkt. No. 14 pp. 7–8, ¶ 3 (Plaintiffs' Motion for Remand); Dkt. No. 26 p. 4, ¶ 4 (Parties' Joint Discovery Case Management Plan).

[26] Dkt. No. 1-2.

4

Prior to removal to this Court, the parties litigated in Texas state court for nearly three years.[27] Plaintiffs filed an original petition in Texas state district court on October 21, 2016, alleging state law claims for breach of fiduciary duty, breach of the Partnership Agreements, tortious interference, conversion/civil theft, and "civil conspiracy and aiding and abetting" against Defendants.[28] Defendants answered on December 19, 2016.[29] Plaintiffs then filed a first amended petition on October 26, 2018, adding a common law fraud claim.[30]

In the midst of the Texas Thirteenth Court of Appeals' review of Defendants' compelled production of five "privileged" documents,[31] Plaintiffs filed a second amended petition on July 3, 2019.[32] The second amended petition still alleges the same claims of breach of fiduciary duty against AT&T;[33] tortious interference against AT&T, except AT&T Mobility; conversion/civil theft against AT&T; aiding and abetting against AT&T; and fraud against AT&T.[34] Yet, in detailing AT&T's alleged fraudulent conduct and nondisclosure to Plaintiffs regarding dealings affecting the Partnerships' assets, Plaintiffs include new language in the factual background in

---

[27] Cause No. C-4829-16-E, Hidalgo County 275th Judicial District Court.

[28] Dkt. No. 1-2 pp. 1–28.

[29] *Id.* at pp. 29–37.

[30] *Id.* at pp. 38–65.

[31] On December 13, 2018, after conducting an in camera review, the original presiding Texas state district judge granted SWT's and VTX Plaintiffs' separate motions to compel Defendants' production of five "privileged" documents. Cause No. C-4829-16-E, Hidalgo County 275th Judicial District Court (November 13, 2018 order). The documents' identities are ATT041887, ATT00441888, ATT0073651, ATT0088890, and ATT0088891. Defendants appealed this Texas state district judge's order, but the Texas Thirteenth Court of Appeals abated and remanded the action to allow the Texas state successor district judge "the opportunity to consider the rulings at issue . . . [and] determine what ruling should issue, and to render its own order accordingly." *See* Tex. R. App. P. 7.2(b) (providing abatement of a proceeding to allow a successor judge to reconsider the decision of a judge who was a party to an original proceeding but ceases to hold office); No. 13-19-00074-CV, Texas Thirteenth Court of Appeals (February 19, 2019 order). Before the successor judge ruled on the motions, Plaintiffs filed their second amended petition on July 3, 2019, which initiated Defendants' removal to this Court.

[32] Dkt. No. 1-2 pp. 66–103. The parties do not dispute service of Plaintiffs' second amended petition.

[33] Plaintiffs specifically describe AT&T as "New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, individually and in its capacity as General Partner of the Partnerships, and AT&T Mobility's manager, AT&T Mobility Corporation; Cricket Communications, LLC and Cricket Wireless, LLC along with any other AT&T entities controlling Cricket Communications, LLC and Cricket Wireless, LLC (the "Cricket Defendants"), and AT&T Inc., the ultimate controlling parent of the AT&T Defendants and the Cricket Defendants ("AT&T Parent") (collectively AT&T Parent along with AT&T Mobility, AT&T Mobility Corporation and the Cricket Defendants, as applicable, referred to as "AT&T" or the "AT&T Defendants"). Dkt. No. 1-2 p. 67 (Plaintiffs' Second Amended Petition).

[34] Dkt. No. 1-2 pp. 66–103.

their second amended petition: *"[T]he Limited Partners have become aware . . . [that] AT&T has sold data information and/or access to the Partnership networks and usage thereon to agencies of the United States Government, possibly the NSA, without accounting to the Partnerships for those revenues; . . ."*[35]

Citing this singular statement, Defendants, without the consent of the Partnerships, removed this action to this Court on August 2, 2019, alleging federal question jurisdiction exists under Section 802 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1885a(g).[36] Plaintiffs filed the instant motion for remand on August 22, 2019, contesting Defendants' removal on three distinct grounds: (1) timeliness of removal; (2) lack of removal consent by the Partnerships; and (3) applicability of FISA to the instant case.[37] The parties detail their stances on whether Plaintiffs' second amended petition raises a federal question through multiple responses, replies, and notices of supplemental authority.[38]

Defendants also filed a motion to dismiss on August 9, 2019,[39] which is not addressed in this Order. In their August 30, 2019 response, Plaintiffs embedded the instant alternative motion for leave to amend.[40] Plaintiffs did not attach a proposed amended complaint for the Court's review.

