IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| VTX COMMUNICATIONS, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-00269 |
| | § | |
| AT&T INC., et al. | § | |
| | § | |
| Defendants. | § | |

**AT&T DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' NEW AMENDED PETITION [ECF 54] AND IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

GLOSSARY OF KEY DEFINED TERMS ..... iv

I. INTRODUCTION ..... 1

II. APPLICABLE SUBSTANTIVE LAW ..... 5

III. ARGUMENT AND AUTHORITIES ..... 6

A. The Sufficiency of Plaintiffs' Claims is Decided Based on the Four Corners of the New Amended Petition and the Partnership Agreements, Not the New Allegations in Plaintiffs' Response to Defendants' Motion to Dismiss ..... 6

B. The Threshold Issue is Whether Plaintiffs Can State Numerous Tort Claims Against the Five AT&T Defendants and the Nominal Defendants Based Solely on Conduct Permitted under the Partnership Agreements to which Only the General Partner and the Limited Partner Plaintiffs are Parties ..... 9

1. Plaintiffs' tort claims are duplicative of their breach of Partnership Agreements claim and seek the same relief. ..... 10

2. Plaintiffs have not stated any claims against the Non-General Partner Defendants and Nominal Defendants ..... 14

a. The Federal Rules of Civil Procedure do not require the Court and Defendants to guess which of Plaintiffs' claims and allegations are "applicable" to each particular Defendant ..... 14

b. The Partnership Agreements do not impose fiduciary duties on the Non-General Partner Defendants, and Plaintiffs otherwise have not made sufficient allegations of "control" to state claims against the Non-General Partner Defendants ..... 16

(1) Section 1.4 of the Partnership Agreements does not impose fiduciary duties on the Non-General Partner Defendants ..... 16

(2) The New Amended Petition's allegations of "control" do not support claims against the Non-General Partner Defendants ..... 19

c. Plaintiffs have not pleaded plausible facts to support claims against the Nominal Defendants ..... 22

C. Plaintiffs' Claims Based on Conduct Occurring Outside the Applicable Limitations Periods Should be Dismissed ..... 23

1. Statutes of limitations can serve as a basis for dismissal at the motion to dismiss stage ........................ 23

2. Plaintiffs' claims based on conduct before October 21, 2012 are barred by limitations ................................. 24

3. Plaintiffs' tortious interference and conversion/civil theft claims are barred by the two-year statute of limitations ................................................................ 27

D. Plaintiffs Have Not Stated a Claim for Breach of the Partnership Agreements by the General Partner ........................................................ 28

1. Plaintiffs failed to plead that the General Partner did not deem each of the complained of transactions reasonable or appropriate in furtherance of the Partnerships' purposes—a pleading failure fatal to Plaintiffs' breach of Partnership Agreements claim ................................................................ 29

2. Plaintiffs' other bases for breach of the Partnership Agreements fail to state a claim ...................................................... 30

E. Plaintiffs Have Not Pleaded Fraud with Particularity Under Rule 9(b) 33

1. Plaintiffs have not pleaded the who, what, when, where, and content of any particular Defendant's alleged misrepresentations. ............................................................... 34

2. Plaintiffs have not sufficiently pleaded the elements of fraud and fraud by nondisclosure ............................................................ 35

3. Plaintiffs' impermissible group pleading can state no fraud claim against any Defendant ........................................................ 36

F. Plaintiffs Have Not Stated a Claim for Breach of Fiduciary Duty............ 38

1. The Partnership Agreements contractually eliminated traditional fiduciary duties ............................................................ 39

2. The entire fairness standard does not apply. .................................. 43

G. Plaintiffs Have Not Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty ......................................................................... 45

H. Plaintiffs Have Not Stated a Tortious Interference Claim. ....................... 47

I. Plaintiffs Have Not Stated a Claim for Conversion/Civil Theft ................ 50

J. Plaintiffs' Exemplary Damages and Attorneys' Fees Claims Should be Dismissed ...................................................................................... 52

K. Plaintiffs Have Not Met Rule 23.1's Pleading Requirements.................... 53

IV. CONCLUSION AND PRAYER.................................................................... 54

CERTIFICATE OF SERVICE........................................................................... 56

# TABLE OF AUTHORITIES

## Federal Cases

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
291 F.3d 336 (5th Cir. 2002) ........................................ 35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 14, 15, 35, 49

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*,
361 F. Supp. 3d 633 (W.D. Tex. 2019) ........................................ 13

*Belford v. Scott*,
No. H-11-2329, 2012 WL 3069846 (S.D. Tex. July 27, 2012) ........................ 15, 49

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 35, 49

*In re BP p.l.c. Sec. Litig.*,
51 F. Supp. 3d 693 (S.D. Tex. 2014)........................................ 24

*Brown v. Bilek*,
401 F. App'x 889 (5th Cir. 2010)........................................ 34

*C-Bons Int'l Golf Grp., Inc. v. Lexington Ins. Co.*,
No. 3:19-CV-0663-B, 2019 WL 5427574 (N.D. Tex. Oct. 22, 2019) ........................ 5

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) ........................................ 37

*Coach, Inc. v. Angela's Boutique*,
No. H-10-1108, 2011 WL 2446387 (S.D. Tex. June 15, 2011)................................ 6

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ........................................ 7, 9

*Daboub v. Gibbons*,
42 F.3d 285 (5th Cir. 1995) ........................................ 26

*Del Castillo v. PMI Holdings N. Am. Inc.*,
No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) ........................ 15

*Diamond Beach Owners Ass'n v. Stuart Dean Co., Inc.*,
No. 3:18-CV-00173, 2018 WL 7291722 (S.D. Tex. Dec. 21, 2018) ...................... 6, 9

*Douglass v. Langehennig* (*In re Douglass*),
Bankr. No. 04-12499-CAG, Adv. No. 08-1007, 2008 WL 2944568
(Bankr. W.D. Tex. July 25, 2008) ..................................................................... 25

*Elgohary v. Steakley*,
No. 4:17-cv-01534, 2017 U.S. Dist. LEXIS 190621 (S.D. Tex. Oct. 10,
2017)......................................................................................................... 53

*Energy Coal v. CITGO Petroleum Corp.*,
836 F.3d 457 (5th Cir. 2016) ......................................................................... 5

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
761 F. Supp. 2d 504 (S.D. Tex. 2011)..................................................... 6, 9, 37, 38

*In re Fruehauf Trailer Corp.*,
250 B.R. 168 (D. Del. 2000) ......................................................................... 45

*Gen. Universal Sys., Inc. v. HAL, Inc.*,
500 F.3d 444 (5th Cir. 2007) ......................................................................... 26

*Hack v. Wright*,
396 F. Supp. 3d 720 (S.D. Tex. 2019)................................................................. 6, 9

*Hendrix v. City of Tazoo City*,
911 F.2d 1102 (5th Cir. 1990) ....................................................................... 26

*Inclusive Comtys. Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019) ......................................................................... 6

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
912 F.3d 759 (5th Cir. 2019) ......................................................................... 31

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) ......................................................................... 23

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) ....................................................................... 23

*In re Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) ......................................................................... 34

*Mane USA, Inc. v. Alison Leigh, LLC*,
No. 10-180-LPS-MPT, 2010 WL 3724239 (D. Del. Sept. 16, 2010)...................... 52

*Morris v. V4V1 Vehicles for Veterans*,
No. 4:15-CV-724, 2017 WL 3034664 (E.D. Tex. July 18, 2017) ........................... 52

*Powell v. Dallas Morning News LP*,
610 F. Supp. 2d 569 (N.D. Tex. 2009) .......... 7, 9

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
369 F. Supp. 3d 788 (W.D. Tex. 2019) .......... 48

*R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*,
428 F.3d 214 (5th Cir. 2005) .......... 6

*Raza v. Siemens Med. Sols. USA Inc.*,
607 F. Supp. 2d 689 (D. Del. 2009) .......... 26

*Roebuck v. Dothan Sec., Inc.*,
515 F. App'x 275 (5th Cir. Feb. 26, 2013) .......... 6, 9

*RSH Liquidating Tr. v. Magnacca*,
553 B.R. 298 (Bankr. N.D. Tex. 2016) .......... 44, 45

*Smith v. Ayres*,
977 F.2d 946 (5th Cir. 1992) .......... 53

*Smith v. Hous. Indep. Sch. Dist.*,
229 F. Supp. 3d 571 (S.D. Tex. 2017) .......... 27

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) .......... 37

*Tex. Commercial Bus. Sys., Inc. v. F.C.C.*,
898 F.2d 460 (5th Cir. 1990) .......... 50

*Trice v. Pearland Indep. Sch. Dist.*,
No. 3:19-CV-00286, 2020 WL 1557750 (S.D. Tex. Mar. 16, 2020) .......... 6, 9

State Cases

*Agar Corp. v. Electro Circuits Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019) .......... 24

*Aldina v. Internet.com Corp.*,
No. Civ.A. 17235-NC, 2002 WL 31584292 (Del. Ch. Nov. 6, 2002) .......... 44

*Allen v. Encore Energy Partners, L.P.*,
72 A.3d 93 (Del. 2013) .......... 39

*Arabesque v. Academy of Fine Arts*,
529 S.W.2d 564 (Tex. Civ. App.—Dallas 1975, no writ) .......... 50

*Aspen Advisors LLC v. United Artists Theatre Co.*,
861 A.2d 1251 (Del. 2004) .................... 49, 50

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*,
No. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009) .................... 19, 21

*Binks v. DSL.net, Inc.*,
No. 2823-VCN, 2010 WL 1713629 (Del. Ch. Apr. 29, 2010) .................... 46

*In re Boston Celtics Ltd. P'Ship S'holders Litig.*,
No. C.A. 16511, 1999 WL 641902 (Del. Ch. Aug. 6, 1999) .................... 21, 22

*Cede & Co., Inc. v. Technicolor, Inc.*,
634 A.2d 345 (Del. 1993) .................... 45

*In re Cencom Cable Income Partners, L.P., Litig.*,
No. 14634, 1996 WL 74726 (Del. Ch. Feb. 15, 1996) .................... 39, 40

*CIM Urban Lending GP, LLC v. Cantor Commercial Real Estate Sponsor, L.P.*,
No. 11060-VCN, 2016 WL 768904 (Del. Ch. Feb. 26, 2016) .................... 11, 40

*Cinerama, Inc. v. Technicolor, Inc.*,
663 A.2d 1156 (Del. 1995) .................... 44

*Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*,
323 S.W.3d 322 (Tex. App.—Beaumont 2010, no pet.) .................... 48

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
918 S.W.2d 453 (Tex. 1996) .................... 25

*Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A"*,
192 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2006, no pet.) .................... 12, 51

*Exxon Mobil Corp. v. Rincones*,
520 S.W.3d 572 (Tex. 2017) .................... 26

*Feeley v. NHAOCG, LLC*,
62 A.3d 649 (Del. Ch. 2012) .................... 20, 41, 42

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
No. 9522-CB, 2015 WL 401371 (Del. Ch. Jan. 30, 2015) .................... 42, 43

*Gilbert v. El Paso Co.*,
490 A.2d 1050 (Del. Ch. 1984), *aff'd* 575 A.2d 1131 (1990) .................... 46

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
No. CIV.A.15754, 2000 WL 1476663 (Del. Ch. Sept. 27, 2000) .......... 18, 19, 20, 46

*Grayson v. Imagination Station, Inc.*,
No. 5051-CC, 2010 WL 3221951 (Del. Ch. Aug. 16, 2010) .......... 11

*Higher Educ. Mgmt. Grp., Inc. v. Mathews*,
No. 9110-VCP, 2014 WL 5573325 (Del. Ch. Nov. 3, 2014) .......... 46, 47

*In re Inergy L.P. Unitholder Litig. C.A.*,
No. 5816-VCP, 2010 WL 4273197 (Del. Ch. Oct. 29, 2010) .......... 39

*In re J.P. Stevens & Co.*,
542 A.2d 770 (Del. Ch. 1988) .......... 44

*Kahn v. Icahn*,
No. CIV. A. 15916, 1998 WL 832629 (Del. Ch. Nov. 12, 1998), *aff'd*,
746 A.2d 276 (Del. 2000) .......... 40, 41

*Kahn v. Seaboard Corp.*,
625 A.2d 269 (Del. Ch. 1993) .......... 26

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009) .......... 12, 51

*In re Lear Corp. S'holder Litig.*,
967 A.2d 640 (Del. Ch. 2008) .......... 41

*Lewis v. AimCo Props., L.P.*,
No. 9934-VCP, 2015 WL 557995 (Del. Ch. Feb. 10, 2015) .......... 20

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) .......... 46, 47

*MicroStrategy Inc. v. Acacia Research Corp.*,
No. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010) .......... 21

*Miller v. Am. Real Estate Partners, L.P.*,
No. CIV.A.16788, 2001 WL 1045643 (Del. Ch. Sept. 6, 2001) .......... 40, 41

*Morgan Stanley & Co. v. Texas Oil Co.*,
958 S.W.2d 178 (Tex. 1997) .......... 48

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) .......... 11, 42, 43

*Newsome v. Charter Bank Colonial*,
940 S.W.2d 157 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ................ 51

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*,
No. 5502-CS, 2011 WL 3505355 (Del. Ch. Aug. 8, 2011) .................................... 20

*Parnes v. Balley Entm't Corp.*,
722 A.2d 1243 (Del. 1999) ........................................................................ 44

*Powers v. McDaniel*,
785 S.W.2d 915 (Tex. App.—San Antonio 1990, writ denied) ............................ 25

*RBC Capital Mkts., LLC v. Jervis*,
129 A.3d 816 (Del. 2015) ........................................................................ 46

*S.V. v. R.V.*,
933 S.W.2d 1 (Tex. 1996) ................................................................ 24, 25

*Schlumberger Tech. Corp. v. Pasko*,
544 S.W.3d 830 (Tex. 2018) ........................................................................ 25

*Shearin v. E.F. Hutton Grp., Inc.*,
652 A.2d 578 (Del. Ch. 1994) ........................................................................ 48

*Solomon v. Pathe Commc'ns Corp.*,
No. CIV. A. 12563, 1995 WL 250374 (Del. Ch. Apr. 21, 1995), *aff'd*,
672 A.2d 35 (Del. 1996) ........................................................................ 45

*Stine v. Stewart*,
80 S.W.3d 586 (Tex. 2002) ........................................................................ 24

*Sw. Bell Tel. Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991) ................................................................ 12, 13

*In re USACafes L.P. Litigation*,
600 A.2d 43 (Del. Ch. 1991) ................................................................ 19, 20

*In re Vesta Ins. Grp., Inc.*,
192 S.W.3d 759 (Tex. 2006) ........................................................................ 48

*Weinberger v. UOP, Inc.*,
457 A.2d 701 (Del. 1983) ................................................................ 19, 45

*Wenske v. Blue Bell Creameries, Inc.*,
No. 2017-0699-JRS, 2018 WL 3337531 (Del. Ch. July 6, 2018) .......................... 20