On November 8, 2019, three months after filing their notice of removal, Defendants filed the instant motion for leave to amend notice of removal with an attached amended notice of removal, requesting leave to amend their notice of removal "to clarify that this Court also has

---

[35] *Id.* at p. 77, ¶ 17(g) (emphasis added).
[36] Dkt. No. 1. Defendants also removed pursuant to 28 U.S.C. §§ 1331 (federal question), 1367 (supplemental jurisdiction) and 1441 (removal).
[37] Dkt. No. 14.
[38] Defendants responded to Plaintiffs' motion for remand; Plaintiffs replied; VTX Plaintiffs filed a supplemental reply; Defendants filed a first and second notice of supplemental authority; Plaintiffs responded to the second notice of supplemental authority; and Defendants replied to Plaintiffs' response to the second notice of supplemental authority. Dkt. Nos. 25, 27, 29–33.
[39] Dkt. No. 5.
[40] Dkt. No. 20.

jurisdiction" based on 28 U.S.C. § 1442(a)(1), "Federal Officer Jurisdiction."[41] Plaintiffs responded in opposition,[42] and Defendants replied.[43]

On November 25, 2019, without Defendants' consent or leave of the Court, Plaintiffs filed a 70-page "Verified Federal Complaint," eliminating the disputed "federal question" phrase found in the second amended petition.[44] Therein, Plaintiffs provide more detail on the partnerships' structure and relationships with AT&T, but make no mention of non-carrier third parties or AT&T's alleged data exchanges with governmental entities.[45] Two days later, Defendants filed the instant motion to strike.[46] Plaintiffs responded,[47] and Defendants replied.[48]

The motions are now ripe for review. The Court begins with Plaintiffs' motion for leave to amend and Defendants' motion to strike because such determines the operative pleading governing remand. The Court then turns to Plaintiffs' motion for remand to analyze whether remand is procedurally or substantively proper. Finally, the Court addresses Defendants' motion for leave to amend notice of removal because Defendants seek to plead an alternative jurisdictional basis.

## II.  AMENDMENT OF PLAINTIFFS' STATE COURT SECOND AMENDED PETITION

Through Plaintiffs' motion for leave to amend; Plaintiffs' proposed amended complaint; and Defendants' motion to strike, the parties ultimately request the Court determine whether Plaintiffs' second amended petition or Plaintiffs' proposed amended complaint controls this action. The Court discusses each of these filings, beginning with the Verified Federal Complaint.

---

[41] Dkt. Nos. 34, 34-1.
[42] Dkt. No. 36.
[43] Dkt. No. 39.
[44] Dkt. No. 37.
[45] *Id.*
[46] Dkt. No. 38.
[47] Dkt. No. 41.
[48] Dkt. No. 42.

As noted, Plaintiffs filed the "Verified Federal Complaint" without Defendants' consent or leave of the Court.[49] Plaintiffs assert they filed the "Verified Federal Complaint" "in order to comply with" the "[p]arties' agreement in the Proposed Agreed Scheduling Order that the deadline to file amended pleadings would be November 25, 2019."[50] Plaintiffs argue "Plaintiffs' request to file an amended complaint has been known by Defendants for several months, and Defendants had an adequate opportunity to oppose that action."[51] Defendants argue Plaintiffs' "Verified Federal Complaint" "may not be filed as a matter of course [pursuant to Rule 15(a)(1)] . . . [and] [b]ecause Plaintiffs have obtained neither written consent nor leave of court, the Amended Complaint has no legal effect and should be stricken."[52]

Federal Rule of Civil Procedure 15(a) provides a party the opportunity to amend a pleading once within 21 days after serving the pleading or, if the pleading requires a responsive pleading, 21 days after service of a responsive pleading or 21 days after service of a Rule 12(b), (e), or (f) motion, whichever is earlier.[53] Otherwise, a party may amend a pleading only with the Court's leave or with the opposing party's written consent.[54]

Here, Plaintiffs filed their "Verified Federal Complaint" more than 21 days after serving their second amended petition. Plaintiffs did not seek leave of the Court and did not obtain Defendants' written consent to amend their complaint. Thus, none of the instances warranting amendment as a matter of course are present and Plaintiffs require leave of Court. Therefore, the Court considers the perfunctory request for leave embedded in Plaintiff's response to Defendant's motion to dismiss.[55]

---

[49] Dkt. No. 37.
[50] Dkt. No. 41 p. 3, ¶¶ 5, 7.
[51] *Id.* at p. 6, ¶ 13.
[52] Dkt. No. 38 p. 3, ¶ 4.
[53] Fed. R. Civ. P. 15(a)(1).
[54] *Id.* 15(a)(2).
[55] Motion to Dismiss vs. Remand.

In their response to Defendants' motion to dismiss, Plaintiffs request, "[i]f [] the court has any concern about the nature or sufficiency of Plaintiffs' pleading, and subject to [Plaintiffs' motion for remand], Plaintiffs hereby alternatively request that the Court grant them leave to amend prior to any dismissal."[56] Plaintiffs continue, "to the extent that there is even a partial factual pleading defect, it is as a result of Defendants' refusal to comply with their discovery responsibilities during the State court litigation . . . to the extent Plaintiffs have not pled specific facts, it is because Defendants are in possession of the information, and discovery is still outstanding."[57] Defendants argue Plaintiffs' motion "should be denied because any amendment would be futile . . . if Plaintiffs were permitted to file an amended complaint, it would still contain impermissible and confusing group allegations that fail to 'state a claim to relief that is plausible on its face' and would not survive a motion to dismiss."[58]

In the absence of amendment as a matter of right, Rule 15(a)(2) provides that the Court should freely give leave to amend "when justice so requires."[59] Leave is not required where "the movant 'contend[s] that his pleadings sufficed to state a [] claim' . . . and 'fail[s] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies.'"[60] In other words, "a bare bones motion to amend remains futile" where it lacks the proposed additional facts.[61] Moreover, where a movant requests leave to amend to cure

---

[56] Dkt. No. 20 p. 48, ¶ 88.