*Woods v. William M. Mercer, Inc.*,
769 S.W.2d 515 (Tex. 1988) ........ 24

Federal Rules

FED. R. CIV. P. 8 ........ 15, 37

FED. R. CIV. P. 9(b) ........ 1, 2, 15, 33, 37, 54

FED. R. CIV. P. 12(b)(6) ........ 1, 2, 23, 28, 54

FED. R. CIV. P. 12(c) ........ 1, 2, 54

FED. R. CIV. P. 23.1 ........ 1, 2, 53, 54

FED. R. CIV. P. 26 ........ 8

FED. R. CIV. P. 54 ........ 52

State Statutes

6 Del. C. § 17-1101(c) ........ 40

6 Del. C. § 17-1101(d) ........ 39, 41, 54

6 Del. C. § 17-1104(a) ........ 41

6 Del. C. § 15-106(a) ........ 5

6 Del. C. § 15-405(a) ........ 23

6 Del. C. § 15-405(b) ........ 23

TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4), (5) ........ 24

TEX. CIV. PRAC. & REM. CODE ch. 38 ........ 52

## GLOSSARY OF KEY DEFINED TERMS

| Pleadings | |
|---|---|
| **Defined Document** | **Full Description** |
| Original Petition | Plaintiffs' Original Petition [ECF 1, Ex. 2 at 25, Oct. 21, 2016] |
| First Amended Petition | Plaintiffs' First Amended Petition [ECF 1, Ex. 2 at 62, Oct. 2 6, 2018] |
| Second Amended Petition | Plaintiffs' Second Amended Petition [ECF 1, Ex. 2 at 90, July 3, 2019] |
| First Motion to Dismiss | Defendants' Motion to Dismiss, and, in the Alternative, Motion for Judgment on the Pleadings [ECF 5, Aug. 9, 2019] |
| First Amended Complaint | Plaintiffs' Verified Federal Complaint [ECF 37, Nov. 25, 2019] |
| Second Motion to Dismiss | Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and in the Alternative, Motion for Judgment on the Pleadings [ECF 40, Dec. 9, 2019] |
| Second Motion for Leave to Amend | Plaintiffs' Motion for Leave to Conform Plaintiffs' Second Amended Petition to Federal Rule of Civil Procedure 23.1 [ECF 49, March 6, 2020] |
| New Amended Petition | Plaintiffs' Second Amended Petition Conformed to Federal Rule of Civil Procedure 23.1 [ECF 54, May 5, 2020] |
| Present Motion to Dismiss or Motion to Dismiss | Defendants' Motion to Dismiss Plaintiffs' New Amended Petition [ECF 54] and in the Alternative, Motion for Judgment on the Pleadings [ECF 55, May 19, 2020] |
| Parties and Agreements | |
| **Defined Term** | **Full Description** |
| AT&T Defendants | AT&T Inc.; New Cingular Wireless PCS, LLC d/b/a AT&T Mobility; AT&T Mobility Corporation; Cricket Communications, LLC; and Cricket Wireless LLC |
| Cricket Defendants | Cricket Communications, LLC and Cricket Wireless LLC |
| Limited Partners or Plaintiffs | VTX Communications, LLC and VTX Investments, LLC; SWT Unregulated Properties Inc.; and Riviera Cellular & Telecommunications, Inc. |
| New Cingular or General Partner | New Cingular Wireless PCS, LLC d/b/a AT&T Mobility |
| Non-General Partner Defendants | AT&T Inc.; AT&T Mobility Corporation; Cricket Communications, LLC; and Cricket Wireless LLC |
| Partnership Agreements | McAllen Partnership Agreement; RSA 18 Partnership Agreement; and RSA 19 Partnership Agreement |
| Partnerships or Nominal Defendants | McAllen-Edinburg-Mission SMSA Limited Partnership; Texas RSA 18 Limited Partnership; and Texas RSA 19 Limited Partnership |

Defendants AT&T Inc.; New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, individually and in its capacity as General Partner of McAllen-Edinburg-Mission SMSA Limited Partnership, Texas RSA 18 Limited Partnership, and Texas RSA 19 Limited Partnership; AT&T Mobility Corporation; Cricket Communications, LLC; and Cricket Wireless LLC[1] (collectively, the "AT&T Defendants") file this Reply in Support of the AT&T Defendants' Motion to Dismiss[2] Plaintiffs' Second Amended Petition Conformed to Federal Rule of Civil Procedure 23.1 [ECF 54] (the "New Amended Petition") pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), 23.1, and, in the alternative, Rule 12(c), on their own behalf and on behalf of the Nominal Defendants McAllen-Edinburg-Mission SMSA Limited Partnership, Texas RSA 18 Limited Partnership, and Texas RSA 19 Limited Partnership (collectively, the "Partnerships" or "Nominal Defendants"), as follows:

## I. INTRODUCTION

1. The core of this case is simple. This is a partnership dispute that can be resolved based on the Partnership Agreements, solely among the Limited Partner Plaintiffs and the General Partner. The parties negotiated a fair deal, which the Limited Partners now seek to renege through a lawsuit alleging tort and contract claims against the General Partner and the four Non-General Partner Defendants, which are not even parties to the Partnership Agreements. Setting aside the new allegations and embellishments improperly asserted in Plaintiffs'

---

[1] Plaintiffs have incorrectly named this entity as "Cricket Wireless, LLC."

[2] ECF 55.

Response,[3] the deficient allegations in the New Amended Petition and the unambiguous language of the Partnership Agreements mandate dismissal of every claim with prejudice.

2. The new allegations in the Response cannot save Plaintiffs' deficient claims from dismissal with prejudice. Rather than defend the sufficiency of the allegations in the New Amended Petition, which is Plaintiffs' fifth bite at the apple with the benefit of years of discovery, Plaintiffs' Response impermissibly adds new "allegations" and "explanations" to supplement Plaintiffs' deficient claims. The standard for determining whether to dismiss a claim under Rules 12(b)(6), 12(c), 9(b), and 23.1 turns on the plausibility (and for Rule 9(b), particularity) of the facts alleged on the face of the complaint. A court may also consider materials attached to a complaint or to a motion to dismiss if those materials are central to the plaintiff's claims, such as the Partnership Agreements attached to Defendants' Motion to Dismiss.[4] However, the law in this Circuit bars Plaintiffs' attempt to use statements in their Response to Defendants' Motion to Dismiss to circumvent the pleading rules and amend their New Amended Petition.

[3] ECF 56.

[4] The "Partnership Agreements" include the McAllen Partnership Agreement, RSA 18 Partnership Agreement, and RSA 19 Partnership Agreements. *See* ECF 55, Sealed Exs. A, B, C to Defendants' Motion to Dismiss. Contrary to Plaintiffs' contention, Amendment No. 3 to all three Partnership Agreements is complete and properly signed, as Section 17.1 of the Partnership Agreements allow the General Partner alone to sign amendments under the circumstances present in Amendment No. 3. *See* ECF 55, Exs. A, B, C § 17.1. Defendants also attached the Cricket Communications, LLC certificate of merger to the Motion to Dismiss, which shows that the entity no longer exists and should be dismissed. *See* ECF 55, Ex. D; *see also* ECF 55 ¶ 42 n.78.

3. Through new allegations and details in their Response, Plaintiffs effectively seek to amend their deficient live pleading for a fifth time without leave of Court. For example, Plaintiffs' Response asserts a newly-minted theory that all four Non-General Partner Defendants owe fiduciary duties. But Plaintiffs previously admitted in a filing in this Court (ECF 20 ¶ 36) that the two Cricket Defendants ***did not*** owe fiduciary duties based on ***identical allegations*** in their then-live pleading to those in the present New Amended Petition. Additionally, the introduction and background to Plaintiffs' Response make various allegations of breach of fiduciary duty and other wrongful conduct against Defendants, but contain no citations to the New Amended Petition. That is because these specific allegations and details are absent from the New Amended Petition. Likewise, Plaintiffs cite to irrelevant public filings and a 34-year old newspaper article concerning non-parties to this case. These and other new allegations throughout Plaintiffs' Response seek only to distract from Plaintiffs' deficient live pleading and confuse what boils down to a handful of straightforward issues before the Court.

4. First, Plaintiffs' breach of fiduciary duty and other tort claims fail as a matter of law because they are merely repackaged breach of Partnership Agreements claims that are not based on any duties or obligations independent of the Partnership Agreements. Further, these claims seek relief solely under the Partnership Agreements. Thus, Plaintiffs do not state any tort claim against any Defendant.

5. Second, it is undisputed that the four Non-General Partner Defendants are not parties to the Partnership Agreements, and all the claims against them

should be dismissed because Plaintiffs have pleaded no plausible facts to state any claim. Plaintiffs' new theory that the Partnership Agreements impose fiduciary duties on the non-party Non-General Partner Defendants is not only inconsistent with their prior position and entirely absent from the New Amended Petition, but is unsupported by the Partnership Agreements' plain language. Further, Plaintiffs' insufficient allegations of control as to the Non-General Partner Defendants and impermissible group pleading do not support any claims against these Defendants.

6. Moreover, much of the pleaded conduct supporting the contract and tort claims occurred outside the applicable limitations periods. Finally, nowhere in Plaintiffs' repetitive 114-page Response have they shown that their New Amended Petition otherwise plausibly pleads facts supporting the elements of each of the claims, including any claims against the Partnerships themselves.

7. Simply put, Plaintiffs are unhappy with the deal they made with the General Partner in connection with Partnerships in South Texas, and now ask the Court to rewrite the Partnership Agreements and punish unrelated entities along the way. The Court should reject Plaintiffs' efforts to "replead" the allegations in their New Amended Petition via their Response to Defendants' Motion to Dismiss. The sufficiency of the New Amended Petition turns on the pleading itself, which does not state a claim and therefore should be dismissed with prejudice. At a minimum, the case should be narrowed to its proper scope: a contractual dispute between the General Partner and Limited Partner Plaintiffs.

## II. APPLICABLE SUBSTANTIVE LAW

8. Plaintiffs concede that Delaware law governs their breach of Partnership Agreements, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty claims.[5] However, Plaintiffs argue that Texas law should apply to Plaintiffs' other claims under choice of law principles and the most significant relationship test.[6] But Plaintiffs have not pleaded enough facts to allow the Court to perform a choice of law analysis at this stage of the case to determine whether Texas or Delaware law applies to those claims.[7]

9. For example, Plaintiffs have not pleaded the place of injury as to each of their tort claims, the place where the wrongful conduct allegedly occurred, or every domicile, residence, and place of incorporation of every Defendant. Plaintiffs suggest in their Response that the claims "relate to theft and interference with Texas-based customer relationships and a false statements [sic] made at a meeting held in Texas."[8] But the New Amended Petition contains no facts to support such a conclusion. It does not allege where the meeting took place or reference any such meeting in connection with the conversion/civil theft and tortious interference

[5] ECF 56 ¶ 27. The Partnerships are Delaware limited partnerships. ECF 54 ¶ 28. Under Delaware law, the law of the jurisdiction in which an entity is formed governs its internal affairs. 6 Del. C. § 15-106(a). Additionally, the Partnership Agreements each provide that "[t]his Agreement and the rights and obligations of the Partners shall be interpreted in accordance with the laws of the State of Delaware." ECF 55, Exs. A, B, C, Partnership Agrs. § 19.6. *See* also ECF 55 at nn.131, 165.

[6] ECF 56 ¶ 29.

[7] *See Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) ("Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry."); *C-Bons Int'l Golf Grp., Inc. v. Lexington Ins. Co.*, No. 3:19-CV-0663-B, 2019 WL 5427574, at *6 (N.D. Tex. Oct. 22, 2019) (refusing to decide choice of law issue when facts relevant to the determination were in dispute and required evidence).

[8] ECF 56 ¶ 29.

claims. Those and other facts are necessary to properly perform a choice of law analysis. In any event, where, as here, the elements of the claims are largely the same under both states' laws, a choice of law analysis is not necessary at the motion to dismiss stage.[9]

## III. ARGUMENT AND AUTHORITIES

### A. The Sufficiency of Plaintiffs' Claims is Decided Based on the Four Corners of the New Amended Petition and the Partnership Agreements, Not the New Allegations in Plaintiffs' Response to Defendants' Motion to Dismiss.

10. A motion to dismiss is determined based on "(1) the facts set forth in the complaint; (2) documents attached to the complaint; and (3) matters of which judicial notice may be taken."[10] Additionally, materials attached to a motion to dismiss may be considered if they are referenced in the plaintiff's complaint and are central to the plaintiff's claims.[11] But "it is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time."[12]

---

[9] *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005).

[10] *See Inclusive Comtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

[11] *Id.*

[12] *Diamond Beach Owners Ass'n v. Stuart Dean Co., Inc.*, No. 3:18-CV-00173, 2018 WL 7291722, at *4 (S.D. Tex. Dec. 21, 2018), *report and recommendation adopted*, No. 3:18-CV-00173, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019) (citing *Coach, Inc. v. Angela's Boutique*, No. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011) ("In considering a 12(b)(6) motion, the court should only consider the factual allegations contained in the original complaint. New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings.") (collecting authorities)). *See also Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. Feb. 26, 2013) ("Although Roebuck has set forth more specific factual allegations in his brief with respect to his claim of defamation, Roebuck's conclusory allegations in his complaint do not contain sufficient factual matter to survive DSI's motion to dismiss."); *Trice v. Pearland Indep. Sch. Dist.*, No. 3:19-CV-00286, 2020 WL 1557750, at *2 n.8 (S.D. Tex. Mar. 16, 2020) (rejecting claim made for first time in response to motion to dismiss and refusing to interpret as a motion to amend because plaintiff had prior opportunities to amend); *Hack v. Wright*, 396 F. Supp. 3d 720, 737 n.13 (S.D. Tex. 2019) (ignoring argument in plaintiff's response to motion to dismiss because it was not discussed in the complaint); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to

11. Although a court may take judicial notice of matters in connection with a motion to dismiss, generally the item to be judicially noticed must be (1) referred to in plaintiff's complaint, and (2) central to plaintiff's claim.[13] Judicial notice is commonly used for documents that a ***defendant*** attached to a motion to dismiss, not that a plaintiff seeks to use in a response to a motion to dismiss.[14] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[15] *Id.* at 499.

12. Plaintiffs' 114-page Response contains dozens of unsubstantiated allegations, with no citations to the New Amended Petition or the Partnership Agreements. For example, as discussed in Part III.B.2.b *infra*, Plaintiffs assert in their Response that all Non-General Partner Defendants owe fiduciary duties, when they admitted in their Response to the First Motion to Dismiss that the two Cricket Defendants did not owe fiduciary duties based on the exact same allegations in their then-live pleading.[16]

---

dismiss."); *Powell v. Dall. Morning News LP*, 610 F. Supp. 2d 569, 577 (N.D. Tex. 2009) (declining to consider allegations made only in response to a motion to dismiss instead of in the complaint).

[13] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[14] *Id.*

[15] *Id.* at 499.