[57] *Id.* at p. 50, ¶ 92.

[58] Dkt. No. 23 p. 30, ¶¶ 42–43.

[59] Fed. R. Civ. P. 15(a)(2); *SGK Properties, L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944 (5th Cir. 2018), *cert. denied sub nom. SGK Properties, L.L.C. v. U.S. Bank Nat. Ass'n*, 139 S. Ct. 274, 202 L. Ed. 2d 135 (2018) (citing *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)) (noting that the language of Rule 15(a)(2) "evinces a bias in favor of granting leave to amend" and "a district court must possess a 'substantial reason' to deny a request").

[60] *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017), *cert. denied,* 138 S. Ct. 687 (2018) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)) (where appellant's motion to amend stated "[i]f the Court is inclined to dismiss any portion of Plaintiff's complaint for failure to state a claim, Plaintiff requests leave of court to amend his complaint to cure the alleged pleading deficiencies identified by Defendants . . . .").

[61] *Id.* at 295.

9

pleadings identified as deficient by a defendant in anticipation of the Court's dismissal, the Fifth Circuit has "little difficulty affirming [the] district court's denial of leave to amend."[62]

At the time of the request, Plaintiffs' motion failed to apprise the Court of other facts Plaintiffs sought to incorporate in an amended complaint. In a similar case, the Fifth Circuit held where a party "alternatively" requests leave to amend in the event pleadings are legally deficient, amendment on this basis alone is improper.[63]   Plaintiffs' motion directly mirrors the "alternative" pleading language the Fifth Circuit found insufficient to warrant leave to amend. On this basis, the Court could have denied Plaintiffs' motion for leave to amend.

Nonetheless, the Court has now Plaintiffs' "Verified Federal Complaint"[64]—filed nearly three months later—thus the Court now considers it as a "proposed amended complaint."

The Fifth Circuit has stated that "a district court must possess a 'substantial reason' to deny a request for leave to amend."[65] In determining whether to allow leave to amend a pleading, courts examine whether there is (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[66] Absent such factors, the Court should freely grant the requested leave.[67] Nonetheless, the decision whether to grant leave to amend lies within the Court's sound discretion.[68]

Plaintiffs argue none of the factors apply here.[69] Defendants argue "the Court should not retroactively grant leave to amend because Defendants will be unduly prejudiced and the

---

[62] *Id.* at 294.
[63] *Id.* at 295.
[64] Dkt. No. 37.
[65] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quoting *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)).
[66] *SGK Properties, L.L.C.*, 881 F.3d at 944 (citing *Smith*, 393 F.3d at 595).
[67] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[68] *Smith*, 393 F.3d at 595 (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).
[69] Dkt. No. 20 p. 50.

Amended Complaint is likely futile in any event."[70] The Court finds undue delay, Plaintiffs' bad faith, and futility of the amendment weigh in favor of denying Plaintiffs leave to amend.

The Court considers first the issue of bad faith. As the Court has noted, Plaintiffs did not file their Verified Complaint until November 2019, following Defendant's filing of their motion to amend notice of removal. The primary difference between the second amended petition and Verified Complaint is the deletion of the "federal question" language. The Fifth Circuit recognizes a movant seeks amendment in bad faith where a movant intends "to defeat federal jurisdiction" and "forum shop[]."[71] Furthermore, a proposed amended complaint that "does not clarify the jurisdiction facts at the time of removal [and] attempts instead to amend away the basis for federal jurisdiction," does not "divest the federal court of jurisdiction."[72] Rather, "a complaint amended post-removal cannot divest a federal court of jurisdiction . . . the general rule [is] that removal jurisdiction should be determined on the basis of the state court complaint at the time of removal, and that a plaintiff cannot defeat removal by amending it."[73]Here, Plaintiffs filed their perfunctory motion for leave to amend in response to Defendants' motion to dismiss, yet it is clear that Plaintiffs' proposed amended complaint is an attempt to divest this Court of jurisdiction. Thus, the Court finds it was filed in bad faith.

Furthermore, amendment of Plaintiffs' petition would cause undue delay. "Delay is 'undue' when it places an unwarranted burden on the court or when the [movant] has had

---

[70] Dkt. No. 38 p. 3 ¶ 5.

[71] *Bouie v. Equistar Chemicals LP*, 188 F. App'x 233, 238 (5th Cir. 2006).

[72] *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995).

[73] *Id.* at 264–65 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("The second amended complaint should not have been considered in determining the right to remove, which in a case like the present one [removal based on diverse defendant's claim that controversy as to it was separable from claims against nondiverse defendants] was to be determined according to the plaintiffs' pleading at the time of the petition for removal"); *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 592 (5th Cir. 2015) ("[A] post-removal amendment to a petition that deletes all federal claims, leaving only pendent state claims, *does not* divest the district court of its *properly triggered* subject matter jurisdiction. In a jurisdictional inquiry, we look at the complaint as it existed at the time the petition for removal was filed, regardless of any subsequent amendments to the complaint.") (citations omitted).

previous opportunities to amend."[74] Plaintiffs seek this third amendment days after requesting the Court remand the case; nearly one month after Defendants removed the case to this Court and filed their motion to dismiss; nearly two months after filing their second amended petition; and over three years after the commencement of this action. Defendants note Plaintiffs' proposed amended complaint "drops a party, adds new allegations, and completely reworks the existing allegations."[75] Considering the existing and anticipated progress of this case, amendment would place this case back even further than mid-2019, when Plaintiffs filed the second amended petition.