[16] *See* ECF 20 ¶ 36 ("It is important to note that Plaintiffs have only pleaded breach of fiduciary duty against the Non-General Partner Defendants controlling the AT&T General Partner: the AT&T Manager [AT&T Mobility Corporation] and AT&T Inc.") (citing ECF 1-2 at 67, 84, 87, 89, 91, Pls.' Second Am. Pet. at preamble, ¶¶ 43, 53, 63, 71). These allegations in the Second Amended Petition are identical to the allegations in the New Amended Petition. *See* ECF 54 preamble & ¶¶ 49, 59, 69, 77.

13. Additionally, paragraphs 1 through 9 and 11 through 21 of Plaintiffs' Response make various allegations of breach of fiduciary duty and other wrongful conduct against Defendants without a single citation to the New Amended Petition.[17] That is because these specific allegations and details are absent from the New Amended Petition. The Response also spends several pages on allegations concerning Project Smoothie, Cricket, and spectrum, among other items, that each received only passing reference in the New Amended Petition.[18]

14. Likewise, in footnote 2 of their Response, Plaintiffs cite to an unrelated proceeding before the Federal Communications Commission ("FCC") and muse that "Plaintiffs are curious" as to how these proceedings will affect the Partnerships. But the New Amended Petition contains absolutely no claims or allegations concerning this FCC proceeding and its impact, if any, on the Partnerships. And footnote 7 of the Response references a 1986 *Houston Chronicle* article regarding an entirely separate partnership, which is not a party to this case, is not referenced in the New Amended Petition, and has absolutely no bearing on the issues before the Court.

15. While Plaintiffs have not asked the Court to take judicial notice of the FCC filing or the *Houston Chronicle* article, they have asked the Court to judicially

---

[17] *See* ECF 56 ¶¶ 1-9, 11-21.

[18] In yet another example of Plaintiffs' repleading through their Response, Plaintiffs mischaracterize the status of discovery in connection with Project Smoothie. *See* ECF 56 ¶ 7. In fact, Defendants have produced many documents related to Project Smoothie and only snapped back six privileged and attorney work product documents that were inadvertently produced. Only these six privileged documents were the subject of a state court mandamus proceeding to protect the privilege, not all Project Smoothie documents as Plaintiffs erroneously imply. Contrary to Plaintiffs' allegations of discovery delays due to Defendants' Motion to Dismiss (*see* ECF 56 ¶ 9), discovery in this case has been open in this Court since the Rule 26 conference on August 23, 2019. *See* ECF 26.

notice other, equally irrelevant items. For instance, Plaintiffs cite AT&T's 2013 annual report "[i]f and to the extent the Court desires to take judicial notice as to the status of Cricket as a 'primary competitor' of AT&T Mobility."[19] But Plaintiffs do not explain how Cricket's status in 2013 is relevant to Cricket's status after it was acquired by AT&T Inc. in 2014 and integrated into the company. Further, this information is inappropriate for judicial notice to supplement Plaintiffs' New Amended Petition through their Response.[20] Plaintiffs' request for judicial notice of a filing by AT&T Teleholdings, Inc. concerning AT&T Inc.'s corporate structure in an effort to bolster the New Amended Petition's deficient control allegations likewise fails for the reasons discussed at paragraph 33 *infra*.

16. In sum, the law in this Circuit prohibits Plaintiffs from repleading and embellishing their deficient claims through their Response to Defendants' Motion to Dismiss.[21] When Plaintiffs' claims are considered based on the New Amended Petition and the Partnership Agreements alone, as they must be, the claims cannot survive dismissal.

### B. The Threshold Issue is Whether Plaintiffs Can State Numerous Tort Claims Against the Five AT&T Defendants and the Nominal Defendants Based Solely on Conduct Permitted under the Partnership Agreements to which Only the General Partner and the Limited Partner Plaintiffs are Parties.

17. The core of this case is simple: whether the Partnership Agreements between the General Partner and the Limited Partner Plaintiffs contractually

[19] ECF 56 at n.8.

[20] *See Collins*, 224 F.3d at 498-99.

[21] *Roebuck*, 515 F. App'x at 280; *Trice*, 2020 WL 1557750, at *2 n.8; *Hack*, 396 F. Supp. 3d at 737 n.13; *Diamond Beach*, 2018 WL 7291722, at *4; *In re Enron*, 761 F. Supp. 2d at 566; *Powell*, 610 F. Supp. 2d at 577.

permit the conduct Plaintiffs challenge in this suit. But Plaintiffs have also brought a smorgasbord of baseless breach of fiduciary duty and other tort claims against the General Partner, its ultimate perceived deep-pocket parent and three affiliates, which have no relationship to Plaintiffs, and the Partnerships themselves. The purpose of these duplicative and unnecessary claims appears to be solely to drive up costs, waste time, and inconvenience the parties. Moreover, the four Non-General Partner Defendants are not even parties to the Partnership Agreements, and Plaintiffs have not met their burden to adequately plead control or any other basis to hold them liable for the General Partner's actions in connection with the Partnership Agreements. Nor have Plaintiffs pleaded plausible facts to support claims against the Nominal Defendants.

18. Therefore, the Court should dismiss Plaintiffs' tort claims with prejudice for these reasons, in addition to failing to state claims and falling outside of the statute of limitations, as discussed later in this brief.

***1. Plaintiffs' tort claims are duplicative of their breach of Partnership Agreements claim and seek the same relief.***

19. As explained in Defendants' Motion to Dismiss, Plaintiffs' breach of fiduciary duty and other tort claims fail to state a claim as they are no more than repackaged breach of contract claims. These claims arise from obligations expressly addressed in the Partnership Agreements—e.g., whether the General Partner met its obligations to the Limited Partners in accordance with the Partnership Agreements in connection with the data cost sharing process, acquisition and operation of Cricket, spectrum issues, allocation of revenue to the Partnerships, and

record-keeping and financial reporting.[22] Despite the claims' labels, they are contractual in nature given that they concern disputes arising from obligations expressly addressed in the Partnership Agreements.[23] Moreover, Plaintiffs do not seek any damages and relief with respect to the tort claims besides economic damages under and enforcement of the Partnership Agreements.

20. ***First,*** Plaintiffs' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims must be dismissed because they are duplicative of the breach of Partnership Agreements claim.[24] As explained in Defendants' Motion to Dismiss,[25] a dispute arising from obligations expressly addressed by a contract is treated as a contractual dispute.[26] The Delaware Chancery Court continues to hold that "allowing 'a fiduciary duty claim to coexist in parallel with [a contractual] claim, would undermine the primacy of contract law over fiduciary law in matters involving . . . contractual rights and obligations.'"[27] In any event, Section 7.1 of the Partnership Agreements expressly permits the General Partner to perform the alleged actions.[28] Not only do Plaintiffs request the same relief under their fiduciary claims as their contract claim, in their Response Plaintiffs ***admit*** that the conduct at

---

[22] *See* ECF 54 ¶¶ 51-54, 60-64, 70-73, 78-81, 93, 96-97, 100, 104.

[23] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

[24] *Id.*; *see also CIM Urban Lending GP, LLC v. Cantor Commercial Real Estate Sponsor, L.P.*, No. 11060-VCN, 2016 WL 768904, at *3 (Del. Ch. Feb. 26, 2016).

[25] ECF 55 ¶¶ 51, 53-56.

[26] *Nemec*, 991 A.2d at 1129.

[27] *CIM Urban Lending*, 2016 WL 768904, at *3 (alterations in original) (citing *Grayson v. Imagination Station, Inc.*, No. 5051-CC, 2010 WL 3221951, at *7 (Del. Ch. Aug. 16, 2010)).

[28] ECF 55 ¶ 84; *id.* Exs. A, B, C, Partnership Agrs. § 7.1.

issue "represents both a breach of fiduciary duty and, in many cases, a breach of the Partnership Agreements."[29] Therefore, Plaintiffs' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims must be dismissed as duplicative of their breach of Partnership Agreements claims.

21. ***Second***, Plaintiffs' tort claims for fraud and conversion/civil theft likewise fail because the very nature of this dispute is contractual and governed by the Partnership Agreements.[30] Again, instead of properly pleading the elements of fraud and conversion/civil theft, Plaintiffs regurgitate the same insufficient facts they use to support their breach of Partnership Agreements claim, thereby impermissibly "bootstrapping" their contract claim into tort claims.[31] Plaintiffs have failed to allege any independent duty or conduct other than the General Partner's duties and conduct under the Partnership Agreements and the Non-General Partners' purported liability for that conduct.[32] Therefore, Plaintiffs' fraud and conversion/civil theft claims must be dismissed.

22. ***Third***, the New Amended Petition does not seek damages for the tort claims beyond economic damages resulting from the alleged failure to compensate the Partnerships and an accounting under the Partnership Agreements, and

---

[29] ECF 56 ¶ 79.

[30] *See* ECF ¶¶ 137, 142, 146-47. Plaintiffs' claim for tortious interference also fails for the reasons explained in Part III.H *infra.*

[31] *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (citation omitted).

[32] *Id.*; *see also Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A"*, 192 S.W.3d 120, 126-27 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("Under the rule, if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may sound in both tort and contract, but if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.") (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)).

injunctive and equitable relief to enforce the Partnership Agreements.[33] Even the damages Plaintiffs enumerate in the Response are based solely on relief under the Partnership Agreements: damages for "lost data roaming revenue . . ., payment of erroneous and wrongful charges for spectrum which the Partnerships are entitled, lost revenue from the missed opportunity to participate in the Cricket business, and denial of revenues from businesses using Partnership assets."[34] Plaintiffs argue that their breach of fiduciary duty and other tort claims and the damages they seek are not duplicative[35] because "the AT&T Defendants assume through the Partnership Agreements a fiduciary role."[36] But as discussed in Defendants' Motion to Dismiss and herein, the Partnership Agreements eliminated and supplanted the General Partner's traditional fiduciary duties to the Limited Partners, and the Non-General Partner Defendants owe no fiduciary duties to the Limited Partners.[37] Thus, the only "duties" owed to the Limited Partners are plainly stated in the Partnership Agreements. In short, the relief Plaintiffs seek for their tort claims is

---

[33] ECF 54 ¶¶ 107-110. While the New Amended Petition requests the Court to order Defendants to "comply with the applicable Defendants' fiduciary duties to the Partnerships and Limited Partners," *id.* ¶ 108, as explained in Parts III.F.1 and III.B.2.b *infra*, the Partnership Agreements eliminated and supplanted the General Partner's fiduciary duties and the Non-General Partner Defendants owe no fiduciary duties to the Limited Partners.

[34] ECF 56 ¶ 135.

[35] Plaintiffs cite *Bates Energy Oil & Gas v. Complete Oilfield Services* for the proposition that the economic loss rule does not bar their claims. ECF 56 ¶ 152 (citing *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 652 (W.D. Tex. 2019) (citation omitted)). However, that case does not foreclose the dismissal of claims where, as here, "a party seeks damages for breach of a duty created solely under a contract." *Bates*, 361 F. Supp. 3d at 652 (explaining that the Texas Supreme Court has held that "tort damages are unavailable" when the relief sought is for breach of a duty arising under a contract) (citing *DeLanney*, 809 S.W.2d 493).

[36] ECF 56 ¶ 152.

[37] ECF 55 ¶¶ 72-74; *see also* Parts III.F.1 and III.B.2.b *infra*.

the same relief they seek for their breach of Partnership Agreements claim, and thus further demonstrates that the tort claims should be dismissed as duplicative.

### *2. Plaintiffs have not stated any claims against the Non-General Partner Defendants and Nominal Defendants.*

23. The Non-General Partner Defendants and the Nominal Defendants should be dismissed from this case with prejudice. Plaintiffs do not deny that they have failed to plead individual conduct by the Non-General Partner Defendants and Nominal Defendants giving rise to their claims. Plaintiffs likewise do not deny that they have failed to plead any theory of vicarious liability or veil piercing. Instead, Plaintiffs insist that by including the words "as applicable" in defining "Defendants," that is enough to meet their pleading burden as to each individual Defendant. Plaintiffs also rely on a mischaracterization of the Partnership Agreements and Delaware law to create fiduciary duties—and thus liability—as to the Non-General Partner Defendants. Finally, Plaintiffs argue that the Partnerships must be named as both Plaintiffs and Nominal Defendants here. Plaintiffs are wrong on all accounts.

#### a. The Federal Rules of Civil Procedure do not require the Court and Defendants to guess which of Plaintiffs' claims and allegations are "applicable" to each particular Defendant.

24. As explained in Defendants' Motion to Dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] In the New Amended Petition, Plaintiffs impermissibly group the General Partner, AT&T Mobility Corporation,

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

AT&T Inc., and the two Cricket Defendants together with the defined terms "AT&T" and the "AT&T Defendants."[39] Plaintiffs do not allege misconduct individually attributable to each Defendant and instead refer generally to "AT&T," "AT&T Defendants," and "Defendants" in a way that does not state any claim against each Defendant.

25. In their Response, Plaintiffs argue that their definition of "AT&T," "AT&T Defendants," and "Defendants" includes "AT&T Inc.,; New Cingular Wireless PCS LLC d/b/a AT&T Mobility [General Partner]; AT&T Mobility Corporation; Cricket Communications, LLC; ***and/or*** Cricket Wireless LLC, ***as applicable***."[40] But this only worsens Plaintiffs' pleading deficiencies, and still does not "identify[] who is responsible for which acts."[41] Rules 8 and 9(b) do not require the Court and Defendants to guess as to which allegation is "applicable" to each party or which Defendant committed the "applicable" conduct in connection with each claim. It is Plaintiffs' responsibility to allege in their live pleading the "applicable" facts and conduct as to each Defendant, not an "and/or" and "as applicable" possibility. That AT&T Inc. is a large entity with numerous subsidiaries and affiliates does not absolve Plaintiffs of their obligation to state specific claims as

---

[39] ECF 54, preamble.

[40] ECF 56, Glossary of Key Defined Terms (emphasis added).

[41] *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016); *see also Belford v. Scott*, No. H-11-2329, 2012 WL 3069846, at *6 (S.D. Tex. July 27, 2012) (granting motion to dismiss where "plaintiff has failed to plead sufficient facts to raise her right to relief against each defendant above the speculative level.") (citing *Iqbal*, 556 U.S. at 678).

to each specific Defendant instead of group pleading, and Plaintiffs have cited no authority to the contrary.[42]

b. <u>The Partnership Agreements do not impose fiduciary duties on the Non-General Partner Defendants, and Plaintiffs otherwise have not made sufficient allegations of "control" to state claims against the Non-General Partner Defendants.</u>

26. Plaintiffs attempt to "replead" their claims by asserting for the first time in their Response that Section 1.4 of the Partnership Agreements creates fiduciary duties in the Non-General Partner Defendants.[43] Not only is this new allegation improper, untimely, and contradicts Plaintiffs' prior position before this Court, it is also wrong. To state claims against the Non-General Partner Defendants, Plaintiffs must plead vicarious liability, alter ego, or sufficiently allege control—none of which Plaintiffs have done in their New Amended Petition.