For these reasons, the Court **DENIES** Plaintiffs' motion for leave to amend and **STRIKES** Plaintiffs' "Verified Federal Complaint." Plaintiffs' second amended petition remains the operative pleading. The Court turns to Plaintiffs' motion for remand.

### III. MOTION FOR REMAND

Plaintiffs served Defendants with their second amended petition on July 3, 2019.[76] Defendants removed to this Court on August 2, 2019.[77] Plaintiffs filed the instant motion for remand on August 22, 2019, arguing removal is both procedurally and substantively defective.[78] The parties do not dispute whether Plaintiffs' motion for remand was timely.

A plaintiff may object to removal "on the basis of any defect in removal procedure" within thirty days.[79] However, the thirty day time limit does not apply to jurisdictional defects, providing district courts the authority to remand a case any time before final judgment where a district court lacks subject matter jurisdiction.[80] As "well-settled principle," "litigants can never

---

[74] *Estate of Oliva ex rel. McHugh v. New Jersey,* 604 F.3d 788, 803 (3d Cir. 2010) (citation omitted).
[75] Dkt. No. 38 p. 3, ¶ 4.
[76] Dkt. No. 1-2.
[77] Dkt. No. 1.
[78] Dkt. No. 14.
[79] 28 U.S.C. § 1447(c); *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 69 (1996).
[80] 28 U.S.C. § 1447(c); *Caterpillar,* 519 U.S. at 69.

consent to federal subject matter jurisdiction, and the lack of subject matter jurisdiction is a defense that cannot be waived."[81]

Plaintiffs argue remand is proper because: (1) removal was untimely; (2) removal required consent from the Partnerships; and (3) FISA does not provide for removal of the instant case. Specifically, Plaintiffs argue Defendants' removal was untimely because "the removal clock began to run on October 26, 2018, when Plaintiffs' First Amended Petition was filed" or began to run on June 4, 2019, the date of a letter between the Chief Executive Officer of the VTX Plaintiffs and the Director of Financial Analysis for AT&T Mobility regarding "Various Issues Regarding Partnership Operations and Communications" (the "Letter").[82] Plaintiffs further request the Court remand the case because Defendants' removal lacks consent of the Partnerships. Defendants maintain FISA authorizes removal of this case, and "Plaintiffs' Second Amended Petition triggered the removal clock, because it is Plaintiffs' first and only pleading to allege Federal Question Claims."[83] Defendants further argue the Partnerships are "nominal defendants that need not consent to removal."[84]

The Court begins with addressing which of the three documents at issue controls the removal clock and whether Defendants' removal was timely. The Court then evaluates whether the Partnerships' consent was required for removal. Finally, the Court considers whether FISA authorizes jurisdiction.

### a. Timeliness of Removal

While maintaining removal is improper and unfounded, Plaintiffs argue the case became removable if at all upon Defendants' receipt of Plaintiffs' October 26, 2018 first amended

---

[81] *Gonzalez v. Guilbot*, 255 F. App'x 770, 771 (5th Cir. 2007) (citing *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996)).
[82] Dkt. No. 14; Dkt. No. 14-1 pp. 2–8 (the Letter).
[83] Dkt. No. 25 p. 27, ¶ 1.
[84] *Id.* at p. 30, ¶ C.

petition or at the latest the June 4, 2019 Letter. Defendants argue the case became removable on July 3, 2019 when Plaintiffs filed the second amended petition. The Court finds the date of service of Plaintiffs' second amended petition controls the date of removal.

Determining whether a defendant timely removed a case is a two-step test.[85] A defendant may file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."[86] "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."[87]

### i.  October 26, 2018 First Amended Petition

Regarding the FISA allegations, Plaintiffs allege they "have only recently become aware that the government may have been a recipient of data information and/or access to Partnership networks. It can be safely assumed that Defendants [] have always been aware that the government was purchasing from Defendants data information and/or access to Partnership networks. Therefore, at the very latest, the removal clock began to run on October 26, 2018, when Plaintiffs' First Amended Petition was filed."[88] In turn, Defendants argue "[t]he First Amended Petition contains no Federal Question Claims."[89]

---

[85] *Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 297 (5th Cir. 2017) (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992)) ("In essence, when read as a whole, § 1446(b) provides a two-step test for determining whether a defendant timely removed a case.").
[86] 28 U.S.C. § 1446(b)(1).
[87] 28 U.S.C. § 1446(b)(3).
[88] Dkt. No. 14 p. 15, ¶ 32.
[89] Dkt. No. 25 p. 27, ¶ 38.

14

"[T]he defendant's subjective knowledge cannot convert a case into a removable action."[90] Thus, contrary to Plaintiffs' allegations, Defendants' "assumed" knowledge of government sharing for the entirety of the case does not trigger removal. Furthermore, Plaintiffs' first amended petition and Plaintiffs' second amended petition are distinct from each other. Plaintiffs' first amended petition lacks any allegation against Defendants for selling information to government agencies, as referenced in Plaintiffs' second amended petition. Thus, it is not ascertainable from Plaintiffs' first amended petition that the case was removable at that time.