*(1)* *<u>Section 1.4 of the Partnership Agreements does not impose fiduciary duties on the Non-General Partner Defendants.</u>*

27. As explained below and in Defendants' Motion to Dismiss, the Partnership Agreements eliminated and supplanted the traditional fiduciary duties of loyalty, care, and good faith that are alleged by Plaintiffs against the General Partner.[44] Although not alleged in their New Amended Petition, Plaintiffs now assert in their Response, without support, that fiduciary duties extend to the Non-General Partner Defendants by virtue of Section 1.4 of the Partnership Agreements

---

[42] Recognizing the shakiness of their argument, Plaintiffs also accuse Defendants of "hiding the ball" with respect to Eric Wages' employment. ECF 56 ¶ 155. This is merely an attempt to distract from Plaintiffs' insufficiently pleaded tort claims.

[43] ECF 56 ¶¶ 89-93.

[44] ECF 55 ¶¶ 72-74.

concerning "Affiliates."[45] Not only does this argument contradict Plaintiffs' prior position to this Court, it fails based on the Partnership Agreements' plain language and Delaware law.

28. First, Plaintiffs' newly-minted position in the Response that all Non-General Partner Defendants owe fiduciary duties under Section 1.4 of the Partnership Agreements contradicts Plaintiffs' prior position that "Plaintiffs have only pleaded breach of fiduciary duty against the Non-General Partner Defendants controlling the AT&T General Partner: the AT&T Manager [AT&T Mobility Corporation] and AT&T Inc."[46] Plaintiffs' admission that the Cricket Defendants did not owe fiduciary duties was based on identical allegations in their then-live pleading (the Second Amended Petition) that are alleged in the present New Amended Complaint.[47] Ironically, in explaining why the fiduciary duties did not extend to the Cricket Defendants, Plaintiffs relied on the qualifier "as applicable" to assert that their allegations of control only applied to AT&T Mobility Corporation and AT&T Inc., "not the Cricket Defendants as erroneously claimed by Defendants in their Motion to Dismiss."[48] This further illustrates the absurdity of Plaintiffs' argument that "as applicable" is sufficient to plead any claims against any particular AT&T Defendant.[49]

---

[45] ECF 56 ¶ 60.

[46] ECF 20 ¶ 36 (citing ECF 1-2 at 67, 84, 87, 89, 91, Pls.' Second Am. Pet. at preamble, ¶¶ 43, 53, 63, 71).

[47] *See* note 16 *supra*.

[48] ECF 20 ¶ 36 & n.66.

[49] *See* Part III.B.2.a *supra*.

29. Second, Section 1.4 does not create fiduciary duties in non-parties to the Partnership Agreements. Section 1.4 states "neither the Partners *nor any of their Affiliates* shall take any action inconsistent with the provisions of this Agreement or contrary to the best interest of the Partnership at any time."[50] But Plaintiffs admit that the Non-General Partner Defendants are not parties to the Partnership Agreements.[51] Undeterred, and despite this fatal presumption that an agreement could create fiduciary duties for an entity that is not a party to that agreement, Plaintiffs argue that if the Partnership Agreements did in fact authorize the General Partner's complained of conduct, such a provision still "would not foreclose Plaintiffs' fiduciary duty claims against the Non-General Partner Defendants."[52] In essence, Plaintiffs argue that the reference to "Affiliates" in Section 1.4 of the Partnership Agreements creates unassailable, "default" fiduciary duties for all entities fitting the "Affiliates" definition, and, even more, those supposed fiduciary duties minted by the Partnership Agreements cannot be restricted by the language of the Partnership Agreements that supposedly created them. This argument does not follow at any level and, tellingly, Plaintiffs failed to cite a single case to support either of these illogical propositions.[53]

---

[50] ECF 55 Exs. A, B, C, Partnership Agrs. § 1.4 (emphasis added).

[51] ECF 56 ¶ 60 (noting that "none of [the Non-General Partner Defendants] are parties to the Partnership Agreements.").

[52] *Id.* ¶ 78.

[53] *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. CIV.A.15754, 2000 WL 1476663, at *21 (Del. Ch. Sept. 27, 2000) (refusing to impose fiduciary duties on directors of the corporate general partner because "[t]o conclude so would be to rewrite the understanding that exists between the parties to the Partnership Agreement").

#### *(2) The New Amended Petition's allegations of "control" do not support claims against the Non-General Partner Defendants.*

30. The New Amended Petition's conclusory allegations that some unnamed "AT&T Defendants control[] AT&T Mobility . . . because those AT&T entities exercise control over the Partnerships and the Partnerships' property"[54] are insufficient to impute liability to the Non-General Partner Defendants. Because Plaintiffs make no allegations as to any specific Defendant's control as to specific partnership assets, they do not meet the pleading burden.[55] Plaintiffs' reliance on *In re USACafes L.P. Litigation*[56] is misplaced, and even if the standard stated in that case applied, Plaintiffs have not sufficiently pleaded the requisite control to state a claim as to any of the Non-General Partner Defendants.[57] Therefore, all claims against the Non-General Partner Defendants should be dismissed.

31. Under Delaware law, limited partners generally may look beyond the general partner for redress "[o]nly if there [is] abuse of the corporate form . . . that would justify veil piercing."[58] However, "[u]nder the less venerable" and inapplicable standard from *USACafes* and its progeny,[59] individuals and entities

---

[54] ECF 54 ¶¶ 49, 59, 69, 77; *see also id.* preamble & ¶¶ 46, 93, 104.

[55] *See Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 WL 1124451, at *9 (Del. Ch. Apr. 20, 2009) ("[T]o have any fiduciary duties to an entity, the affiliate must exert control over the assets of that entity.") (citations omitted).

[56] 600 A.2d 43 (Del. Ch. 1991).

[57] Contrary to Plaintiffs' suggestion in the Response, *Weinberger v. UOP, Inc.*, 457 A.2d 701, 703 (Del. 1983) does not support Plaintiffs' argument that the Non-General Partner Defendants owe default fiduciary duties to the Limited Partners. *See* ECF 56 ¶ 61. Rather, the case states that directors of a parent and subsidiary can owe duties of "good management" to both companies. *Weinberger*, 457 A.2d 710-11.

[58] *Gotham Partners*, 2000 WL 1476663, at *20.

[59] *See id.* at *19.

who control the general partner may owe a duty of loyalty to the limited partners in certain circumstances that do not apply here.[60]

32. First, this standard does not apply to any of the Non-General Partner Defendants because it runs contrary to the majority view under Delaware law.[61] Second, Plaintiffs point to no precedent to impute a fiduciary duty to entities like AT&T Inc. and Cricket Wireless LLC that lack a direct, majority ownership interest in the General Partner.[62] Third, because the Partnership Agreements eliminate the General Partner's common law fiduciary duties, no fiduciary duties exist that can be extended to a "controller" in any event.[63] *USACafes* is inapplicable for this reason as well because even if Plaintiffs had adequately pleaded that the Non-General Partner Defendants were the General Partner's controller (and they have not), the Partnership Agreements contractually eliminated the General Partner's traditional fiduciary duties.[64] In short, Plaintiffs cannot rely on *USACafes* to avoid their

---

[60] *Lewis v. AimCo Props., L.P.*, No. 9934-VCP, 2015 WL 557995, at *5 (Del. Ch. Feb. 10, 2015) (citing *USACafes*, 600 A.2d at 48); *see also Feeley v. NHAOCG, LLC*, 62 A.3d 649, 671-72 (Del. Ch. 2012) (dismissing claims for breach of duty of care and noting that "*USACafes* has not been extended beyond duty of loyalty claims.") (citations omitted). Accordingly, all of Plaintiffs' duty of care claims against the Non-General Partner Defendants should be dismissed, even if the Court were to apply *USACafes*.

[61] *See Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, No. 5502-CS, 2011 WL 3505355, at *30 & n.186 (Del. Ch. Aug. 8, 2011); *Gotham Partners*, 2000 WL 1476663, at *20.

[62] *Cf. Lewis*, 2015 WL 557995, at *5-6.

[63] *Wenske v. Blue Bell Creameries, Inc.*, No. 2017-0699-JRS, 2018 WL 3337531, at *17 (Del. Ch. July 6, 2018) (citation omitted).

[64] *See* Part III.F.1 *infra*.

obligation to adequately plead as to each individual Defendant that it used the General Partner as a fraud or sham entity.[65]

33. Further, Plaintiffs' reliance in the Response on the language in AT&T Teleholdings, Inc.'s FCC filing that certain entities "manage[] and control[]" various AT&T entities does not plausibly plead the necessary control and other elements required under Delaware law to support Plaintiffs' claims against the Non-General Partner Defendants.[66] As explained above, "control" in the context of vicarious liability means control over a partnership's assets.[67] This FCC filing does not even list the Partnerships, much less state that any of the Non-General Partner Defendants control any Partnership assets.

34. Finally, Plaintiffs' reliance on *In re Boston Celtics Limited Partnership Shareholders Litigation* to support their argument that they "are not required to plead what specific AT&T entity engaged in what conduct and at what time" is misplaced.[68] In *Boston Celtics*, the court held that the plaintiffs adequately pleaded upstream fiduciary liability with an allegation that the upstream controlling persons performed management functions or otherwise carried out activities of the subject entity.[69] However, in that case, the plaintiffs sufficiently alleged that the directors of the general partner owed the limited partners fiduciary duties through

---

[65] *See MicroStrategy Inc. v. Acacia Research Corp.*, No. 5735-VCP, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010).

[66] *See* ECF 56 ¶¶ 156-57 & n.320.

[67] *See Bay Ctr. Apartments Owner, LLC*, 2009 WL 1124451, at *9.

[68] *See* ECF 56 ¶ 157 (citing *In re Boston Celtics Ltd. P'Ship S'holders Litig.*, No. C.A. 16511, 1999 WL 641902 (Del. Ch. Aug. 6, 1999)).

[69] *In re Bos. Celtics*, 1999 WL 641902, at *4.

allegations that the directors performed all of the partnership's management functions and carried out the activities of the partnership.[70] But here, Plaintiffs did not sufficiently plead that AT&T Inc. and the Cricket Defendants perform all of the Partnerships' management functions and carry out the Partnerships' activities.[71] Nor could they. None of these Defendants have any direct ownership or control of the General Partner. And while AT&T Mobility Corporation is the direct parent of the General Partner, Plaintiffs' allegations likewise are insufficient as they do not adequately plead control for the reasons explained above.

c. **Plaintiffs have not pleaded plausible facts to support claims against the Nominal Defendants.**

35. All claims against the Nominal Defendant Partnerships should be dismissed because Plaintiffs have failed to assert any claims against them. Plaintiffs acknowledge that the Partnerships are named as nominal defendants only for purposes of Plaintiffs' derivative claims and that "any judgment obtained runs in [their] favor"—thereby conceding that there are no actual claims against the Nominal Defendant Partnerships upon which Plaintiffs seek relief.[72]

36. While Plaintiffs argue that they were required to name the Nominal Defendants in their derivative claims, the Delaware Limited Partnership Act permits (1) limited partners to bring individual claims for wrongs to a partnership,

---

[70] *Id.*

[71] *See* ECF 54 ¶¶ 49, 59, 69, 77; *see also id.* preamble & ¶¶ 46, 93, 104.

[72] ECF 56 ¶ 161.

and (2) partnerships to bring direct claims for breach of a partnership agreement—i.e., the claims need not be brought derivatively.[73]

37. Because Plaintiffs have failed to sufficiently allege facts applicable to the Nominal Defendants that could plausibly subject them to liability, Plaintiffs' claims against them should be dismissed.

### C. Plaintiffs' Claims Based on Conduct Occurring Outside the Applicable Limitations Periods Should be Dismissed.

#### *1. Statutes of limitations can serve as a basis for dismissal at the motion to dismiss stage.*

38. In their Response, Plaintiffs incorrectly argue that a statute of limitations cannot give rise to dismissal because it is an affirmative defense.[74] However, the Fifth Circuit has held that "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[75] As explained in the Motion to Dismiss and discussed below, the alleged conduct on which Plaintiffs' claims are based occurred outside the applicable limitations period, and Plaintiffs have failed to plead the discovery rule or any other basis for tolling to save their claims from dismissal.

---

[73] *See* 6 Del. C. § 15-405(a) ("A partnership may maintain an action against a partner for a breach of the partnership agreement, or for the violation of a duty to the partnership, causing harm to the partnership."); *id.* § 15-405(b) ("A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business . . . ."). While Plaintiffs argue that the Partnerships are necessary parties for accounting purposes (ECF 56 ¶ 162), an accounting is not required under Delaware law. 6 Del. C. § 15-405(b).

[74] ECF 56 ¶ 184.

[75] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted); *see also Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (noting that a complaint that shows relief to be barred by an affirmative defense can be dismissed on that basis) (citing cases).

### 2. *Plaintiffs' claims based on conduct before October 21, 2012 are barred by limitations.*

39. Plaintiffs' claims for fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of the Partnership Agreements are subject to four-year limitations periods.[76] Thus, any aspects of these claims based on alleged actions occurring before October 21, 2012 are barred by limitations and should be dismissed. In connection with these claims, Plaintiffs' New Amended Petition repeatedly references Project Smoothie and the data cost sharing process, both of which were allegedly implemented in 2010 or earlier.[77] While Plaintiffs' Response asserts that Defendants are "incorrect" that Plaintiffs' claims based on Project Smoothie and data cost sharing accrued before 2012, Plaintiffs neither disavow their claims, nor support their assertion with authority.[78]

40. Further, Plaintiffs' belated attempt to invoke the discovery rule to toll limitations—which Plaintiffs did not plead in the New Amended Petition—fails. A party seeking to invoke the discovery rule must plead the rule or it is waived.[79] To plead the discovery rule, Plaintiffs must allege that the wrongful act and resulting injury were inherently undiscoverable at the time they occurred and the evidence of injury must be objectively verifiable.[80] An injury is inherently undiscoverable if "it

[76] *See In re BP p.l.c. Sec. Litig.*, 51 F. Supp. 3d 693, 697 (S.D. Tex. 2014) (applying forum state statute of limitations). *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4), (5) (fraud and breach of fiduciary duty); *id.* § 16.051 (residual four-year limitations period); *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 144-46 (Tex. 2019) (applying limitations period of underlying tort for derivative liability claims); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (breach of contract).

[77] ECF 54 ¶¶ 4, 5, 17(a), 70, 78, 85, 93, 104.

[78] ECF 56 ¶ 186.

[79] *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) (citations omitted).

[80] *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

is by nature unlikely to be discovered within the prescribed limitations period despite due diligence."[81] Plaintiffs did not and could not make this assertion in the New Amended Petition.