### ii.  *June 4, 2019 Letter*

Alternatively, Plaintiffs argue the Letter counts as "other paper" providing notice for removal, and that June 4, 2019 started the removal clock, provided the case is even removable.[91] On June 4, 2019, Dave Osborn, Chief Executive Officer of the VTX Plaintiffs, sent Eric Wages, Director of Financial Analysis for AT&T Mobility, the Letter discussing among several things Mr. Wages' deposition testimony in an unrelated Delaware litigation that alleges "AT&T is generating massive amounts of revenue from the federal government from the sale of data to the government as well as other revenue streams effectuated through AT&T's 'data lake.'"[92] Mr. Osborn then questions Mr. Wages how the Partnerships were benefitting financially from "this new activity."[93] While Mr. Osborn did indicate "the requests in this letter could potentially pertain to the lawsuit," Mr. Osborn then states it "is not my intent that this letter be some form of discovery in the lawsuit." He concludes with saying he "hope[s] AT&T Mobility will use this opportunity to respond and make full disclosure of these and all other relevant matters in keeping

---

[90] *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 612 (5th Cir. 2018).
[91] Dkt. Nos. 14 (Plaintiffs' Motion for Remand), 25 (Defendants' Response), 27 (Plaintiffs' Reply).
[92] Dkt. No. 14-1 pp. 6–8. Mr. Osborn copied Gary Gilmer, whose role at SWT is unclear, and Bill Colston, Jr., whose role with Riviera is unclear. Dkt. No. 25 p. 29, ¶ 44 (where Defendants argue, "[t]he fact that the Business Letter referenced a deposition transcript in unrelated Delaware litigation—to which Plaintiffs are not parties— regarding information allegedly sold to the NSA is irrelevant and did not start the removal clock in this litigation.").
[93] Dkt. No. 14-1 p. 7.

with its contractual and fiduciary obligations of complete candor and transparency to its partners—regardless of [the instant] on-going lawsuit."[94] On June 5, 2019, Jay Lea with Naman Howell, the firm representing VTX Plaintiffs, sent this letter to Marty Brimmage, the attorney in charge for Defendants.[95]

Plaintiffs argue Defendants should have removed within 30 days of receipt of the Letter because the "Letter clearly conveys Plaintiffs' concerns that AT&T is not properly accounting for and sharing revenues with the Partnerships and that some of those revenues may be coming from the sale of data information to the United States government, including, potentially, the National Security Agency."[96] Defendants argue the Letter "is a request from VTX, outside the litigation process, to the General Partner for Partnership information. Although the Business Letter copied Defendants' counsel, the letter repeatedly states that the information requested is outside the specter of the ongoing lawsuit and asks Mr. Wages to respond pursuant to 'Section 7.3(b) of the Partnership Agreements'—which allows the Limited Partners to demand Partnership information."[97] Defendants argue the Letter "is inapplicable because claims raising a federal question must be present on the face of a 'well-pleaded complaint,' not 'other paper' . . . [i]n federal question cases—such as this dispute— 'other paper' can be used only to clarify an existing claim, not to create an entirely new claim that is absent from a plaintiff's well-pleaded complaint."[98] The Court finds the Letter did not start the removal clock because it is not an "other paper" from which removal was ascertainable.

"The information supporting removal in a copy of an amended pleading, motion, order or other paper under § 1446(b)(3) must be unequivocally clear and certain to start the time limit

---

[94] *Id.* at pp. 3, 7.
[95] *Id.* at p. 10.
[96] Dkt. No. 14 p. 16, ¶ 34.
[97] Dkt. No. 25 p. 11, ¶ 10.
[98] *Id.* at pp. 27–29, ¶¶ 38, 43.

running."[99] "'[O]ther paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction."[100] The Letter neither contains "unequivocally clear and certain" information supporting removal nor provides notice of any changed circumstances supporting federal jurisdiction. The Letter does not present a formal discovery request, characterize a deposition transcript taken for the instant suit, assert a new cause of action, or constitute direct correspondence between counsel.[101] The Letter makes clear VTX intends to make certain requests of AT&T Mobility directly "regardless of [the instant] on-going lawsuit." Thus, the Letter is not an "other paper" and removal is not ascertainable from the Letter.

### iii.   Second Amended Petition

Plaintiffs assert the "Letter references the potential sale of information to the United States government in the same amount of detail as Plaintiffs' Second Amended Petition."[102] Defendants argue "[o]nly Plaintiffs' Second Amended Petition presents a federal question on the face of the pleading."[103] Defendants point out Plaintiffs' "damages claims for Defendants' purported failure to 'appropriately share those revenue streams with the Partnerships' were not and could not have been asserted in the First Amended Petition, as Plaintiffs allegedly only just discovered the basis for these claims."[104] Defendants argue "if these Federal Question Claims had been present in the First Amended Petition, there would have been no need for Plaintiffs to

---

[99] *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 608–09 (5th Cir. 2018) (citations omitted) (internal quotations omitted).

[100] *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000).