41. To the extent Plaintiffs truly were not aware of any alleged conduct related to their present claims, such lack of awareness is attributable to Plaintiffs' failure to exercise reasonable diligence.[82] In their Response, Plaintiffs state that it is "incorrect" that the public filings made concurrent with the alleged wrongful acts cited in the New Amended Petition should have alerted Plaintiffs to their claims, but again Plaintiffs provide no support.[83] Likewise, Plaintiffs' vague statements in their Response that they "were unaware of much of Defendants [sic] conduct and/or the actual effect of same until shortly before filing suit," provide no indication of what constitutes "much of Defendants' conduct."[84] These bald assertions do nothing to contradict the fact that if Plaintiffs not aware of the alleged acts that form the basis of their claims, then such lack of knowledge is the result of their failure to

---

[81] *Id.* at 7 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). Plaintiffs attempt to ease their burden by citing dicta in an unpublished bankruptcy decision. ECF 56 ¶ 185 n.391 (citing *Douglass v. Langehennig* (*In re Douglass*), Bankr. No. 04-12499-CAG, Adv. No. 08-1007, 2008 WL 2944568, at *11-12 (Bankr. W.D. Tex. July 25, 2008)). But that court still recognized that "limitations will only be tolled until 'the time the concealed fraud is discovered or could have been discovered by reasonable diligence.'" *Douglass*, 2008 WL 2944568, at *12. And "acquiescence in and reliance on [a] relationship" without some evidence of diligence, "is insufficient to toll the running of limitations." *Powers v. McDaniel*, 785 S.W.2d 915, 919 (Tex. App.—San Antonio 1990, writ denied).

[82] *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (per curiam) ("The discovery rule delays accrual until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury.") (internal quotations and citation omitted).

[83] ECF 56 ¶ 186.

[84] *Id.* ¶ 187.

exercise reasonable diligence.[85] Instead, these conclusory assertions are merely ineffective attempts to belatedly invoke the discovery rule via the Response and avoid the applicable statute of limitations.

42. Plaintiffs are also incorrect that the continuing tort doctrine or a non-waiver clause in the Partnership Agreements[86] would save their claims from dismissal based on limitations. Both Texas and Delaware courts refuse to apply the continuing tort doctrine in situations like this where single acts—not contributing Cricket, setting rates, etc.—cause injury that is felt every time the partners receive distributions.[87] For the continuing tort doctrine to apply, there must be a repeated injury caused by repetitive acts, not merely a single act that causes continuous injury.[88] Here, Plaintiffs allege single decisions that caused assets to be allocated in certain ways.[89] While the effect of these actions may continue into the future, the

---

[85] *See* ECF 55 ¶ 124.

[86] Plaintiffs argue that for limitations to apply, the Limited Partners must first waive their ability to bring a claim, pursuant to Section 19.5 of the Partnership Agreements. ECF 56 ¶ 190. It is not surprising that Plaintiffs fail to cite authority for such a remarkable assertion, which would eviscerate the statute of limitations in almost any commercial contract.

[87] *See Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451-53 (5th Cir. 2007) (holding trade secret misappropriation was not continuing tort); *Daboub v. Gibbons*, 42 F.3d 285, 291 (5th Cir. 1995) (holding that copyright claim did not renew each time a record was sold); *Hendrix v. City of Tazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990) (holding unfair wages claim arose when wage was set, not with each paycheck); *see also Raza v. Siemens Med. Sols. USA Inc.*, 607 F. Supp. 2d 689, 693 (D. Del. 2009) (holding date trade secret is divulged is date for limitations, it is not a continuing tort); *Kahn v. Seaboard Corp.*, 625 A.2d 269, 271 (Del. Ch. 1993) (holding that alleged breach of fiduciary duty claim arose on date unfavorable contract was entered into; later payments on that contract did not make it a continuing tort).

[88] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017).

[89] *See* ECF 54 ¶ 5 (adopting a "data cost sharing process"); *id.* ¶ 6 (acquiring Cricket); *id.* ¶ 8 (entering spectrum agreements and creating allocation methods).

cause of Plaintiffs' alleged injuries can be traced back to a single decisional moment. Thus, the continuing tort doctrine does not apply.

### *3. Plaintiffs' tortious interference and conversion/civil theft claims are barred by the two-year statute of limitations.*

43. As explained in Defendants' Motion to Dismiss,[90] to the extent Plaintiffs' tortious interference and conversion/civil theft claims are based on alleged breaches of the Partnership Agreements that occurred more than two years before Plaintiffs commenced this suit, the claims are barred by limitations.[91] The acts in the New Amended Petition allegedly constituting tortious interference and conversion/civil theft refer to conduct occurring before October 21, 2014, including the March 2014 Cricket acquisition and the Cricket customers' use of the Partnerships' network.[92] The New Amended Petition does not point to any later dates when alleged tortious conduct occurred.

44. In another belated attempt to invoke the discovery rule, Plaintiffs argue that their claims did not accrue until April or July 2015 because they were "kept in the dark" and "unaware of much of Defendants [sic] conduct."[93] These broad and conclusory statements that Plaintiffs were "not aware" of the alleged conduct[94] are insufficient to invoke the discovery rule or otherwise toll limitations.

---

[90] *See* ECF 55 ¶ 68.

[91] *See Smith v. Hous. Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 581 n.4 (S.D. Tex. 2017), *judgment entered*, No. CV H-16-401, 2017 WL 238263 (S.D. Tex. Jan. 17, 2017) (citations omitted) (two-year limitations period for tortious interference claims).

[92] ECF 54 ¶¶ 6, 93, 96.

[93] ECF 56 ¶¶ 187, 188.

[94] *Id.* ¶ 188 (citing ECF 54 ¶¶ 17(a), 104) (Plaintiffs "were not aware of Defendants' willful and intentional interference with the Partnership Agreements prior to filing suit").

All of the conduct allegedly related to Plaintiffs' tortious interference and conversion/civil theft claims is conduct that Plaintiffs were or should have been aware of in March 2014 had they exercised reasonable diligence, given the public nature of the transaction and discussions about spectrum at Partnership meetings in 2014.[95]

45. Like their other claims, Plaintiffs' tortious interference and conversion/civil theft claims are not saved by the continuing tort doctrine, the non-waiver clause, or the discovery rule.[96] Therefore, these claims should be dismissed.

**D. Plaintiffs Have Not Stated a Claim for Breach of the Partnership Agreements by the General Partner.**

46. As explained in Defendants' Motion to Dismiss, Plaintiffs have failed to adequately allege a claim for breach of the Partnership Agreements against the General Partner. Plaintiffs' lengthy Response does nothing to change the fact that the breach of Partnership Agreements claim must fail as pleaded in the New Amended Petition. The Partnership Agreements' unambiguous language reveals that Defendants' reading of the relevant sections is the only reasonable interpretation, and Defendants stand on the point-by-point arguments for dismissal in the Motion to Dismiss.[97]

---

[95] ECF 54 ¶¶ 6, 7.

[96] *See* Part III.C.2 *supra*.

[97] Plaintiffs' contention that the Partnership Agreements are ambiguous and their suggestion that the Court may convert Defendants' Motion to Dismiss into a motion for summary judgment to resolve the ambiguities is baseless. *See* ECF 56 ¶¶ 25-26. Defendants' arguments are based on the plain, unambiguous language of the Partnership Agreements, and the Court can resolve issues as to unambiguous agreements at the motion to dismiss stage as Plaintiffs concede. *See id.* ¶ 25. Plaintiffs' contract ambiguity and other merits-based arguments in the Response are improper under Rule

#### *1. Plaintiffs failed to plead that the General Partner did not deem each of the complained of transactions reasonable or appropriate in furtherance of the Partnerships' purposes—a pleading failure fatal to Plaintiffs' breach of Partnership Agreements claim.*

47. Plaintiffs' Response continues to ignore and misinterpret the full context of the Partnership Agreements in an effort to create a breach where there is none. The Partnership Agreements are rife with provisions that empower the General Partner alone to conduct Partnership business, including the activities that Plaintiffs mischaracterize as "self-dealing" and in breach of the Partnership Agreements.[98] Plaintiffs seemingly recognize the threat that the broad grant of authority in Section 7.1 of the Partnership Agreements has on their breach of Partnership Agreements claims, because they attempt to distract from Section 7.1's actual language.[99] Section 7.1 requires that the actions (or forbearances) taken by the General Partner be reasonably deemed *by the General Partner* to be necessary or appropriate in furtherance of the purposes of the Partnerships.[100] Nowhere in

---

12(b)(6). And Defendants have neither requested summary judgment nor submitted materials outside the pleadings that would convert their motion to a summary judgment motion.

[98] ECF 55 ¶¶ 82-85; *id.* Exs. A, B, C, Partnership Agrs. § 1.2 (providing for naming rights "as the General Partner deems necessary"); § 4.1 (carrying out Partnership's responsibility to provide Cellular Service as the General Partner "may deem necessary or appropriate" and as "the General Partner may deem to be in the Partnership's best interests," and providing management and accounting services "as the General Partner may deem necessary or appropriate"); § 5.3 (empowering the General Partner alone to determine the capital needed for the Partnership); § 6.2 ("The General Partner shall have the right to make such elections, consents, compromises or representations with respect to tax matters as the General Partner may deem to be in the best interests of the Partnership."); § 6.3 (giving the General Partner the discretion to determine the amount of Partnership reserves); § 7.1 (empowering the General Partner to act on the Partnership's behalf as "reasonably deemed by the General Partner to be necessary or appropriate"); § 7.2 (vesting the General Partner with additional powers); § 8.2 (General Partner manages and conducts the Partnership's business as it "reasonably may deem necessary or desirable to carry on the purpose of the Partnership"); *see also* § 16.1 (exculpation of General Partner); § 16.2 (indemnification of General Partner).

[99] ECF 56 ¶¶ 82-88.

[100] ECF 55 Exs. A, B, C, Partnership Agrs. § 7.1.

Plaintiffs' New Amended Petition do they allege that the General Partner did not deem each of the complained of transactions reasonable or appropriate in furtherance of the Partnerships' purposes. This pleading failure is fatal to Plaintiffs' breach of Partnership Agreements claim.

### *2. Plaintiffs' other bases for breach of the Partnership Agreements fail to state a claim.*

48. Plaintiffs next argue that the Cricket arrangement, cost based data rates, and revenue allocation are not "documented" in a form that is required by Section 7.1(a).[101] Plaintiffs again seek to write provisions into the Partnership Agreements that are not there. The term "documented" is not defined in the Partnership Agreements. In fact, Section 4.1 of the Partnership Agreements explains that the General Partner is responsible for maintaining books and records, and the General Partner keeps the books and records "as the General Partner may deem necessary or appropriate."[102] Again, Plaintiffs have failed to adequately allege a breach.[103]

---

[101] ECF 56 ¶ 86. Plaintiffs admit that even under their misguided definition of "documented," the spectrum service agreements are documented in accordance with the Partnership Agreements. *See id.* ¶ 180 (quoting ECF 54 ¶ 46).

[102] ECF 55 Exs. A, B, C, Partnership Agrs. § 4.1. Plaintiffs argue that the General Partner has conceded breaches of Sections 7.1, 8.2 (and Section 7.5 of the RSA 18 and RSA 19 Partnership Agreements) related to a lack of executed contracts for various Partnership activities. But the General Partner has made no such concession, and the only reasonable reading of the Partnership Agreements simply does not require the type of formal written contracts that Plaintiffs advance.

[103] Plaintiffs also argue, without support, that Section 7.1 "actively contemplates that the Limited Partners will have the right to review all affiliate transactions." *See* ECF 56 ¶ 49. Plaintiffs have overreached—the Limited Partners are not granted a "right to review all affiliate transactions" anywhere in the Partnership Agreements, much less in Section 7.1.

49. Plaintiffs have also failed to adequately allege a breach of Sections 8.1, 1.4, and 3.3 of the Partnership Agreements.[104] In apparent recognition that their New Amended Petition does not allege the General Partner did not reasonably deem its acts to be necessary or appropriate as necessary to state a breach claim, Plaintiffs attempt to shift the burden to Defendants to explain that the General Partner believed its acts were reasonable.[105] But it is improper to expect a defendant at the motion to dismiss stage to affirmatively plead it has not breached a contract; it is the plaintiff's burden alone to state a claim for relief.[106] Plaintiffs have failed to adequately allege a breach of Sections 8.1, 1.4, and 3.3 of Partnership Agreements and the claims should be dismissed.

50. Next, Plaintiffs turn to Section 4.2, but still fail to explain how they have stated a claim for breach of the Partnership Agreements. The New Amended Petition fails to explain what alleged profit related to what conduct is supposedly in breach of Section 4.2. The New Amended Petition similarly only includes a short, uncited excerpt of Section 4.2 and does not otherwise indicate with any specificity the breach Plaintiffs are alleging.[107] This bare-bones pleading fails to adequately allege a breach with requisite specificity and should be dismissed for this reason alone.

---

[104] *See* ECF 55 ¶¶ 88-90.

[105] ECF 56 ¶ 93 ("Defendants do not even attempt to explain the General Partner's subjective belief.").

[106] *See Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763-64 (5th Cir. 2019) (limiting the Court's consideration of motion to dismiss to allegations in the complaint).

[107] *See* ECF 54 ¶ 87 (regarding spectrum); *id.* ¶ 88 (regarding allocation of revenue).

51. Regarding Section 4.4, Plaintiffs attempt to bolster their breach of Partnership Agreements claim by comparing recent treatment of wireless spectrum to past spectrum transactions. However, Section 4.4 requires only that the General Partner cause to be transferred to the Partnerships all "licenses . . . necessary to provide Cellular Service."[108] In their Response, Plaintiffs admit that the Partnerships hold their original cellular licenses and hold additional licenses contributed in the mid-2000s.[109] While the Partnerships may provide superior service to their customers by virtue of the spectrum that they lease, Plaintiffs do not allege anywhere in the New Amended Petition that these licenses are "necessary" to provide wireless service. Rather, on the face of the pleading it is apparent that the Partnerships were capable of providing Cellular Service long before the FCC issued the licenses that Plaintiffs now complain should be contributed.[110] Because Plaintiffs have alleged no facts to suggest that these spectrum licenses are necessary to provide Cellular Service, Plaintiffs have failed to adequately allege a breach of Section 4.4.

52. Plaintiffs allege that the General Partner failed to comply with Section 7.3 permitting the Limited Partners to "[h]ave on demand true and full information" related to the Partnerships.[111] But, despite Plaintiffs' apparent disagreement with the information they received, Plaintiffs do admit that they received information

---

[108] ECF 55 Exs. A, B, C, Partnership Agrs. § 4.4.

[109] *See* ECF 56 ¶ 99.

[110] *See* ECF 54 ¶ 2.

[111] *See id.* ¶¶ 88, 89.

when demanded.[112] Because the New Amended Petition does not allege with adequate specificity what information was not "true and full" for purposes of a breach of Section 7.3, Plaintiffs' claim should be dismissed.

53. Plaintiffs' Response regarding Section 7.5 of the RSA 18 and RSA 19 Partnership Agreements neglects Defendants' argument that the New Amended Petition fails to adequately allege that the complained of transactions were not "comparable to" or "not substantially less favorable than" a similar arm's length transaction, or that the General Partner acted with "gross negligence or willful misconduct."[113] Because the New Amended Petition fails to state a plausible claim related to Section 7.5, the claim should be dismissed. Similarly, as explained in detail in the Motion to Dismiss regarding Plaintiffs' insufficient allegations regarding breach of record keeping and competition provisions,[114] Plaintiffs have failed to adequately allege in the New Amended Petition, or explain in their Response, how the pleaded conduct related to the Cricket arrangement breaches the Partnership Agreements. Because of this shortfall, the breach of Partnership Agreements claim should be dismissed.