[101] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("[An] affidavit, created entirely by the defendant, is not 'other paper' under section 1446(b) and cannot start the accrual of the 30–day period for removing . . . [but] a transcript of the deposition testimony is 'other paper.'"); *Addo*, 230 F.3d 759 (collecting cases) ("Holding that a post-complaint letter, which is not plainly a sham, may be 'other paper' under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit.").

[102] Dkt. No. 14 p. 17, ¶ 35.

[103] Dkt. No. 25 pp. 27–28, ¶ 40.

[104] *Id.* at p. 28, ¶ 41.

17

add 'dozens of pages' of allegations to the Second Amended Petition based on information that Plaintiffs had not previously discovered . . . [] under the well-pleading complaint rule it is the Second Amended Petition . . . that contains the FISA allegations giving rise to federal question jurisdiction."[105] The Court finds that the Second Amended Petition provides information for the first time that the case is removable. The Court discusses whether the allegations give rise to federal question jurisdiction below.

Accordingly, because Defendants removed the case within 30 days of their receipt of Plaintiffs' second amended petition, removal was timely. The Court now addresses whether removal was procedurally defective where Defendants did not obtain the consent of the Partnerships for removal.

### b.  Requisite Consent of Partnerships

Plaintiffs argue "because Defendants, to the extent of their role as general partner, exercise complete domination over the running of the Partnerships, the Partnerships are adverse to the Limited Partner Plaintiffs and therefore are properly aligned as defendants."[106] Defendants argue  "Plaintiffs have established no cause of action against the Partnerships, which is necessary for the Partnerships to be 'indispensable' to this dispute."[107] Defendants further argue the Partnerships are nominal defendants, and their consent for removal is unnecessary, because "their role is restricted to that of a depository or stakeholder, e.g. one who has possession of the funds which are the subject of litigation and are joined purely as a means of facilitating collection."[108] The Court finds removal consent of the Partnerships was not required because the Partnerships are nominal defendants.

---

[105] *Id.* ¶ 42.
[106] Dkt. No. 14 pp. 18–19, ¶ 39.
[107] Dkt. No. 25 p. 33, ¶ 52.
[108] Dkt. No. 1 p. 5, n.3.

18

"When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."[109] "To establish that non-removing parties are nominal parties, the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court."[110] The "test for determining a nominal party [] applies equally whether diversity or federal question jurisdiction is the mode of removal."[111]

Plaintiffs rely on *Bankston v. Burch*, where a limited partner of a limited partnership sued the general partner in Texas state court, and after the general partner removed the case to federal court, the district court proceeded with trial despite the general partner's contest as to subject matter jurisdiction before trial.[112] The limited partner's claims "were entirely or almost entirely derivative of the partnership's rights and interests" where the limited partner "sought an accounting, dissolution of the partnership, removal of the general partner, a temporary injunction against the general partner's dissipation of partnership assets, declaratory judgment regarding certain expenditures, and punitive damages."[113] Where the partnership's joinder defeated diversity jurisdiction, *Bankston* held "the partnership is even more than the real party in interest––it is an *indispensable* party without whom the lawsuit should not have gone forward."[114]

Defendants argue *Bankston* is distinguishable from this case because Plaintiffs "have done the opposite [of the *Bankston* limited partner], expressly requesting that all relief go to the Limited Partners, rather than the Partnerships," and the controlling Delaware law does not

---

[109] 28 U.S.C. § 1446.
[110] *Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991).
[111] *Id.* at 71–72.
[112] 27 F.3d 164 (5th Cir. 1994).
[113] *Moss v. Princip*, 913 F.3d 508, 516 (5th Cir. 2019) (discussing *Bankston v. Burch*, 27 F.3d 164 (5th Cir. 1994)).
[114] *Bankston*, 27 F.3d at 167 (but also noting "4 Bromberg & Ribstein § 15.05(g)(7), comment[ed] that a limited 'partnership is usually an indispensable party but may be named as a nominal defendant in a derivative suit' brought by a limited partner.").

19

require claims be brought derivatively like the Hawaii and New York law involved in *Bankston*.[115] Instead, Defendants rely on *Moss v. Princip*,[116] which distinguished *Bankston*.

In *Moss*, two plaintiff partners sued two defendant partners and the partnership. The defendant partners removed to federal court where the case proceeded to trial. After an adverse jury verdict, the defendant partners sought dismissal claiming the defendant partnership destroyed diversity since the citizenship of the plaintiff partners was also the citizenship of the defendant partnership. In response, the plaintiff partners argued the defendant partnership was a dispensable party which could be dismissed, thus preserving diversity jurisdiction.

The *Moss* Court held a partnership is a dispensable party where "the partnership's [a]re fully represented by each of its partners, all of whom [a]re before the court."[117] *Moss* further held:

> Although the plaintiffs raised claims for damages derivative of the partnership's rights, the partnership's presence in the suit was not necessary to protect the partnership or any of the parties from prejudice. The partnership *was a party* throughout the litigation, but its role was purely passive, reflecting the reality that its interests did not diverge from the interests represented by the four individual partners and that its presence played no distinct role in the outcome of the suit against the individuals.[118]

Plaintiff maintains "*Moss* cannot be applied dogmatically to conclude that partnerships are *nominal* parties in all suits in which all partners are also parties. *Moss* did not hold such partnerships are *nominal* parties. Rather, [*Moss* concluded a partnership] was a *dispensable* party distinctive from a *nominal* party."[119] The Court agrees with this broad proposition; however, the Court finds *Moss* persuasive here.