**E. Plaintiffs Have Not Pleaded Fraud with Particularity Under Rule 9(b).**

54. Plaintiffs' Response concerning their fraud claim merely repeats the same conclusory allegations, impermissible group pleading, and "formulaic

---

[112] *See id.* ¶ 106. Plaintiffs also state in paragraph 105 of their Response that discovery requests "remain pending and have been pending since February 2020 and earlier." Defendants are uncertain to what Plaintiffs are referring because Defendants have timely responded to all discovery requests posed by Plaintiffs, subject to a rolling document production as discussed among the parties.

[113] ECF 55 Exs. B, C, RSA 18 and RSA 19 Partnership Agrs. § 7.5.

[114] ECF 55 ¶¶ 100-110.

recitation" of the elements of fraud in the New Amended Petition. Additionally, Plaintiffs' confusing vacillation between the terms "AT&T" and "Defendants" "as applicable" in their attempt to supplement the New Amended Petition with additional allegations (which still fail to state a claim) further illustrates why Plaintiffs have not stated a fraud claim against any Defendant.

***1. Plaintiffs have not pleaded the who, what, when, where, and content of any particular Defendant's alleged misrepresentations.***

55. As discussed in the Motion to Dismiss, Plaintiffs' allegations that Eric Wages of New Cingular explained to unnamed Limited Partners at April and July 2015 meetings the Partnership economics related to AT&T Inc.'s acquisition of Cricket Wireless and how the Partnerships benefitted are not sufficient to state a claim. These allegations do not specifically allege that any such statements were false or explain why they were fraudulent.[115] Plaintiffs' Response merely paraphrases a few paragraphs of the New Amended Petition and pronounces in conclusory fashion that those allegations state a fraud claim.[116]

56. Further, Plaintiffs do not explain how the New Amended Petition's generic reference to "public pronouncements" of unidentified "senior AT&T executives" that certain unspecified "representations to the Limited Partners" were untrue or misleading supports Plaintiffs' fraud claim.[117] The New Amended Petition does not meet the Fifth Circuit's requirements that the complaint identify the who,

---

[115] *Id.* ¶¶ 59-60; *see Brown v. Bilek*, 401 F. App'x 889, 893-95 (5th Cir. 2010); *see also In re Life Partners Holdings, Inc.*, 926 F.3d 103, 116-17 (5th Cir. 2019).

[116] ECF 56 ¶ 142.

[117] *See* ECF 54 ¶ 12.

what, when, where, and content of any alleged misrepresentations.[118] Instead, Plaintiffs allege only that "such representations were false," and cite to paragraphs 12 and 103 of the New Amended Petition.[119] This is completely circular and ineffective. Paragraph 12 merely makes a conclusory allegation regarding unidentified "senior AT&T executives" and alleges that the Limited Partners learned that unidentified "representations" were "either untrue in material respects when made or were at least materially misleading when made."[120] And paragraph 103 is merely a formulaic recitation of the elements of fraud and a conclusory statement that Defendants committed fraud, which cannot survive a motion to dismiss.[121]

*2. Plaintiffs have not sufficiently pleaded the elements of fraud and fraud by nondisclosure.*

57. Plaintiffs' assertion that they have sufficiently pleaded the elements of fraud and fraud by nondisclosure is incorrect.[122] For example, Plaintiffs have not pleaded the required elements of their claim that Defendants withheld information, that Plaintiffs took action in reliance on purportedly undisclosed information, and that Plaintiffs were injured by any alleged nondisclosure. Rather, the New Amended Petition pleads that (1) the General Partner provided all required

---

[118] *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349-50 (5th Cir. 2002).

[119] ECF 56 ¶ 142(c).

[120] ECF 54 ¶ 12.

[121] *Id.* ¶ 103. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (alterations in original) (citations omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

[122] ECF 56 ¶¶ 142, 146-47 (citing ECF 54 ¶¶ 11-14, 103).

materials to the Partnerships; (2) the General Partner's personnel explained how the Cricket acquisition and data cost sharing would benefit the Partnerships at April and July 2015 meetings; and (3) Plaintiffs have always received information from the General Partner (whether they like what that information is or not).[123] Plaintiffs have not alleged any facts supporting any fraudulent conduct in connection with the General Partner's (or any other Defendant's) purported treatment of the Partnerships.[124] In short, the New Amended Petition suffers the infirmities explained in Defendants' Motion to Dismiss, and Plaintiffs' Response impermissibly seeks to add allegations and elements of claims that are absent from the New Amended Petition.

*3. Plaintiffs' impermissible group pleading can state no fraud claim against any Defendant.*

58. Further, Plaintiffs do not and cannot show that the New Amended Petition specifies how each of the five "AT&T Defendants" engaged in the alleged fraud.[125] Plaintiffs' New Amended Petition does not allege that anyone from AT&T

---

[123] ECF 54 ¶¶ 11, 12.

[124] *Id.* ¶¶ 11, 12, 14, 103.

[125] Comparing the allegations in the New Amended Petition to the "summary" of those allegations in Plaintiffs' Response reveals that Plaintiffs are inconsistently applying the terms "AT&T" and "Defendants" in their New Amended Petition and Response. For example, the New Amended Petition defines "AT&T" as "AT&T, Inc.; New Cingular Wireless PCS, LLC d/b/a AT&T Mobility; AT&T Mobility Corporation; Cricket Communications, LLC; and/or Cricket Wireless LLC, as applicable," but Plaintiffs do not specify when certain combinations are "applicable." *See* ECF 56 ¶ 155. Additionally, the New Amended Petition uses "Defendants" as including the Nominal Defendants, while the "Glossary of Key Defined Terms" in Plaintiffs' Response does not define the term "Defendants" as including the Nominal Defendants. Among other examples, paragraph 5 of the New Amended Petition alleges that "AT&T" adopted a data cost sharing process, while Plaintiffs' Response inconsistently states that "Defendants" created the cost sharing process. *Compare* ECF 56 ¶ 66 n.121 ("AT&T Defendants . . . developed and implemented the data cost sharing process"), *and* ¶ 188 ("AT&T's data cost sharing process"), *with* ¶ 147a ("Defendants adopted a 'data cost sharing process'").

Inc., AT&T Mobility Corporation, or the Cricket Defendants were present at the 2015 meetings or otherwise allege that anyone from these entities ever made any misrepresentations to anyone. Nor do Plaintiffs allege that any of these parties had a duty to disclose additional information.[126] Plaintiffs' Response only adds to the confusion, providing a misleading summary of the group fraud by nondisclosure assertions in the New Amended Petition, stating that "AT&T" has withheld information, "AT&T" failed to disclose material facts, "Defendants" adopted a data cost sharing process, "Defendants" failed to disclose multiple revenue streams, and "Defendants" were engaged in a scheme to squeeze out Limited Partners.[127]

59. Plaintiffs' insistence that their definition of "AT&T," "AT&T Defendants," or "Defendants" includes "AT&T Inc.,; New Cingular Wireless PCS LLC d/b/a AT&T Mobility [General Partner]; AT&T Mobility Corporation; Cricket Communications, LLC; ***and/or*** Cricket Wireless LLC, ***as applicable***" only exacerbates Plaintiffs' pleading deficiencies.[128] Rules 8 and 9(b) do not require Defendants and the Court to guess as to which allegation is "applicable" to each party or which Defendant committed the "applicable" conduct in connection with each claim.[129] It is Plaintiffs' responsibility to allege in their live pleading the

---

[126] *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006); *In re Enron*, 761 F. Supp. at 575-79.

[127] ECF 56 ¶ 147(a) (citing ECF 54 ¶¶ 4, 17, 104).

[128] ECF 56, Glossary of Key Defined Terms (emphasis added).

[129] *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365-66 (5th Cir. 2004) (refusing to impute statements on personnel up the corporate chain as improper "group pleading").

"applicable" facts and conduct as to each Defendant—which Plaintiffs have not done here.

60. Despite Plaintiffs' attempt to replead through their Response and their reliance on the qualifiers "and/or" and "as applicable," one thing is clear: if Plaintiffs cannot identify which entity is responsible for which purported misrepresentation or nondisclosure, then Defendants surely cannot be on notice of the fraud claims against them.[130] Plaintiffs have not pleaded their fraud claims with specificity, and the claims should be dismissed.

**F. Plaintiffs Have Not Stated a Claim for Breach of Fiduciary Duty.**

61. Despite the Response's efforts to contradict the Partnership Agreements' explicit provisions, Plaintiffs' claim for breach of fiduciary duty fails to state a claim. As explained in Part III.B *supra*, Plaintiffs' breach of fiduciary duty claim impermissibly restates the same deficient claim for breach of the Partnership Agreements and must be dismissed on that basis.

62. Further, as discussed in Defendants' Motion to Dismiss, the breach of fiduciary duty claim fails because (1) the Partnership Agreements eliminated and supplanted the traditional fiduciary duties and Plaintiffs have failed to adequately plead the requisite level of conduct to state a breach of fiduciary duty claim; and (2) the entire fairness standard does not apply.[131]

---

[130] *See In re Enron*, 761 F. Supp. 2d at 575-79 (dismissing fraud claim where plaintiffs did not allege specific facts showing how defendant's role in a transaction proximately caused investors' injuries).

[131] It is undisputed that the Non-General Partner Defendants are not parties to the Partnership Agreements. For the reasons explained in Part III.B.2.b *supra*, they owe no fiduciary duties to Plaintiffs. Plaintiffs' Response confusingly argues that the Non-General Partner Defendants are not entitled to assert the terms of the Partnership Agreements as a defense to Plaintiffs' breach of fiduciary duty and other tort claims. ECF 56 ¶ 153. But it is Plaintiffs, not Defendants, who seek to

#### *1. The Partnership Agreements contractually eliminated traditional fiduciary duties.*

63. The language of the Partnership Agreements eliminates the General Partner's traditional fiduciary duties.[132] Under Delaware law, parties may contractually "define the parameters of fiduciary duties."[133] This includes eliminating the duties of loyalty, care, good faith, fair dealing, and candor.[134] Section 7.1 of the Partnership Agreements does just that by expressly granting the General Partner broad discretion to act as it "reasonably deems" necessary or appropriate on behalf of the Partnerships, including by entering into contracts and

---

bootstrap their breach of Partnership Agreements claims with their other tort claims as to all Defendants, including by virtue of alleged control over the General Partner purportedly in connection with Partnership business. Plaintiffs cannot have it both ways. If Plaintiffs assert that the Non-General Partner Defendants are divorced from the General Partner and its activities in connection with the Partnerships, then the Non-General Partner Defendants' association with this dispute is even more tenuous and they should be dismissed on this basis as well.

[132] *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 104-05, 109 (Del. 2013).

[133] *In re Cencom Cable Income Partners, L.P., Litig.*, No. 14634, 1996 WL 74726, at *4 (Del. Ch. Feb. 15, 1996).

[134] *See Norton*, 67 A.3d at 361-62; *In re Inergy L.P. Unitholder Litig. C.A.*, No. 5816-VCP, 2010 WL 4273197, at *13 (Del. Ch. Oct. 29, 2010); *In re Cencom*, 1996 WL74726, at *4; *see also* 6 Del. C. § 17-1101(d) (expressly allowing for a partner's duties to be expanded, restricted, or eliminated under a partnership agreement). Plaintiffs' attempt to distinguish these cases is unavailing. The language in *Norton* that the court recognized created a "contractual fiduciary duty" is similar to that in the Partnership Agreements here. *Norton*, 67 A.3d at 361 (providing for modification, waiver, or limitations on the standard of care and duties and allowing general partner to take action that "is reasonably believed by [the general partner] to be in, or not inconsistent with, the best interests of the Partnership."). Similarly, the agreement in *In re Inergy L.P.* provided that "[a]ny standard of care and duty imposed by this Agreement or under the Delaware Act or any applicable law, rule or regulation shall be modified, waived or limited to the extent permitted by law, as required to permit the General Partners to act under this Agreement . . . so long as such action is reasonably believed by the Managing General Partner to be in, or not inconsistent with, the best interests of the Partnership." *In re Inergy L.P.*, 2010 WL 4273197, at *7. The fact that Section 7.1 of the Partnership Agreements here do not contain identical language does not change its clear purpose of contractually proscribing the General Partner's duties. Finally, while *In re Cencom* dealt with a different contractual modification of the general partner's fiduciary duties not at issue here, the court there recognized that "[i]n the contractual setting of a limited partnership agreement, the parties may define the parameters of fiduciary duties." *In re Cencom*, 1996 WL 74726, at *4.

affiliate transactions.[135] Any other requirement would contradict the parties' intent.[136]

64. Contrary to Plaintiffs' assertions in their Response, Delaware law and the unpublished *Miller v. American Real Estate Partners, L.P.* case do not support Plaintiffs' argument that the parties could not contractually eliminate the General Partner's fiduciary duties here.[137] First, *Miller* was published before the cases cited in Defendants' Motion to Dismiss and Plaintiffs cannot explain how these later cases are not determinative. Further, the *Miller* case is distinguishable because the court there based its decision on language and provisions in the parties' partnership agreement that are not present in the Partnership Agreements at issue.[138]

65. Moreover, regardless of which version of the Delaware Limited Partnership Act governs, the Partnership Agreements' contractual elimination of fiduciary duties controls.[139] To the extent the former statute applies (which

---

[135] ECF 55 Exs. A, B, C, Partnership Agrs. § 7.1; *id.* § 8.2 ("The General Partner shall manage and provide administrative services to the Partnership, and shall execute all contracts, agreements, and instruments as the General Partner reasonably may deem necessary or desirable to carry on the purpose of the Partnership.").

[136] Delaware law "give[s] maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements." 6 Del. C. § 17-1101(c); *see also Kahn v. Icahn*, No. CIV. A. 15916, 1998 WL 832629, at *3 (Del. Ch. Nov. 12, 1998), *aff'd*, 746 A.2d 276 (Del. 2000).

[137] *Miller v. Am. Real Estate Partners, L.P.*, No. CIV.A.16788, 2001 WL 1045643 (Del. Ch. Sept. 6, 2001).

[138] *See id.* at *9. Specifically, the court found that it was not the parties' intent to eliminate fiduciary duties because (1) other language in the agreement specifically preempted conflicting provisions of other contracts but did not mention preemption of default laws, (2) other provisions in the agreement implied that fiduciary duties would apply except when the parties' agreement clearly modifies them, and (3) the parties' registration statement included restrictions on the acts of the general partner that discussed fiduciary duties. *Id.* None of these facts are applicable here, and thus this case is distinguishable and the court's reasoning does not apply.

[139] *In re Cencom*, 1996 WL 74726, at *4.