---

[115] Dkt. No. 25 p. 38, ¶ 63.
[116] 913 F.3d 508 (5th Cir. 2019).
[117] *Id.* at 518–19.
[118] *Id.* at 519.
[119] Dkt. No. 27 pp. 18–19, ¶ 25.

In the instant case, as in *Moss*, the Partnerships are fully represented by their general and limited partners in this action. In fact, the Partnerships are represented as both Plaintiffs and Defendants. This action seeks to compensate the Partnerships' partners for alleged revenues due without disrupting or disturbing the Partnerships' assets or networks, the clear source of revenue. "[T]he key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way."[120]  Plaintiffs fail to provide the Court with a substantive argument as to why *Moss* would not apply, and only put forth an attempt to circumvent the crux of *Moss* by highlighting the terms "dispensable" and "nominal." Plaintiffs, however, fail to distinguish the considerations set out in *Moss*. Furthermore, as already noted, the Partnerships are also represented by Plaintiffs in this case. Thus, the interest of the Partnerships is protected by Plaintiffs.

The Court also finds a Fourth Circuit opinion persuasive here: "All these tests—in discussing indispensable parties, necessary parties, or what removing parties must show about non-consenting parties—may provide useful insights but they have strayed from the fundamental inquiry. They over-massage what ought to be a straightforward examination of the meaning of the word "nominal" and the reasons for having the nominal party exception. Nominal means simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal."[121] Because the Partnerships have no apparent stake in this litigation, which concerns a compensation dispute among the partners of the Partnerships, the Court finds the Partnerships are nominal defendants and Defendants did not need the Partnerships' consent for removal.

---

[120] *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013).
[121] *Id.*

Accordingly, Defendants' removal was procedurally proper. The Court turns to its analysis of whether Defendants' removal was substantively proper.

### c. Removal Under FISA

Whether removal was substantively proper turns on whether this case falls within the FISA statute providing for removal. Section 802 of the Foreign Intelligence Surveillance Act provides that "[a] civil action against a person for providing assistance to an element of the intelligence community that is brought in a State court shall be deemed to arise under the Constitution and laws of the United States and shall be removable under section 1441 of Title 28."[122] Section 801 further defines "assistance" to mean "the provision of, or the provision of access to, information (including communication contents, communications records, or other information relating to a customer or communication), facilities, or another form of assistance."[123]

Plaintiffs pleaded in the factual background of their second amended petition that "the Limited Partners have become aware . . . [that] AT&T has sold data information and/or access to the Partnership networks and usage thereon to agencies of the United States Government, possibly the NSA, without accounting to the Partnerships for those revenues . . . ."[124] This allegation is incorporated as a basis for Plaintiffs' damages and prayer for equitable relief.[125] Defendants assert that Defendants' sale of data information to United States government agencies is "providing assistance to an element of the intelligence community" and therefore provides the basis for removal to this Court.[126] In contrast, Plaintiffs contend that the statute is "limited to actions *for providing assistance*" and that the cause of action at issue must *itself* be

---

[122] 50 U.S.C. § 1885a(g).
[123] *Id.* § 1885(1).
[124] Dkt. No. 1-2 at p. 77, ¶ 17(g).
[125] Dkt. No. 1-2 at p. 99–100, ¶¶ 100–05.
[126] Dkt. No. 1 p. 6.

"for providing assistance."[127] Plaintiffs maintain that, because Plaintiffs' cause of action is for failure "to properly allocate revenues or account to Plaintiffs for income Defendants have derived from Partnership assets," there has therefore been no "violation which might implicate the Act" and furnish grounds for removal.[128] Although not explicitly stated, Plaintiffs appear to argue that since they do not seek to prevent disclosure, but simply seek compensation for the provision of information to the NSA, Section 802 does not govern. Defendants reply that, "when FISA is read in full, it is clear that preventing state court litigation involving disclosure of information about assistance to the intelligence community, not just state court lawsuits seeking punishment for such alleged assistance, is what Section 802—particularly the removal provision in Section 802(g)—was designed to address."[129]

The Court agrees with Defendants and holds that Plaintiffs' reading of Section 802 constrains the statute more than its language will allow. The Court "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case" and the inquiry ceases if the statutory language provides a clear answer.[130] Where congressional intent is clear, this Court "must give effect to the unambiguously expressed intent of Congress."[131] Using the statutory definitions, a civil action "for providing—or providing access to—information, facilities, or another form of assistance to the National Security Agency (NSA) or any other element of the intelligence community" arises under the laws of the United States and is removable.[132] The statute does not limit Section 802 to those first party cases seeking to prevent disclosure. As pled here, Plaintiffs allege Defendants have "sold data

---

[127] Dkt. No. 14 pp. 23–24, ¶¶ 51, 54.
[128] *Id.* at pp. 23–24, ¶ 54.
[129] Dkt. No. 25 p. 15, ¶ 18.
[130] *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quotation omitted).
[131] *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).
[132] *See* 50 U.S.C. §§ 1885, 1885a(g).

information and/or access to the Partnership networks and usage thereon to agencies of the United States Government, possibly the NSA."[133] In short, Plaintiffs bring this civil action partly for Defendants' provision of assistance to the intelligence community. That is all that is needed. The Court finds a review of legislative history unnecessary because the plain language of the FISA statute encompasses this action and provides for removal to this Court.