Defendants do not concede), it does not trump the Partnership Agreements' plain language, as Delaware courts have a strong policy of upholding contracting parties' intent and do not rewrite agreements to impose duties to which the parties did not agree.[140] In fact, the *Miller* case actually contradicts Plaintiffs' argument that parties could not contractually eliminate fiduciary duties before the present version of the Delaware Limited Partnership Act was enacted in 2004. *Miller* was decided in 2001 and specifically references Delaware cases in which parties to a partnership agreement had contractually eliminated fiduciary duties.[141] Moreover, the Delaware Limited Partnership Act itself recognizes that Limited Partnerships created after 1983—like the Partnerships at issue here—are governed by the present Act, which expressly recognizes parties' ability to contractually eliminate fiduciary duties.[142]

66. Further, Plaintiffs have not shown that Section 16.1 of the Partnership Agreements cannot serve as a basis to dismiss Plaintiffs' breach of fiduciary duty claim.[143] As explained in Defendants' Motion to Dismiss, this provision sets a

---

[140] *See Kahn v. Icahn*, 1998 WL 832629, at *2 (holding that freedom of contract and deference to the enforceability of partnership agreements is "precisely the reason why many choose the limited partnership form in Delaware").

[141] *Miller*, 2001 WL 1045643, at *7.

[142] *See* 6 Del. C. § 17-1104(a) ("All limited partnerships formed on or after January 1, 1983, the 'effective date,' shall be governed by this chapter."). The Partnerships were created after 1983. ECF 55 Ex A. at 1, Ex. B. at 67, Ex C. at 134. Accordingly, Section 17.1104(a) of the Delaware Limited Partnership Act applies, and, as explained in Defendants' Motion to Dismiss, the current version of the Delaware Limited Partnership Act expressly allows parties to contract away fiduciary duties. ECF 55 ¶ 72 & n.140 (citing 6 Del. C. § 17-1101(d)); *see also* ECF 55 Exs. A, B, C, Partnership Agrs. § 19.11 (stating that the contract controls over the prior Delaware Limited Partnership Act).

[143] *See generally In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 641 (Del. Ch. 2008) (relying on exculpatory clause in corporate charter to dismiss claim that directors violated their duty of care). The *Feeley* case that Plaintiffs cite in their Response for the proposition that exculpatory clauses like Section 16.1 recognize the continued existence of fiduciary duties is inapposite. *See* ECF 56 ¶ 57 (citing *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012)). In *Feeley*, the court's ruling that the availability of monetary damages, not fiduciary duties, were contractually eliminated was based

contractual standard by which to evaluate the General Partner's actions and requires Plaintiffs to sufficiently plead that the General Partner acted with willful misconduct or gross negligence—which the New Amended Petition fails to do.[144]

67. Plaintiffs attempt to overcome the Partnership Agreements' elimination of traditional fiduciary duties by arguing that the implied covenant of good faith and fair dealing applies to create a fiduciary duty. But this *contractual* covenant does not apply here. As explained in Defendants' Motion to Dismiss, there is no "gap" in the Partnership Agreements that warrants reliance on the implied covenant.[145] Instead, the Partnership Agreements expressly authorize the conduct that Plaintiffs assert justifies the application of the implied covenant.[146]

68. Plaintiffs have not adequately pleaded that the Limited Partners did not receive their contractual bargain under the Partnership Agreements. Just because Plaintiffs would like more compensation under the Partnership Agreements

---

on provisions in the agreement specifically addressing monetary damages and fiduciary duties. *Feeley*, 62 A.3d at 664. No such provisions exist in the Partnership Agreements.

[144] *See* ECF 55 Exs. A, B, C, Partnership Agrs. § 16.1; *see also id.* Exs. B, C, RSA 18 and RSA 19 Partnership Agrs. § 7.5. *See Fortis Advisors LLC v. Dialog Semiconductor PLC*, No. 9522-CB, 2015 WL 401371, at *5 (Del. Ch. Jan. 30, 2015).

[145] ECF 55 ¶ 75. *See Nemec*, 991 A.2d at 1125-26 ("The implied covenant of good faith and fair dealing involves a cautious enterprise, inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated. One generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement.") (internal quotations and citations omitted).

[146] *See* ECF 55 Exs. A, B, C, Partnership Agrs. § 7.5 (authorizing the General Partner to enter into contracts on behalf of the Partnership with the General Partner and its affiliates).

does not mean that the General Partner has acted arbitrarily or unreasonably.[147] Thus, Plaintiffs' argument for the application of the implied covenant fails.[148]

69. In short, Plaintiffs' attempt to impose fiduciary duties that conflict with the Partnership Agreements' express provisions fails to state a claim for breach of fiduciary duty.

*2. The entire fairness standard does not apply.*

70. Plaintiffs' repeated assertion in their Response that they have established that the "entire fairness" standard applies to Defendants' alleged conduct is misplaced. As fully briefed in Defendants' Motion to Dismiss, it is not Defendants' burden to prove entire fairness because the Partnership Agreements' plain language calls for application of the business judgment rule. Plaintiffs have failed to rebut the business judgment standard and have not met their initial burden to show that the entire fairness standard should apply. Accordingly, the burden has not shifted to Defendants.

71. The plain language of the Partnership Agreements, which grants the General Partner broad authority to act as it "reasonably deems" necessary or appropriate in conducting Partnership business and affairs, clearly indicates that the Court should apply the business judgment rule to evaluate the General

[147] *See Nemec*, 991 A.2d at 1128 ("Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract.").

[148] *See id.*; *Fortis Advisors*, 2015 WL 401371, at *5.

Partner's conduct.[149] Under Delaware law, the business judgment presumption may only be rebutted as follows:

> in rare cases where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith. The decision must be egregious, lack any rational business purpose, constitute a gross abuse of discretion, or be so thoroughly defective that it carries a badge of fraud.[150]

72. Plaintiffs have not rebutted the business judgment presumption because all of the acts on which Plaintiffs' allegations are based are authorized by the Partnership Agreements, as described above and in Defendants' Motion to Dismiss.[151] Only if a plaintiff sufficiently pleads that the business judgment rule was rebutted (which Plaintiffs here have not) could a court apply the entire fairness standard in the breach of fiduciary duty context.[152] And only then, once a plaintiff

---

[149] *See* ECF 55 Exs. A, B, C, Partnership Agrs. § 7.1 (stating that the General Partner "shall be empowered to do or cause to be done any and all acts reasonably deemed by the General Partner to be necessary or appropriate in furtherance of the purposes of the Partnership or forebear from doing any act if the General Partner reasonably deems such forbearance necessary or appropriate in furtherance of the purposes of the Partnership"); *see also Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1162 (Del. 1995) (stating that the business judgment rule is the default standard of review under Delaware law and places the initial burden of proof on plaintiffs).

[150] *RSH Liquidating Tr. v. Magnacca*, 553 B.R. 298, 314 (Bankr. N.D. Tex. 2016) (citing and quoting *Parnes v. Balley Entm't Corp.*, 722 A.2d 1243, 1246 (Del. 1999); *In re J.P. Stevens & Co.*, 542 A.2d 770, 780-81 (Del. Ch. 1988); *Aldina v. Internet.com Corp.*, No. Civ.A. 17235-NC, 2002 WL 31584292, at *4 (Del. Ch. Nov. 6, 2002)). Plaintiffs attempt to use *RSH Liquidating Trust* as authority to impose the entire fairness standard here. ECF 56 ¶ 66 & n.123. But not only did *RSH Liquidating Trust* not apply the entire fairness standard, it held "[t]he complaint fails to state a claim for breach of the duty of loyalty as to [the conflicted director]." 553 B.R. at 316. In so holding, the court noted legitimate potential business advantages from the transaction. *Id.* at 315-16. Here, Plaintiffs' allegations offer a lengthy explanation of the advantage of the Cricket transaction, ECF 54 ¶ 11, and elsewhere admit that "the Partnerships have been successful," *id.* ¶ 2. Therefore, much like in *RSH Liquidating Trust*, Plaintiffs have failed to state a claim for breach of the duty of loyalty, and thus, the entire fairness standard should not apply.

[151] *See* ECF 55 ¶¶ 76-77.

[152] *See Cinerama*, 663 A.2d at 1162. Specifically, Plaintiffs must rebut the presumption that "in making a business decision, the directors of a corporation acted on an informed basis [i.e., with due care], in good faith and in the honest belief that the action taken was in the best interest of the

demonstrates that the entire fairness standard applied, would the burden shift to defendants.[153]

73. Here, Plaintiffs argue in their Response that they have alleged conduct to rebut the business judgment rule and to invoke the entire fairness standard because they have alleged that Defendants have a conflict of interest by standing on both sides of the various transactions at issue. But as explained in Defendants' Motion to Dismiss, this argument fails because the Partnership Agreements permit the very acts that Plaintiffs allege constitute a breach of fiduciary duty.[154]

74. Finally, even in the context of an alleged self-interested transaction, at the motion to dismiss stage the burden still remains with plaintiffs to "demonstrate some basis for invoking the fairness obligation" before a court can apply the entire fairness standard.[155] Plaintiffs' New Amended Petition fails to plausibly allege how the entire fairness obligation is invoked and thus the standard does not apply.

### G. Plaintiffs Have Not Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty.

75. Plaintiffs' aiding and abetting breach of fiduciary duty claim fails to state a claim because (1) as explained in Part III.B.2.b *supra*, the Non-General

---

company." *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 196 (D. Del. 2000) (quoting *Cede & Co., Inc. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993) (alterations in original).

[153] *See Weinberger*, 457 A.2d at 703. Plaintiffs cite *Weinberger* for the general principle of the entire fairness standard, but neglect to mention that the initial burden remains with the plaintiff to demonstrate some basis to invoke the entire fairness analysis.

[154] *See RSH Liquidating Trust*, 553 B.R. at 314. *See also* ECF 55 Exs. A, B, C, Partnership Agrs. § 7.1(a).

[155] *See Solomon v. Pathe Commc'ns Corp.*, No. CIV. A. 12563, 1995 WL 250374, at *5 (Del. Ch. Apr. 21, 1995), *aff'd*, 672 A.2d 35 (Del. 1996) ("Even in a self-interested transaction in order to state a claim a shareholder must allege some facts that tend to show that the transaction was not fair.").

Partner Defendants do not owe a fiduciary duty to the Partnerships and thus there is no breach of fiduciary duty for the General Partner to aid and abet; (2) as to the Non-General Partner Defendants, Plaintiffs' insufficient "control" allegations do not adequately plead that these Defendants knowingly participated in any breach of fiduciary duty as explained in Part III.B.2 *supra*; and (3) Plaintiffs have failed to state a breach of fiduciary duty claim, which is a prerequisite for an aiding and abetting breach of fiduciary duty claim.[156]

76. In their Response, Plaintiffs argue that the General Partner can be liable for aiding and abetting AT&T Mobility Corporation and AT&T Inc.'s alleged breaches of fiduciary duty.[157] However, as discussed above, the Non-General Partner Defendants owe no fiduciary duties to the Limited Partners. Moreover, Delaware law is clear that a party cannot aid and abet its own alleged breach of fiduciary duty.[158] Therefore, Plaintiffs have not stated an aiding and abetting breach of fiduciary duty claim against the General Partner.

---

[156] *Binks v. DSL.net, Inc.*, No. 2823-VCN, 2010 WL 1713629, at *10-11 (Del. Ch. Apr. 29, 2010) (dismissing aiding and abetting claim where there was no underlying breach of fiduciary duty); *see also Higher Educ. Mgmt. Grp., Inc. v. Mathews*, No. 9110-VCP, 2014 WL 5573325, at *13 (Del. Ch. Nov. 3, 2014) (same).

[157] ECF 56 ¶ 123. Confusingly, in paragraph 123 of their Response Plaintiffs argue only that these two Defendants—AT&T Mobility Corporation and AT&T Inc.—owe fiduciary duties to the Partnerships and Limited Partners. But in paragraphs 89-93 of their Response, Plaintiffs argue that ***all*** Non-General Partner Defendants owe fiduciary duties. *Id.* ¶¶ 89-93. If Plaintiffs cannot consistently assert their claims, it is impossible for Defendants to be on notice of the claims and defend against them.

[158] *See* ECF 55 ¶ 79. It has long been the law in Delaware that to state a claim for aiding and abetting breach of fiduciary duty the defendant must be a third party to the fiduciary relationship. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (citing *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984), *aff'd* 575 A.2d 1131 (1990)); *see also Gotham Partners*, 817 A.2d at 172. In *Gilbert*, the court recited the elements as "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) knowing participation in that breach *by the party not in a direct fiduciary relationship*." 490 A.2d at 1057 (emphasis added). This continues to be required by the Delaware Supreme Court. *See RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 861-62 (Del. 2015)

77. As for the claim against the Non-General Partner Defendants, Plaintiffs argue that they have adequately pleaded that the Non-General Partner Defendants knowingly participated in the General Partner's breach of fiduciary duties. But Plaintiffs only point to vague and conclusory allegations that "AT&T"—which again is defined as possibly including all or some of Defendants "as applicable"—engaged in self-dealing transactions, a "methodical advancement" of Project Smoothie, and "activities designed to eliminate minority partners."[159] These conclusory allegations do not identify any specific conduct supporting the Non-General Partner Defendants' "knowing" participation. Further, Plaintiffs cannot point to any allegations in the New Amended Petition that can support a plausible inference that any of these "acts" highlighted in the Response demonstrate actual or constructive knowledge of any improper conduct. In fact, it is not even clear which Defendants Plaintiffs are referring to when making these assertions. Similarly, the New Amended Petition does not plausibly allege that the Non-General Partner Defendants had actual knowledge of the parameters of any fiduciary duty owed by the General Partner.[160] For all these reasons, Plaintiffs fail to state a claim of aiding and abetting breach of fiduciary duty against the Non-General Partner Defendants.

**H. Plaintiffs Have Not Stated a Tortious Interference Claim.**

78. Plaintiffs have not stated a claim for tortious interference against the

---

(citing *Malpiede* and referring to the requirement as "the third party"); *see also Higher Educ. Mgmt. Grp.*, 2014 WL 5573325, at *13.

[159] ECF 56 ¶ 124.

[160] *See* ECF 55 ¶ 80.

Non-General Partner Defendants for the reasons explained in Defendants' Motion to Dismiss.[161] Plaintiffs' Response does not show otherwise.

79. First, as explained in Part III.D *supra*, Plaintiffs have not adequately pleaded an underlying claim for breach of the Partnership Agreements, which is a prerequisite to asserting a tortious interference claim.[162]

80. Further, the Non-General Partner Defendants cannot be liable for tortious interference because corporate parents and affiliates cannot interfere with the contracts of a subsidiary or affiliate as a matter of law.[163] While Plaintiffs argue that Defendants' Texas cases supporting this proposition are distinguishable because they do not involve the exact same facts of this case, Plaintiffs largely ignore the governing legal proposition and they also cite a case recognizing that parent entities cannot tortiously interfere with contracts of subsidiaries.[164]

81. Even if Plaintiffs had adequately pleaded breach of the Partnership Agreements, Plaintiffs have not pleaded essential elements of their tortious interference claim, including (1) an intentional act causing breach of the

---

[161] *Id.* ¶¶ 111-16.

[162] *Id.* ¶ 112.

[163] *Id.* ¶ 114. *See ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 793 (W.D. Tex. 2019); *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994).