In sum, the Court finds Defendants' removal was procedurally and substantively proper. Defendants timely removed and did not require the consent of the Partnerships. Defendants also appropriately removed the case to this Court on the basis of FISA. Accordingly, the Court **DENIES** Plaintiffs' motion for remand. The Court thus denies as moot Plaintiffs' request for attorneys' fees and other costs.[134]

### IV. AMENDMENT OF DEFENDANTS' NOTICE OF REMOVAL

Defendants seek leave of the Court to amend their notice of removal to plead an alternative jurisdiction basis of "Federal Officer Jurisdiction" under 28 U.S.C. § 1442(a)(1).[135] Defendants argue leave to amend is proper, that no retroactive jurisdiction is being created because "the facts and legal theories in the notice of removal and case file support federal officer jurisdiction," and that Plaintiffs would not be prejudiced by such amendment.[136] Defendants continue "[a] claim implicating FISA Section 802 necessarily implicates Federal Officer Jurisdiction."[137] Plaintiffs argue "Section 1653 permits only amendments where a pleading is technically defective . . . 'it would be a substantial injustice to allow Defendants to remove a case

---

[133] Dkt. No. 1-2 p. 77, ¶ 17(g).
[134] Dkt. No. 14 p. 26.
[135] Dkt. No. 34; Dkt. No. 39 p. 3, ¶ 3 (where Defendants argue the "proposed amendment merely states an alternative basis of jurisdiction on previously alleged facts and legal theories").
[136] Dkt. No. 34.
[137] *Id.* at p. 9, ¶ 14.

on one ground and then, when faced with a serious challenge to that ground, attempt to justify removal on an entirely different, and untimely, ground.'"[138]

"A grant or denial of a motion to amend pleadings is an exercise of discretion by the district court."[139] Outside of the 30-day removal period, Defendants must seek leave to amend a notice of removal pursuant to 28 U.S.C. § 1653, which provides "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The Fifth Circuit has characterized these defects as technical defects, and upon liberally construing § 1653, permits a district court to "allow a party to cure technical defects," such as to specifically allege a party's citizenship.[140] "[W]here the notice of removal is procedurally defective, 28 U.S.C. § 1653 cannot be used as a means to cure what is otherwise a substantial defect in the removal proceedings."[141] "Section 1653 provides a method for curing defective *allegations* of jurisdiction. It is not to be used to create jurisdiction retroactively where it did not previously exist."[142] "[C]ourts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis."[143]

The Court finds Defendants' existing removal jurisdiction not defective because jurisdiction under FISA applies in this case. Accordingly, the Court declines to permit Defendants to add an additional jurisdictional basis where no jurisdictional defect exists or needs curing. The Court **DENIES** Defendants' motion.

## V. CONCLUSION

---

[138] Dkt. No. 36 p. 4, ¶ 7 (citing *Hinojosa v. Perez*, 214 F. Supp. 2d 703, 707 (S.D. Tex. Feb. 26, 2002).

[139] *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000).

[140] *See Getty Oil Corp. v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1258 n.5 (5th Cir. 1988); *Whitmire,* 212 F.3d at 887–88; *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 66 (5th Cir. 2010).

[141] *Moody v. Commercial Ins. Co. of Newark, New Jersey*, 753 F. Supp. 198, 201 (N.D. Tex. Dec. 6, 1990).

[142] *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986) (citing *Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 512 (5th Cir.1985)) (section 1653 applies to technically inadequate allegation of jurisdiction, not new causes of action).

[143] *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 301 (5th Cir. 2019), *as revised* (Aug. 23, 2019) (Haynes, J., dissenting) (quoting *Wood v. Crane Co.*, 764 F.3d 316, 323 (4th Cir. 2014)).

The Court **DENIES** Plaintiffs' motion for leave to amend;[144] **GRANTS** Defendants' motion to strike;[145] and **STRIKES** Plaintiffs' "Verified Federal Complaint."[146] The Court thus **DENIES AS MOOT** Defendants' "Motion to Dismiss Plaintiffs' Amended Complaint and in the Alternative, Motion for Judgment on the Pleadings."[147] The Court further **DENIES** Plaintiffs' motion for remand;[148] and **DENIES** Defendants' motion for leave to amend notice of removal.[149] In light of this Order, Defendants' "Motion to Dismiss and, in the Alternative, Motion for Judgment on Pleadings"[150] remains pending. As Plaintiffs have provided responsive briefings, the Court **DENIES AS MOOT** Plaintiffs' "Emergency Motion to Stay Response to and Submission of Defendants' Motion to Dismiss, and, in the Alternative, Motion for Judgment on the Pleadings."[151]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 26th day of February, 2020.

_____
Micaela Alvarez
United States District Judge

---

[144] Dkt. No. 20.
[145] Dkt. No. 38.
[146] Dkt. No. 37.
[147] Dkt. No. 40.
[148] Dkt. No. 14.
[149] Dkt. No. 34.
[150] Dkt. No. 5.
[151] Dkt. No. 18.