[164] *See* ECF 56 ¶ 132 (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (determining whether a tortious interference claim was arbitrable); *Morgan Stanley & Co. v. Texas Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997) (analyzing tortious interference in the agent-principal context); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 348 (Tex. App.—Beaumont 2010, no pet.) ("[A]s a matter of law, a parent company cannot tortiously interfere with the contracts of its wholly owned subsidiary.")). Plaintiffs do not dispute, but rather ignore, Delaware law providing that the Non-General Partner Defendants cannot tortiously interfere with the Partnership Agreements as a matter of law based on their corporate affiliation with the General Partner. Instead, Plaintiffs focus on a narrow reading of Texas law in their Response. However, the Texas cases Plaintiffs cite are inapposite and do not otherwise undermine Defendants' argument.

Partnership Agreements,[165] (2) the Cricket Defendants' knowledge of the Partnership Agreements,[166] (3) a nexus between the alleged interference and Plaintiffs' purported injuries, and (4) that Defendants lacked justification.[167]

82. None of the allegations Plaintiffs reference in their Response plead, as they must, specific conduct by a *specific* Defendant. Instead, Plaintiffs merely allege broad and general conduct and lump all Defendants together, making it unclear what conduct was allegedly committed by each specific Defendant.[168] Accordingly, these "acts" are insufficient to support a claim for tortious interference.[169]

83. Further, Plaintiffs' tortious interference claim fails to allege a lack of justification. Plaintiffs' Response does not dispute that this deficiency exists, but again merely stands on the belief that Texas law applies to their claim.[170] Therefore, to the extent that Delaware law applies, Plaintiffs have admittedly failed to adequately plead every element of their claim.

---

[165] Plaintiffs' bare assertions that the Non-General Partner Defendants interfered with the Partnership Agreements are not plausible on their face. *See* ECF 54 ¶ 93; *see also Twombly*, 550 U.S. at 570 (explaining that a claim for relief that is specific and is not merely conclusory must also be plausible on its face).

[166] The only assertions regarding the Cricket Defendants' knowledge are insufficient conclusory statements. *See* ECF 54 ¶ 129.

[167] Under Delaware law, to state a claim for tortious interference the plaintiff must also allege that the interference was without justification. *See Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1266 (Del. 2004).

[168] *See* ECF 56 ¶ 135; ECF 54 ¶ 93.

[169] *See Iqbal*, 556 U.S. at 678; *see also Belford v. Scott*, No. H-11-2329, 2012 WL 3069846, at *6 (S.D. Tex. July 27, 2012) (granting motion to dismiss where "plaintiff has failed to plead sufficient facts to raise her right to relief against each defendant above the speculative level") (citing *Iqbal*, 556 U.S. at 678).

[170] *See* ECF 56 ¶ 131 n.254.

84. As to the absence of allegations in the New Amended Petition supporting a nexus between the alleged harm to Plaintiffs and damages, Plaintiffs' reiteration of purported damages in their Response does not cure this deficiency. As described in Defendants' Motion to Dismiss,[171] it is not purported damages that are absent from Plaintiffs' claim, but rather the nexus between those alleged damages and the alleged interference by Defendants.[172] The lack of any such nexus is shown by the Response's stacking of speculation upon speculation.[173] Thus Plaintiffs' claim for tortious interference does not plead all required elements and should be dismissed.

85. Finally, to the extent Plaintiffs' tortious interference claim is based on conduct occurring before October 21, 2014, the claim is time-barred as explained in Part III.C *supra*.

**I. Plaintiffs Have Not Stated a Claim for Conversion/Civil Theft.**

86. The gist of Plaintiffs' Response on their conversion/civil theft claim is (1) to clarify that they intend Texas law to apply to the claim;[174] (2) that Plaintiffs are using their Response to rewrite their New Amended Petition to assert that they are seeking recovery of assets, rather than money or lost profits, even though the

[171] *See* ECF 55 ¶ 115.

[172] *See Aspen Advisors LLC*, 861 A.2d at 1266.

[173] *See Tex. Commercial Bus. Sys., Inc. v. F.C.C.*, 898 F.2d 460, 262 n.3 (5th Cir. 1990) (citing *inter alia Arabesque v. Academy of Fine Arts*, 529 S.W.2d 564, 568 (Tex. Civ. App.—Dallas 1975, no writ) ("To hold Academy liable for interference with the contractual relationship between Harris and Arabesque, it was incumbent upon Arabesque to demonstrate that Academy actually caused or brought about the interference.")).

[174] Plaintiffs likely seek to apply Texas law for their civil theft claim because, as noted in Defendants' Motion to Dismiss, Delaware does not recognize "civil theft." *See* ECF 55 ¶ 117 n.230.

New Amended Petition makes no such allegation; and (3) the date of the alleged harm set forth in the New Amended Petition should be disregarded. None of these arguments saves Plaintiffs' conversion/civil theft claim from dismissal.

87. Whether Delaware or Texas law applies, Plaintiffs have failed to state a claim for conversion/civil theft because their entitlement to each alleged asset is created only through contractual duties.[175] For the reasons stated above, Plaintiffs cannot show that any of the alleged assets were obtained by fraud. Because Plaintiffs cannot meet the heightened burden for a conversion/civil theft claim based on contract, their claims must be dismissed.

88. For the reasons explained above, Plaintiffs cannot rely on the allegations in their Response and that are absent from their New Amended Petition to defeat dismissal. Therefore, Plaintiffs cannot now "supplement" their New Amended Petition through their Response to assert that they are seeking relief in the form of personal property. Rather, the allegations in the New Amended Petition control, and those state that Plaintiffs are seeking economic and exemplary damages as well as disgorgement of profits "attributable to Defendants' wrongful conduct."[176] Because Plaintiffs' conversion/civil theft claim seeks to enforce a claim for the payment of money or lost profits, it cannot state a claim under Delaware and Texas law.[177]

---

[175] *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009); *Exxon Mobil Corp. v. Kinder Morgan,* 192 S.W.3d at 126-27.

[176] ECF 54 ¶ 108.

[177] *Kuroda,* 971 A.2d at 890 (citation omitted); *see also Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161-64 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

89. Finally, Plaintiffs' claim is barred by limitations for the reasons explained in Part III.C *supra*.

### J. Plaintiffs' Exemplary Damages and Attorneys' Fees Claims Should be Dismissed.

90. Plaintiffs fail to rebut Defendants' arguments regarding exemplary damages or attorneys' fees.[178] While Plaintiffs cite a string of cases allowing exemplary damages, they do not provide any authority for awarding exemplary damages for a breach of contract claim.[179] And, Plaintiffs fail to rebut the argument that they may not recover attorneys' fees from the General Partner or Cricket Defendants under Texas Civil Practice and Remedies Code Chapter 38.[180] Instead, they merely cite a litany of theories they believe will entitle them to attorneys' fees ***if they prevail***.[181] Of course, Plaintiffs admit that before they can recover either attorneys' fees or exemplary damages, they must state a claim.[182] They have failed to do so and therefore these claims must be dismissed.

---

[178] ECF 56 ¶ 191 ("Plaintiffs do not disagree with the assertion that if all of its claims are dismissed a right to recover exemplary damages or attorneys' fees would also be dismissed.").

[179] *Compare* ECF 55 ¶ 127 (arguing that under Texas law, exemplary damages are not available for breach of contract), *with* ECF 56 ¶ 191 n.403 (failing to cite any case awarding exemplary damages on breach of contract claim).

[180] *See* ECF 56 ¶¶ 191-93.

[181] *See id.* ¶ 192 (arguing entitlement to fees "[t]o the extent . . . Plaintiffs prevail on Civil Theft," and "to the extent Plaintiffs obtain a judgment on its [sic] claims."). Plaintiffs cite, without explanation, Federal Rule of Civil Procedure 54 as a potential basis for attorneys' fees. ECF 56 ¶ 192. Rule 54 is simply a procedural mechanism to recover attorneys' fees otherwise available by statute or contract. *See* FED. R. CIV. P. 54(d)(2)(B)(ii) (requiring the motion to "specify the judgment and statute, rule, or other grounds entitling the movant to the award); *see also Mane USA, Inc. v. Alison Leigh, LLC*, No. 10-180-LPS-MPT, 2010 WL 3724239, at *1 (D. Del. Sept. 16, 2010) (stating plaintiff satisfied Rule 54 by "refer[ring] to appropriate sources which provide justification for the award" outside of Rule 54); *Morris v. V4V1 Vehicles for Veterans*, No. 4:15-CV-724, 2017 WL 3034664, at *2 (E.D. Tex. July 18, 2017) ("Rule 54(d) itself does not entitle a party to an award of attorneys' fees").

[182] *See* ECF 56 ¶ 191.

## K. Plaintiffs Have Not Met Rule 23.1's Pleading Requirements.

91. Plaintiffs cannot "fairly and adequately represent" the Partnerships as required by Rule 23.1 because the Limited Partners purport to assert both direct claims against and derivative claims on behalf of the Partnerships. While Plaintiffs argue that they need not be "similarly situated" to New Cingular (which also holds limited partner interests), Plaintiffs have not explained how they are similarly situated to the Partnerships. In fact, Plaintiffs cannot adequately represent the Partnerships' interests given the New Amended Petition's request that, "to the extent any of the foregoing damages have accrued to the Partnerships, the Court requires such damages to be paid to the Limited Partners to the fullest extent permitted by applicable law."[183]

92. While *Smith v. Ayres*[184] discusses a level of antagonism among the parties that Plaintiffs argue is distinguishable from this case, the fact remains that Plaintiffs clearly are putting their own interest over that of the Partnerships, in which New Cingular also holds limited partner interests as to two of the Partnerships but seemingly would not receive any share of damages should Plaintiffs prevail. Further, Plaintiffs cannot "fairly and adequately represent" the

---

[183] ECF 54 ¶ 111.

[184] *See Smith v. Ayres*, 977 F.2d 946 (5th Cir. 1992) (affirming dismissal of derivative claims under Rule 23.1 because plaintiff was not a fair and adequate representative of shareholder interests). *Accord Elgohary v. Steakley*, No. 4:17-cv-01534, 2017 U.S. Dist. LEXIS 190621, at *18 (S.D. Tex. Oct. 10, 2017) (dismissing derivative claims under Rule 23.1 because plaintiff "has given little consideration to the position of the other Halo Fund members, and, instead, seeks to serve his own personal interests at their expense.").

Partnerships' interests when they have also named the Partnerships as Defendants.[185]

93. As for Plaintiffs' arguments concerning Rule 23.1's demand requirements, Plaintiffs generally allege that pre-suit demand would be futile on the one hand, while also alleging that Plaintiffs made a demand but without the requisite detail Rule 23.1 requires.[186] Based on these inconsistent allegations, Plaintiffs' have not met Rule 23.1's requirements.[187]

## IV. CONCLUSION AND PRAYER

For the foregoing reasons and those stated in its Motion, the AT&T Defendants respectfully request that the Court dismiss Plaintiffs' New Amended Petition [ECF 54] with prejudice in its entirety against the AT&T Defendants and the Nominal Defendants pursuant to Rule 12(b)(6), 9(b), and 23.1, or, in the alternative, under Rule 12(c), and grant Defendants any such other and further relief deemed just and proper.

---

[185] *See* paragraph 36 & note 73 *supra*.

[186] *Compare* ECF 54 ¶ 22 ("pre-suit demand would be futile"), *with* ECF 54 ¶ 9 (VTX sent a "series of letters" sometime after October 2014 that were "later joined as to RSA 18 and by a separate letter from SWT" that "object[ed] to AT&T's conduct with the spectrum, demand[ed] information as to Cricket, and remind[ed] [New Cingular] and its personnel of [its] duties" under the Partnership Agreements); *id.* ¶ 16 ("AT&T has repeatedly failed and refused to adequately respond to the Limited Partners' requests for information regarding these issues.").

[187] FED. R. CIV. P. 23.1; 6 Del. C. § 17-1101(d).

Dated: June 16, 2020

Respectfully submitted,

By: /s/ *Marty L. Brimmage, Jr.*

Marty L. Brimmage, Jr. (Attorney-in-Charge)
Southern District No. 30464
Texas Bar No. 00793386
mbrimmage@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 North Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

Michelle A. Reed (Of Counsel)
Southern District No. 37587
Texas Bar No. 24041758
mreed@akingump.com
Brennan H. Meier (Of Counsel)
Southern District No. 3436702
Texas Bar No. 24077507
bhmeier@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 North Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

Gil P. Peralez (Of Counsel)
Southern District No. 20401
Texas Bar No. 00791426
gpp@peralezfranzlaw.com
Chris Franz (Of Counsel)
Southern District No. 20870
Texas Bar No. 00792514
ccf@peralezfranzlaw.com
PERALEZ FRANZ LLP
1416 Dove Ave.
McAllen, TX 78504
Telephone: (956) 682-3660
Facsimile: (956) 682-3848
Service Email:
service@peralezfranzlaw.com

Zoë K. Wilhelm (Of Counsel)
Admitted *Pro Hac Vice*
Zoe. Wilhelm@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Ste. 1500
Los Angeles, CA 90067
Telephone: (310) 203-4034
Facsimile: (310) 229-1285

**ATTORNEYS FOR AT&T DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2020, the foregoing AT&T Defendants' Reply in Support of Motion to Dismiss Plaintiffs' New Amended Petition [ECF 54] and In the Alternative, Motion for Judgment on the Pleadings, was served on counsel of record by causing a copy of same to be electronically filed with the Clerk of Court using the CM/ECF system.

Larry Warren
lwarren@namanhowell.com
NAMAN, HOWELL, SMITH & LEE PLLC
Union Square II
10001 Reunion Place, Ste. 600
San Antonio, Texas 78216

Curt Kurhajec
ckurhajec@namanhowell.com
NAMAN, HOWELL, SMITH & LEE PLLC
8310 N. Capital of Texas Hwy., Ste. 490
Austin, Texas 78731

R.D. Guerra
rdguerra@guerraleeds.com
GUERRA, LEEDS, SABO & HERNANDEZ PLLC
10213 N. 10th Street
McAllen, Texas 78504

ATTORNEYS FOR PLAINTIFFS, VTX COMMUNICATIONS, LLC and VTX INVESTMENTS, LLC individually and derivatively on behalf of McAllen-Edinburg-Mission SMSA Limited Partnership, Texas RSA 18 Limited Partnership, and Texas RSA 19 Limited Partnership

James Hartnett
jim@hartnettlawfirm.com
THE HARTNETT LAW FIRM
The Hartnett Building
2920 N. Pearl Street
Dallas, Texas 75201

ATTORNEYS FOR PLAINTIFF SWT UNREGULATED PROPERTIES, INC. individually and derivatively on behalf of Texas RSA 18 Limited Partnership

Mike Mills
mkmills@atlashall.com
Susan Sullivan
ssullivan@atlashall.com
ATLAS HALL RODRIGUEZ
818 Pecan Street
McAllen, Texas 78501

ATTORNEYS FOR PLAINTIFF RIVIERA CELLULAR & TELECOMMUNICATIONS, INC. individually and derivatively on behalf of Texas RSA 19 Limited Partnership

*/s/ Marty L. Brimmage, Jr.*
Attorney-in-Charge for AT&T Defendants