United States District Court
Southern District of Texas
**ENTERED**
August 04, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| VTX COMMUNICATIONS, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-cv-00269 |
| | § | |
| AT&T INC., et al., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers "AT&T Defendants' Motion to Dismiss Plaintiffs' New Amended Petition [ECF 54] and in the Alternative, Motion for Judgment on the Pleadings,"[1] Plaintiffs' response,[2] Defendants' reply,[3] Plaintiffs' sur-reply,[4] and Defendants' response of non-opposition to Plaintiffs' sur-reply.[5] After considering the motion, record, and relevant authorities, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a telecommunications partnership compensation dispute with such complexity that the parties have seen fit to include glossaries (albeit inconsistent ones) in their briefs.[6] "This lawsuit originated in state court after certain Limited Partners of three limited partnerships that provide AT&T-branded wireless service in South Texas sued the Partnerships' common General Partner and affiliated entities."[7] This suit is brought by limited partners against the general

---

[1] Dkt. No. 55.
[2] Dkt. No. 56.
[3] Dkt. No. 57.
[4] Dkt. No. 58.
[5] Dkt. No. 59.
[6] *See* Dkt. No. 55 at 14; Dkt. No. 56 at 13.
[7] Dkt. No. 55 at 2, ¶ 2.

partner and the general partner's controllers. As in the Court's previous order, the Court will

delineate the parties[8]:

| Plaintiffs | | Defendants | |
|---|---|---|---|
| • VTX Investments, LLC<br>• VTX Communications, LLC<br>individually and derivatively on behalf of: | McAllen-Edinburg-Mission SMSA Limited Partnership | • McAllen-Edinburg-Mission SMSA Limited Partnership<br>• Texas RSA 18 Limited Partnership<br>• Texas RSA 19 Limited Partnership | |
| • VTX Investments, LLC<br>• VTX Communications, LLC<br>• SWT Unregulated Properties, Inc.<br>individually and derivatively on behalf of: | Texas RSA 18 Limited Partnership | • New Cingular Wireless PCS, LLC d/b/a AT&T Mobility individually and in its capacity as General Partner of: | • McAllen-Edinburg-Mission SMSA Limited Partnership<br>• Texas RSA 18 Limited Partnership<br>• Texas RSA 19 Limited Partnership |
| • VTX Investments, LLC<br>• VTX Communications, LLC<br>• Riviera Cellular and Telecommunications, Inc.<br>individually and derivatively on behalf of: | Texas RSA 19 Limited Partnership | • AT&T Mobility Corporation<br>• Cricket Communications, LLC<br>• Cricket Wireless LLC individually and in their capacity as Manager of: | • New Cingular Wireless PCS, LLC d/b/a AT&T Mobility |
| | | • AT&T Inc. as parent of: | • New Cingular Wireless PCS, LLC d/b/a AT&T Mobility<br>• AT&T Mobility Corporation<br>• Cricket Communications, LLC<br>• Cricket Wireless LLC |

The general partner, New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, operates the three

limited partnerships, the McAllen-Edinburg-Mission SMSA Limited Partnership, the Texas RSA

---

[8] *See* Dkt. No. 53 at 2; Dkt. No. 54 at 2.

18 Limited Partnership, and the Texas RSA 19 Limited Partnership.[9] The three limited partnerships have exclusive authority to provide "wireless [cell phone] service in their Partnerships' respective service areas" throughout south Texas.[10] However, Plaintiffs allege that Defendants have been using the networks and wireless spectrums operated by the limited partnerships "in derogation of" Defendants' duties to the Plaintiffs, specifically by Defendants' operation of a Cricket Wireless network "without proper compensation or at no compensation" to the three limited partnerships and thus to the detriment of the Plaintiffs.[11] Plaintiffs provide the example that when AT&T Inc. purchased Cricket Wireless, AT&T Inc. allegedly operated "Cricket assets in the Partnership service areas as a separate business in competition with the Partnerships using the Partnership's network to serve that business."[12] Plaintiffs detail their history with Defendants and allegations of deliberate failures and negligent mismanagement of the partnerships at length,[13] for example by alleging Defendants' sale of cell phone location information to third parties without accounting to the three limited partnerships for those revenues.[14] Plaintiffs bring this dispute over (1) revenue compensation and distributions allegedly withheld from certain limited partners of three different partnerships by the common general partner of the three partnerships; and (2) the authorized scope of the partnerships' network utilization and operation by the general partner and its managing and parent entities.[15]

---

[9] Dkt. No. 54 at 2–3, ¶ 1. All background facts are taken from Plaintiffs' live pleading.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 5, ¶ 6.
[13] *See id.* at 4–13, ¶¶ 2–18.
[14] *Id.* at 12–13, ¶ 17.h. This is the basis for federal jurisdiction because it implicates the Foreign Intelligence Surveillance Act. *See* Dkt. No. 48.
[15] Dkt. No. 53 at 2–3.

Plaintiffs bring causes of action for breach of fiduciary duty, breach of the partnership agreements, tortious interference, conversion/civil theft, aiding and abetting, and fraud.[16]

Plaintiffs filed an original petition in Texas state court on October 21, 2016.[17] Defendants answered on December 19, 2016.[18] In state court, Plaintiffs filed a First Amended Petition on October 26, 2018,[19] then a Second Amended Petition on July 3, 2019.[20] Defendants removed to this Court on August 2, 2019.[21] On February 26, 2020, this Court issued an order addressing numerous motions and concluding, for purposes of this opinion, that the Court has jurisdiction over this case.[22] On April 23, 2020, the Court considered Plaintiffs' motion for leave to amend and granted Plaintiffs leave to amend to meet the verification requirements of Federal Rule of Civil Procedure 23.1.[23] On May 5, 2020, in compliance with this Court's order, Plaintiffs filed "Plaintiffs' Second Amended Petition Conformed to Federal Rule of Civil Procedure 23.1," which is Plaintiffs' current complaint and live pleading in this case.[24] Defendants filed the instant motion to dismiss and alternative motion for judgment on the pleadings on May 19, 2020, and the motion is briefed[25] and ripe for decision.[26] To this point, Plaintiffs have filed five complaints and Defendants have filed three motions to dismiss.[27] The Court turns to the analysis.[28]

---

[16] Dkt. No. 54 at 17–35, ¶¶ 41–105.
[17] Dkt. No. 1-2 at 1.
[18] *Id.* at 29.
[19] *Id.* at 38–39.
[20] *Id.* at 66–67.
[21] Dkt. No. 1.
[22] Dkt. No. 48.
[23] Dkt. No. 53.
[24] Dkt. No. 54.
[25] *See* Dkt. Nos. 56–59.
[26] Dkt. No. 55.
[27] Dkt. No. 55 at 16, ¶ 1.
[28] The Court reproves Plaintiffs and Defendants' irrational organization of their respective briefs. Defendants place global arguments for dismissal of the entire complaint at the front and end of their brief and punctuate their discussion of tort claims by discussing contract claims before continuing to discuss tort claims, complicating the Court's efforts to address arguments in an orderly fashion. As discussed below, resolution of the contract claims informs whether other claims should be dismissed. Plaintiffs' arguments on page 37 and 38 of Plaintiffs' response

## II. DISCUSSION

### a. Plaintiffs' Motion for Leave to File Sur-Reply

Plaintiffs filed a "Motion for Leave to File Sur-Reply Concerning AT&T Defendants' Reply Brief in Support of their Motion to Dismiss" seven days after Defendants' reply.[29] Plaintiffs seek to address supposedly new arguments relating to judicial notice and Plaintiffs' prior admissions.[30] Plaintiffs did not successfully confer with Defendants prior to filing their motion.[31] Had Plaintiffs conferred as required by Local Rule 7.1.D., Plaintiffs would have learned that Defendants are unopposed to Defendants' requested relief.[32]

"Whether to allow filing a surreply is within the sound discretion of the district court."[33] Given that the parties are unopposed and the sur-reply Plaintiffs attached as an exhibit appears limited to specific issues and does not appear to be an attempt to recapitulate arguments, the Court **GRANTS** Plaintiffs' motion to file a sur-reply.[34] The Court will consider "Plaintiffs' Sur-Reply Concerning AT&T Defendants' Reply Brief in Support of their Motion to Dismiss"[35] as applicable to the remainder of this Opinion and Order.

### b. Choice of Law

A threshold issue in this case is which forum's law to apply, yet the parties have given perfunctory consideration to the issue. Plaintiffs favor the application of Delaware law "to Plaintiffs' breach of fiduciary duty, breach of contract, and aiding and abetting breach of

---

brief refer to arguments on pages 69 and 70, which the Court must read together to understand Plaintiffs' points. The parties needlessly complicated the organization of their arguments.

[29] *Compare* Dkt. No. 57 *with* Dkt. No. 58.
[30] Dkt. No. 58 at 3, ¶ 4.
[31] *Id.* at 7.
[32] Dkt. No. 58 at 2, ¶ 3. Plaintiffs should not file motions without complying with Local Rule 7.
[33] *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020)
[34] Dkt. No. 58.
[35] Dkt. No. 58-1.

fiduciary duty claims" and Texas law to the remainder of Plaintiffs' claims.[36] Defendants agree that Delaware law applies to the breach of contract and breach of fiduciary duty and aiding and abetting claims,[37] but argue that the Court need not undertake any choice of law analysis because "the elements of the claims are largely the same under both states' laws."[38] Since Defendants' first motion to dismiss, Defendants have argued for dismissal under either Delaware or Texas law.[39] However, the parties admit that there is an agreed choice-of-law provision in the parties' partnership agreements.[40]

"Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry. . . . The analysis is . . . issue-based so that the law of one state may govern one issue in the case and the law of a different state may govern another."[41] The Court should resolve choice-of-law issues at the outset.[42] This Court "must apply the choice of law rules of the forum state, in this case Texas."[43] "Texas choice of law principles give effect to choice of law clauses if the law chosen by the parties has a reasonable relationship with the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental policy of the [forum] state."[44] This is a two-step inquiry.[45] In cases with a choice-

---

[36] Dkt. No. 56 at 25, ¶ 27; *see id.*, ¶¶ 137, 141 (citing one case to argue that Texas law applies).

[37] *See id.* at 76 n.235 (Plaintiffs agreeing that Delaware law applies to the aiding and abetting claim).

[38] Dkt. No. 57 at 16–17, ¶¶ 8–9 & n.5; *cf.* Dkt. No. 55 at 47 n.131 (calling for application of Delaware law to Plaintiffs' breach of fiduciary duty claim).

[39] *See* Dkt. No. 5 at 35.

[40] Dkt. No. 55 at 47 n.131; Dkt. No. 56 at 25, ¶ 28.

[41] *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016).

[42] *See W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 873 (5th Cir. 1990) (admonishing the district court for concluding that two states' laws were substantively identical and directing application of the correct state law).

[43] *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005); *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 790 (S.D. Tex. 2005) (Harmon, J.) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) ("In federal question jurisdiction cases, where a court is exercising supplemental jurisdiction over state-law claims, a federal court also applies the choice of law rules of the forum state to the state law claims.")

[44] *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); *see* TEX. BUS. & COM. CODE ANN. § 1.301(a) (West 2020) ("[W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.").

of-law provision in an agreement, protection of the justified expectations of the parties is the most significant and important factor in the choice-of-law analysis.[46] Nevertheless, tort causes of action are independent of contract claims, and therefore might not be governed by choice-of-law provisions in the parties' contract particularly when the choice-of-law provision is narrow.[47] Even if the plaintiff's tort claims arise out of a contractual relationship, the contractual choice-of-law provision does not necessarily control because tort claims do not require construction or interpretation of the parties' contractual engagement.[48] Whether the parties' agreed choice-of-law clause governs tort disputes in addition to contract claims thus depends on the breadth of the clause.[49] For example, choice-of-law clauses that govern all disputes "in connection with" the contract also encompass tort claims, whereas choice-of-law clauses that only apply to "construe" the contract do not cover tort claims.[50]

Here, the choice-law clause governing this case bears the following identical language across all three limited partnership agreements: "This Agreement and the rights and obligations of the Partners shall be interpreted in accordance with the laws of the State of Delaware."[51] The

---

[45] *See Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 420–21 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

[46] *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 235 (Tex. 2008).

[47] *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 433 (5th Cir. 1996); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003).

[48] *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 640 (S.D. Tex. 2009) (Atlas, J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) & *Tel-Phonic Servs. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1142 (5th Cir. 1992)).

[49] *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 952 (S.D. Tex. 2011) (Johnson, M.J.) (discussing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726–27 (5th Cir. 2003); *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999); *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 989 (S.D. Tex. 2004) (Ellison, J.)); *see McDaniel v. Credit Sols. of Am., Inc.*, No. 3:08-CV-0928-N, 2012 WL 13102240, at *6 (N.D. Tex. Mar. 21, 2012) (Godbey, J.) ("The wording of a contractual choice of law provision controls the types of claims it governs."); *Busse v. Pac. Cattle Feeding Fund No. 1, Ltd.*, 896 S.W.2d 807, 813 (Tex. App.—Texarkana 1995, writ den.).

[50] *Quicksilver Res., Inc.*, 792 F. Supp. 2d at 952; *see Caton*, 896 F.2d 943 & n.3 (contrasting "[t]his Agreement shall be construed under the laws of the State of California," which does not govern tort disputes, with a choice-of-law clause that chooses a particular state's law to "govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract," which does govern tort disputes).

[51] Dkt. No. 55-1 at 48–49, § 19.6; Dkt. No. 55-2 at 35, § 19.6; Dkt. No. 55-3 at 35, § 19.6.

"Partners" are the general partner and limited partners together.[52] The first question is whether the general partner's affiliates or controllers may be bound by the choice-of-law clause.[53] Courts in the Second,[54] Third,[55] Sixth,[56] Seventh,[57] Eighth,[58] Ninth,[59] and Eleventh Circuits[60] bind "closely related" nonsignatories to a forum selection clause. "The Fifth Circuit has not yet spoken to the issue; however, the Fifth Circuit has recognized a non-exclusive number of theories through which a nonsignatory can be bound to a specialized forum-selection clause[—]an arbitration clause."[61] Binding nonsignatories to an agreement is done for a variety of reasons. When a party benefits from a bargained-for exchange, it should also be bound by those bargained-for terms.[62] For example, if a defendant signatory transferred all its business or assets under the contract to (and for the benefit of) a nonsignatory affiliate, subsidiary, or controller, the nonsignatory should reasonably expect to be bound by the contract terms, including the forum selection and choice-of-law clause, because the signatory cannot avail of a more favorable

---

[52] *E.g.*, Dkt. No. 55-2 at 4; Dkt. No. 55-3 at 4. Accordingly, the "Partners" are those identified in the Court's table on page 2 and footnote 8.

[53] *See Peterson v. Evapco, Inc.*, 188 A.3d 210, 231 n.13 (Md. Ct. Spec. App. 2018) (discussing at length the applicable precedent, including federal cases in Texas); *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 953 & n.5 (S.D. Tex. 2011) (Johnson, M.J.) (same).

[54] *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013).

[55] *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018).

[56] *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997).

[57] *Hugel v. The Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993); *Freitsch v. Refco*, 56 F.3d 825, 827 (7th Cir. 1995).

[58] *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 758 (8th Cir. 2001).

[59] *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988).

[60] *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998).

[61] *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-cv-00893, 2018 WL 1964180, at *9 (E.D. Tex. Apr. 25, 2018) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006)); *accord Alt. Delivery Sols., Inc. v. R.R. Donnelley & Sons*, No. CIV.SA05CA0172-XR, 2005 WL 1862631, at *15 (W.D. Tex. July 8, 2005) (citing *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 525 (5th Cir. 2000)) ("Although the Court has not found any Fifth Circuit case that specifically addresses whether a nonsignatory to a contract may enforce a forum selection clause therein, the Fifth Circuit has addressed whether a nonsignatory to a contract may enforce an arbitration clause.").

[62] *Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 586 (W.D. Tex. 2014).

jurisdiction or tribunal as a consequence of the signatory playing a shell game[63] to enable the nonsignatory to manipulate the bargain. Accordingly, the Fifth Circuit "recognize[s] six ways a non-signatory can be bound to an agreement, which include '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary.'"[64] One of the two types of estoppel the Fifth Circuit recognizes is "direct-benefit estoppel," which "involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate [some] clause in the contract."[65] "A non-signatory can 'embrace' a contract containing [a choice-of-law] clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract."[66]

 The Court holds that, at this stage of analysis, Plaintiffs have adequately alleged that Defendant nonsignatories (AT&T Inc.; AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC) have embraced the three limited partnership agreements by seeking and obtaining direct benefits from the contracts, and thus may be bound by the choice-of-law clauses. Plaintiffs argue that New Cingular Wireless PCS, LLC d/b/a AT&T Mobility "acts through [AT&T Mobility Corporation] and both of those entities are wholly-owned by AT&T Inc. [AT&T Mobility Corporation] is also the manager of [Cricket Wireless LLC], and [Cricket

---

[63] *Shell Game*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("This is a game of chance in which one player bets that he or she can remember under which cup the object is. The cups are moved around so quickly that the player finds it difficult to remember where the object is. When played casually on public streets, the shell game is usu. a swindle because the operator palms the object rather than leaving it under a cup, so the player has no chance of winning.").

[64] *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, No. CIV.A.13-00778-BAJ, 2014 WL 4986674, at *5 (M.D. La. Sept. 29, 2014) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003)).

[65] *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006)).

[66] *Noble Drilling Servs.*, 620 F.3d at 473. The Court finds then-Chief Judge Brian Jackson's discussion of Fifth Circuit precedent instructive in *Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, No. CIV.A.13-00778-BAJ, 2014 WL 4986674, at *6–7 (M.D. La. Sept. 29, 2014).

Wireless LLC] is also owned by AT&T Inc. The subject transactions are simply not possible absent the involvement and consent of all of the applicable AT&T Defendants . . . ."[67] Plaintiffs' arguments are substantiated by Plaintiffs' allegations of the entities' shared officers and employees, one AT&T executive who "signed spectrum service agreements on behalf of both the Partnerships and the counter-signing AT&T spectrum license holder," and allegations of self-dealing conduct for the benefit of the affiliated entities.[68] Plaintiffs have alleged that "the non-signatory received benefits from the contract and benefitted specifically from a signatory's performance of the contract,"[69] therefore the Court holds that nonsignatories may be bound by the choice-of-law clause. The Court finds the "closely related" doctrine used in other Circuits is similar to its analysis above, and would hold the nonsignatories bound to the choice-of-law clause under the same doctrine.[70]

Having found that the choice-of-law clause applies to all parties, the analysis now circles back to whether the choice-of-law clause is broad enough to encompass the tort claims in this case. The Court holds that it is. The language at issue is broader than merely prescribing which state's interpretative law is to be used to "construe" the contract.[71] Where a clause "implicate[s] construction of the rights and liabilities of the parties under the contract," it is generally broad

---

[67] Dkt. No. 56 at 93, ¶ 156; *see id.* at 93–94, ¶¶ 157–58.

[68] *See* Dkt. No. 54 at 17–20, ¶¶ 46–47, 49; *see infra* notes 314–323 (discussing Defendants' interrelated control and concluding that Plaintiffs have adequately alleged control).

[69] *Red Barn Motors, Inc.*, 2014 WL 4986674, at *6 (citing *Hellenic Inv. Fund*, 464 F.3d at 518–20).

[70] *E.g.*, *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018) (quotation omitted) ("In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement."); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.").

[71] *See Caton v. Leach Corp.*, 896 F.2d 939, 943 n.3 (5th Cir. 1990) ("In contrast to broad clauses which choose a particular state's law to 'govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract,' the instant clause denotes only that California law will be applied to 'construe' the contract.").

enough to cover tort claims.[72] A traditional interpretative canon in the construction of contracts instructs that "[a] contract should be interpreted as to give meaning to all of its terms— presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous."[73] If the Court were to hold that the choice of law clause is narrow and only governs construction of the parties' agreements, the language "*and* the rights and obligations of the Partners" in the choice-of-law clause would be rendered meaningless.[74] This holding is consistent with Sixth Circuit precedent interpreting Fifth Circuit precedent. The Sixth Circuit, interpreting *Caton v. Leach Corp.*,[75] held that the clause "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan" was sufficiently broad to cover tort claims and refer "to more than construction of the agreement; otherwise the first six words would be surplusage."[76] Similarly, interpreting the choice-of-law clause "[t]his Agreement was made and entered into in the State [of] Georgia and *all rights and obligations of the parties hereto* shall be governed by and construed in accordance with the laws of the State of Georgia," the Sixth Circuit found the clause broad enough to cover the plaintiff's noncontractual claims of fraud and misrepresentation.[77] While this Court is not bound by Sixth Circuit precedent, the Court finds the cases persuasive, especially because they were built on interpretations of a Fifth Circuit case. The Court holds that the parties' choice-of-law clauses in the respective partnership agreements extend beyond merely the construction and interpretation of the agreements themselves.

---

[72] *Hoisting Wire Rope & Sling, LLC v. Accu-Tech Computer Servs.*, No. 2:16-CV-61, 2017 WL 6816502, at *2 (S.D. Tex. Dec. 15, 2017) (Libby, M.J.) (citing *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 433 (5th Cir. 1996)).

[73] *In re Isbell Records, Inc.*, 586 F.3d 334, 337 (5th Cir. 2009) (quotation omitted).

[74] *See supra* note 51 (emphasis added).

[75] 896 F.2d 939 (5th Cir. 1990).

[76] *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1139–40 (6th Cir. 1991).

[77] *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993) (alterations in original) (emphasis added).

Now, having found that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied" to all issues and all Defendants, the Court applies Texas's conflict of laws principles to determine whether the "unless" conditions of § 187(2) of the Restatement (Second) of Conflict of Laws apply.[78] Delaware law applies to this case unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[79]

The Court first considers, under § 187(2)(a) of the Restatement, whether the contract at issue bears a reasonable relationship to the chosen state, Delaware,[80] or the parties have a reasonable basis for choosing Delaware.[81] "[T]he parties may be held to the chosen state's law when they had a reasonable basis for their choice, such as choosing law they know well or that it is well developed."[82] "[T]he prime objectives of contract law—protecting parties' expectations and enabling parties to predict accurately what their rights and liabilities will be—are best furthered, and certainty and predictability of result most likely to occur, when parties to multistate transactions can choose the governing law."[83] The Court holds that the parties chose Delaware law for its well-developed corporate, business, and fiduciary law principles and memorialized their choice in the choice-of-law clause. Furthermore, Delaware bears a reasonable relationship

---

[78] *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990) (quoting Restatement (Second) of Conflict of Laws § 187(2) (Am. Law Inst. 1977)).

[79] *Id.* at 678.

[80] *See Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 420–21 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

[81] *See Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325 (Tex. 2014).

[82] *Id.*

[83] *Id.* (citing Restatement (Second) of Conflict of Laws § 187 cmt. e–f).

to this case because many parties are incorporated or registered there.[84] Restatement § 187(2)(a) will not bar the parties' choice.

Under the second "unless" condition set forth by § 187(2)(b) of the Restatement, Texas's conflict of laws principles first asks what state bears the "most significant relationship" to the issue.[85] The contacts assessed, not by their number but by their quality, are: the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and "the domicil residence, nationality, place of incorporation and place of business of the parties."[86] The place of performance and location of the subject matter at issue are in Texas.[87] Plaintiffs (including the three limited partnerships) were incorporated or registered in Texas with their principal place of business in Texas, Defendants are all incorporated or registered in Delaware, and have a principal place of business in Georgia, except for AT&T Inc., which has its principal place of business in Texas.[88] The parties do not indicate the place of contracting or the place of negotiation.[89] Nevertheless, the complaint makes clear that the overwhelming substance of the contract—to provide wireless service in south Texas—is Texas-centric and has been conducted in Texas.[90] Indeed, even meetings referred to frequently in

---

[84] *Compare St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of Port of New Orleans*, 418 F. App'x 305, 309 (5th Cir. 2011) ("New York has a substantial relationship to the parties because [a party] is a New York corporation.") *with* Dkt. No. 54 at 15–16, ¶¶ 28–33 (every Defendant is incorporated or registered in Delaware); *see infra* note 88 and accompanying text.
[85] *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015).
[86] *Id.* at 582–83 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (AM. LAW INST. 1977)).
[87] Dkt. No. 54 ¶¶ 1, 24–33.
[88] *Id.* at 14–16, ¶¶ 24–33.
[89] *See* Dkt. Nos. 54–58.
[90] *See* Dkt. No. 54 at 2–4, ¶¶ 1–3 (discussing all business taking place in Texas).

the parties' briefs occurred in Texas.[91] The Court agrees with Plaintiffs that Texas bears the most significant relationship to this issue.[92]

Even if Texas has the most significant relationship and a "materially greater interest than the chosen state in the determination of the particular issue," Delaware law will apply to this dispute unless the "application of the law of the chosen state would be contrary to a fundamental policy" of Texas.[93] This is the second "unless" condition of § 187(2) of the Restatement which could prevent application of the parties' chosen state law. Oftentimes, the "fundamental policy" question arises in noncompetition agreements when important state policy regarding restraints of trade are involved.[94] Nevertheless, a "fundamental policy" clash is rare, and states will generally apply the law chosen by the parties because states generally have a policy to enforce contracts predictably and upon the contract's terms.[95] "The test is whether the chosen law contravenes a state *policy*, not the *outcome* in a particular case. A choice-of-law clause is relevant only if it *will* result in a different outcome; if that difference alone is enough to make policies contravene, then choice-of-law clauses will *never* be enforced."[96] In Texas, the parties' choice of law is "relevant" to claims for tortious interference, conversion, fraud, and breach of fiduciary

---

[91] Dkt. No. 56 at 26, ¶ 29. *But see* Dkt. No. 57 at 16, ¶ 9 ("But the New Amended Petition contains no facts to support such a conclusion. It does not allege where the meeting took place . . . ."). Even if the Court ignored the meetings, the Court would hold that Texas bears the most significant relationship to the issues.

[92] Dkt. No. 56 at 26, ¶ 29.

[93] *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) (AM. LAW INST. 1977)).

[94] *See, e.g., Merritt, Hawkins & Assocs., LLC v. Caporicci*, No. 05-15-00851-CV, 2016 WL 1757251, at *4 (Tex. App.—Dallas May 2, 2016, no pet.) (discussing California's fundamental policy and therefore applying California law).

[95] *See CPS Int'l, Inc. v. Dresser Indus.*, 911 S.W.2d 18, 34 (Tex. App.—El Paso 1995, writ denied) (discussing *DeSantis*, 793 S.W.2d at 680).

[96] *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 178 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (en banc) (emphases in original) (citation omitted); *see Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 421 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("[T]he fact that the other state's law differs materially from that of the forum state does not itself show that application of the other state's law would offend Texas public policy.").

duty.[97] The Court could identify no "fundamental policy" of Texas that application of Delaware law to Plaintiffs' tort claims would contravene, and the parties have not pointed to one.[98] Indeed, Texas's policy appears to favor application of the parties' choice-of-law clause.[99] Delaware law, similarly, favors giving "maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements."[100] Accordingly, the Court holds that Restatement § 187(2)(b) will not bar the party's choice of law. Therefore, the Court will apply Delaware law to all of Plaintiffs' claims consistent with the three limited partnership agreements' choice-of-law provision.

### c.  Legal Standard for the Motion to Dismiss

The Court uses federal pleading standards to determine the sufficiency of a complaint.[101] Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[102] The Court accepts all well-pleaded facts as true (even if doubtful or suspect[103]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[104]), but will not strain to find inferences favorable to the plaintiff.[105] A plaintiff need not plead detailed factual allegations, but must plead more than "'naked

---

[97] *See Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 685 (Tex. App.—Dallas 2007, no pet.).
[98] *See* Dkt. No. 56 at 26, ¶ 29; *see* Dkt. No. 57 at 16–17, ¶¶ 8–9 (expressing ambivalence about which state's law to apply).
[99] *See* TEX. BUS. & COM. CODE ANN. § 1.301(a) (West 2020) ("[W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.").
[100] DEL. CODE ANN. tit. 6, § 17-1101(c) (West 2020).
[101] FED. R. CIV. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *Genella v. Renaissance Media*, 115 F. App'x 650, 652–53 (5th Cir. 2004) (holding that pleadings must conform to federal pleading requirements).
[102] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[103] *Twombly*, 550 U.S. at 555–56.
[104] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted."'").
[105] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[106] Courts first disregard any conclusory allegations or legal conclusions[107] as not entitled to the assumption of truth,[108] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[109] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[110] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[111] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible."[112] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[113] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[114] The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint

---

[106] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).

[107] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

[108] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

[109] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

[110] *Iqbal*, 556 U.S. at 678.

[111] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

[112] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

[113] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[114] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

by reference, and matters of which the Court may take judicial notice.[115] Because the focus is on

the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 56,"[116] but not if a defendant attaches documents to a motion to dismiss

that are "referred to in the plaintiff's complaint and are central to her claim."[117]

### d. Analysis

#### 1. Whether the Complaint Meets Federal Rule of Civil Procedure 23.1's Requirements

The Court first assesses whether Plaintiffs have cured the Federal Rule of Civil

Procedure 23.1 issue of the last complaint.[118] Defendants assert that Plaintiffs have not met

Rule 23.1's requirements to state derivative claims.[119] Defendants argue that Plaintiffs created an

impermissible conflict of interest by naming the three limited partnerships as Defendants, and

Plaintiffs are claiming entitlement to all damages and putting their interests first, so Plaintiffs

cannot adequately represent the partnerships as required by Rule 23.1.[120] Defendants also argue

Plaintiffs have failed to make adequate demands for redress as required by Rule 23.1.[121]

Plaintiffs respond that they adequately represent the partnerships and there is no impermissible

conflict of interest, and that Plaintiffs have shown that pre-suit demand is futile and excused

under Rule 23.1 and Delaware law.[122]

Federal Rule of Civil Procedure 23.1

---

[115] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[116] FED. R. CIV. P. 12(d).
[117] *Causey v. Sewell Cadillac–Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).
[118] *See* Dkt. No. 53.
[119] Dkt. No. 55 at 77, ¶ 128.
[120] *Id.* at 77–78, ¶¶ 129–30.
[121] *Id.* at 79, ¶ 131.
[122] Dkt. No. 56 at 96–105, ¶¶ 163–183.

applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.[123]

Rule 23.1 requires that the complaint be "verified" and:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.[124]

The Court finds that Plaintiffs' live pleading (the complaint in this case)[125] is attended by notarized verifications signed by chief officers of all Plaintiff companies and corporations.[126] Therefore, the complaint is properly verified under Rule 23.1[127] and the Court holds that Plaintiffs have cured the error of their last complaint.[128]

A prerequisite issue under Rule 23.1 is whether Plaintiffs "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."[129] "The burden of showing inadequate representation falls on the

---

[123] FED. R. CIV. P. 23.1(a).

[124] FED. R. CIV. P. 23.1(b).

[125] Dkt. No. 54.

[126] Dkt. No. 54-1.

[127] *See Aztec Oil & Gas, Inc. v. Fisher*, No. 4:15-CV-00866 (S.D. Tex. Sept. 3, 2015), Dkt. No. 34 at 37 (independent verification from personal knowledge).

[128] *See* Dkt. No. 53 at 8–9 (discussing the failure of verification).

[129] FED. R. CIV. P. 23.1(a).

defendant."[130] "A plaintiff in a shareholder derivative action owes the corporation his undivided loyalty. The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda. Whether or not such a personal agenda exists is determined by the trial court."[131] The Fifth Circuit gave the example that, when the plaintiff bears "virulent antagonism" toward the defendant, or seeks to use derivative litigation as leverage in other ongoing litigation, the plaintiff is unlikely to adequately represent the shareholder interests.[132] Defendants argue that Plaintiffs show such antagonism and seek to put their interests ahead of Defendant New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, which also holds limited partnership interests in two of the partnerships.[133] Plaintiffs point out that they are the "only three limited partners who are not the AT&T General Partner."[134] Even if Defendant New Cingular Wireless PCS, LLC, also has some shareholder interest in two of the limited partnerships at issue, its interests are not relevant. "Similarly situated shareholders do not include majority shareholders opposed to the derivative action, for otherwise a derivative suit could not be brought if the interests of the controlling shareholders coincided with those of the defendants."[135] In other words, limited partner plaintiffs cannot be disabled from bringing a derivative action against the shareholding

---

[130] *George v. LeBlanc*, 78 F.R.D. 281, 284 (N.D. Tex.) (citing *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 592 n.15 (5th Cir. 1974)), *aff'd*, 565 F.2d 1213 (5th Cir. 1977).

[131] *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992).

[132] *Id.*; *see Davis v. Comed, Inc.*, 619 F.2d 588, 593–94 (6th Cir. 1980) ("Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Rule 23.1's representation requirements are: economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent."); *Youngman v. Tahmoush*, 457 A.2d 376, 379 (Del. Ch. 1983) ("The decisions in this area have interpreted the adequacy of representation requirement to mean that a Court can and should examine any extrinsic factors, that is, outside entanglements which make it likely that the interests of the other stockholders will be disregarded in the prosecution of the suit.").

[133] Dkt. No. 55 at 77–78, ¶¶ 129–30.

[134] Dkt. No. 56 at 98, ¶ 168.

[135] 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 23.1.09 (2020), *quoted in Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-993, 2011 U.S. Dist. LEXIS 57366, at *18 (S.D. Ohio May 27, 2011).

general partner accused of wrongdoing without effectively abolishing the derivative action whenever the general partner does not prefer to litigate. Defendants cite two New York federal district court orders for the proposition that Plaintiffs pursuit of claims against the three limited partnerships results in an "impermissible conflict of interest" that bars claims,[136] but that proposition is not a per se rule even in the Second Circuit and courts nonetheless look to whether an actual substantive conflict exists under Rule 23.1.[137] "[T]here is no other litigation pending"[138] and no indication that *all* of the limited partner interests represented by the Plaintiffs here would not fairly and adequately represent the interests of the shareholders.[139] Although the parties are obviously antagonistic toward each other, the disagreement is over the suit itself and not part of some side entanglement or other, broader issue.[140] The Court holds that Defendants have failed to carry their burden to show that Plaintiffs cannot fairly and adequately represent the shareholder interests at issue.

Defendants also move to dismiss arguing that Plaintiffs' claims "fail to meet the requirements under Rule 23.1 and the Delaware Limited Partnership Act to plead particularized details of the demand made on the Partnerships to take action."[141] "Because Federal Rule of Civil Procedure 23.1 does not identify applicable substantive standards, the particularity of a plaintiff's

---

[136] Dkt. No. 55 at 78, ¶ 129 & n.256 (citing *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, No. 06 CIV 688(SWK), 2006 WL 2849783, at *7–8 (S.D.N.Y. Oct. 4, 2006) & *Wall St. Sys., Inc. v. Lemence*, No. 04 CIV 5299(JSR), 2005 WL 292744, at *3 (S.D.N.Y. Feb. 8, 2005)).
[137] *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 793 (S.D.N.Y. 2011) (discussing the split of New York federal court authority), *aff'd*, 479 F. App'x 375 (2d Cir. 2012).
[138] Dkt. No. 56 at 98, ¶ 169.
[139] *See Elgohary ex rel. Texas Halo Fund I, LLC v. Steakley*, No. 4:17-CV-01534, 2017 WL 5514373, at *6 (S.D. Tex. Oct. 10, 2017) ("The court may consider various factors in determining whether a plaintiff is an adequate representative, including, other litigation pending between the plaintiff and defendants, and whether the derivative action may be leveraged in the other suit; the relative magnitude of the plaintiff's personal interest in the company, as compared to his interest in the derivative action itself; the plaintiff's vindictiveness toward the defendants; and finally, the degree of support the plaintiff has received from the shareholders that he purports to represent.").
[140] *See supra* note 132.
[141] Dkt. No. 55 at 78–79, ¶ 131 (citing FED. R. CIV. P. 23.1 & DEL. CODE ANN. tit. 6, § 17-1101(d)).

pleadings is governed by the standards of the state of incorporation, here, Delaware."[142] Delaware law provides, "A limited partner . . . may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed."[143] Also under Delaware law, "[t]he *Aronson* test applies when a plaintiff challenges a board decision or transaction. To determine demand futility under *Aronson*, the court must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."[144] "[I]f either prong is satisfied, demand is excused."[145] Under the first prong, directors may be presumptively interested where they "allegedly appeared on both sides of the transaction and collected middleman transaction fees."[146]

Here, Plaintiffs allege that Defendants stood on both sides of the transaction.[147] For example, Defendants are allegedly paying only a "cost-based rate to pass AT&T affiliate data traffic on its partnerships' networks," which deprives the three limited partnerships of data traffic revenue while cheapening Defendants' costs for use of the partnership networks.[148] These allegations are sufficient to create a presumption that Defendants are not disinterested or independent because they stand on both sides of the transaction. In reply, Defendants feebly argue only that Plaintiffs have inconsistently asserted that pre-suit demand would be futile and

---

[142] *Freuler v. Parker*, 803 F. Supp. 2d 630, 636 (S.D. Tex. 2011) (Harmon, J.) (ultimately citing *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 92–99 (1991)), *aff'd,* 517 F. App'x 227 (5th Cir. 2013).

[143] DEL. CODE ANN. tit. 6, § 17-1001 (West 2020).

[144] *Hack v. Wright*, 396 F. Supp. 3d 720, 733 (S.D. Tex. 2019) (Ellison, J.) (alteration in original) (quotation and footnote omitted); *see Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000) (describing the *Aronson* test).

[145] *Brehm*, 746 A.2d at 256.

[146] *Katell v. Morgan Stanley Grp.*, Civ.A.No. 12343, 1993 Del. Ch. LEXIS 5, at *16 (Jan. 14, 1993).

[147] *See* Dkt. No. 54 at 11–13, ¶ 17 & 18, ¶ 46.

[148] *Id.* at 5, ¶ 5; *see also id.* at 9–10, ¶ 14 (describing Defendants' withholding of partnership "spectrum" assets).

has already been made.[149] Even if Defendants are correct, their argument says nothing about whether Plaintiffs complied with Federal Rule of Civil Procedure 23.1 by stating with particularity "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."[150] The Court holds that Plaintiffs have sufficiently shown that pre-suit demand would be futile and complied with Federal Rule of Civil Procedure 23.1.[151] The Court **DENIES** Defendants' motion to dismiss with respect to Federal Rule of Civil Procedure 23.1.

> 2. *Whether AT&T Inc.; AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; McAllen-Edinburg-Mission SMSA Limited Partnership; Texas RSA 18 Limited Partnership; and Texas RSA 19 Limited Partnership are Proper Defendants.*

Defendants argue that "[t]he lack of specific allegations as to each Defendant makes it impossible for the Court to draw a reasonable inference regarding whether each individual Defendant is liable for the misconduct alleged," in other words, that Plaintiffs impermissibly group Defendants together in Plaintiffs' complaint,[152] and even use the term "Defendants" confusingly "as applicable."[153] Defendants cite two cases in which this Court has dismissed claims where plaintiffs have failed to individuate their allegations against particular defendants.[154] Defendants seek to dismiss every Defendant except the general partner New Cingular Wireless PCS, LLC d/b/a AT&T Mobility because "Plaintiffs have failed to sufficiently

---

[149] Dkt. No. 57 at 65, ¶ 93; *accord* Dkt. No. 55 at 79, ¶ 131.

[150] Fed. R. Civ. P. 23.1(b)(3).

[151] *See* Dkt. No. 54 at 14, ¶ 22 (arguing that pre-suit demand would be futile).

[152] Dkt. No. 55 at 33, ¶ 42.

[153] *Id.* at 32–33, ¶ 41; *see* Dkt. No. 57 at 26, ¶ 25.

[154] Dkt. No. 55 at 34 n.75 (citing *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) (Ellison, J.) & *Belford v. Scott*, No. CIV.A. H-11-2329, 2012 WL 3069846 (S.D. Tex. July 27, 2012) (Hoyt, J.)); Dkt. No. 57 at 26, ¶ 25 & 60, ¶ 82 (same).

allege facts . . . that could plausibly subject them [the other Defendants] to liability."[155] Plaintiffs respond that "the AT&T corporate amalgamation includes hundreds of legal entities, and AT&T employees often have no concept of which entity employs them or where their duties lie."[156] Plaintiffs argue they are "not required to plead what specific AT&T entity engaged in what conduct and at what time (nor could they given that AT&T's own employees either do not know or refuse to disclose this information)," and that they have pled as much specificity as required under applicable law.[157]

Federal Rule of Civil Procedure 8 requires only that a claim to relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Two cases are instructive. In *Belford v. Scott*, this Court noted that the plaintiff failed to specify "which defendants acted in what way regarding each claim" and that certain defendants were hardly mentioned except in the introduction.[158] For those defendants who were only briefly mentioned, the Court dismissed the pleadings as impermissibly conclusory.[159] *Del Castillo v. PMI Holdings North America Inc.* is even more illuminating. There, the Court dismissed claims where "[t]he only allegations that could plausibly apply" to three certain defendants were "allegations directed at all 28 Defendants," and the Court noted that the three defendants were not mentioned in the body of the complaint and that plaintiffs "pleaded no facts to show the relationship of these Defendants to the [facility], or to one another."[160] The *Del Castillo* court contrasted its holding with *Anwar v. Fairfield Greenwich Ltd.*,[161] where the Southern District of New York, in dealing

---

[155] Dkt. No. 55 at 34, ¶ 44.
[156] Dkt. No. 56 at 92, ¶ 155.
[157] Dkt. No. 56 at 93–94, ¶¶ 157–59.
[158] 2012 WL 3069846, at *6.
[159] *Id.*
[160] *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015).
[161] 728 F. Supp. 2d 372 (S.D.N.Y. 2010).

with arguments that plaintiff had impermissibly lumped defendants together, held that a complaint need not be a "model of clarity or exhaustively present the facts alleged" and that, to the extent the defendants "claim that the use of defined terms leaves the [complaint] confusing and unanswerable, the proper mechanism would have been to move for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure."[162]

Although Plaintiffs' complaint is regrettably unclear as to which Defendants committed which alleged acts of misconduct, unlike *Belford* and *Del Castillo*, Plaintiffs here do make allegations beyond the introduction in the body of the complaint attempting to show the Defendants' relationships and alleged misconduct.[163] Even if Plaintiffs do not separately plead which Defendant is tied to each allegation, Plaintiffs have provided some "facts to show the relationship of these Defendants to the [partnerships], [and] to one another."[164] For example, Plaintiffs allege that "AT&T Parent purchased another mobile wireless business competitive with the Partnerships,"[165] that "AT&T Mobility declared a capital call . . . to offset the losses it created by the self-interested and back-charged spectrum payments"[166] and that "AT&T Mobility's willful and grossly negligent mismanagement of the Partnerships . . . have damaged the Partnerships and the Limited Partners."[167] While in many of the allegations AT&T is used to refer to all the non-limited partnership defendants, the general contention of the Plaintiffs is that these Defendant's acted together. As the Southern District of New York pointed out, "[a]ny further clarification [Defendants] still require from this point forward may be sought in discovery

---

[162] *Id.* at 422.
[163] *See* Dkt. No. 54 at 9–13, ¶¶ 14–17; Dkt. No. 56 at 94, ¶ 158 (summarizing Plaintiffs' allegations).
[164] *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015).
[165] Dkt. No. 54 at 5, ¶ 6.
[166] *Id.* at 6, ¶ 8.
[167] *Id.* at 6–7, ¶ 16.

through specific interrogatories."[168] In addition, the Court is to give a liberal construction to the pleadings and disentitle Plaintiffs from offering evidence to clarify and support their theories of liability only if there is no basis for liability.[169] The Court is not persuaded that, because Plaintiffs' complaint is not a model of precision and clarity, it fails to state any claim for relief or give fair notice of Plaintiffs' claims under Federal Rule of Civil Procedure 8 at this early stage of analysis.[170]

Defendants further argue that Plaintiffs' inclusion of the three limited partnerships as Defendants is confusing.[171] Plaintiffs properly included the three limited partnerships as Defendants because they are "necessary" parties joined "nominally" in a derivative suit "since any judgment obtained against the real defendant runs in [their] favor."[172] Defendants cite no authority for their position that claims against the limited partnerships *must* be dismissed.[173]

Defendants also appear to argue that all claims against the non-general partner Defendants should be dismissed because "Plaintiffs have not sufficiently pleaded any elements of any theory of vicarious liability" or for alter ego or veil piercing claims.[174] However, the Court does not perceive Plaintiffs to be making any vicarious liability, alter ego, or veil piercing claims.[175] Defendants' argument is irrelevant.

---

[168] *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 422 (S.D.N.Y. 2010).

[169] *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002); *infra* note 312.

[170] *See infra* note 312 (supporting this holding under Delaware law).

[171] *See* Dkt. No. 32–33, ¶ 41 (arguing that including the three limited partnerships as Defendants is confusing).

[172] *Meyer v. Fleming*, 327 U.S. 161, 167 (1946).

[173] *See* Dkt. No. 57 at 33–34, ¶¶ 35–37.

[174] Dkt. No. 55 at 34–35, ¶ 45 (citing *Doberstein v. G-P Indus.*, No. CV 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015) (quotation omitted) ("To state a veil-piercing claim, the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors."); *see MicroStrategy Inc. v. Acacia Research Corp.*, No. CIV.A.5735-VCP, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010) (quotation omitted) ("[F]or this Court to pierce the corporate veil or hold that [defendant] is the alter ego of [another defendant], [plaintiff] must prove that some fraud or injustice would be perpetrated through misuse of the corporate form.").

[175] *See* Dkt. No. 54.

To the extent Defendants move to dismiss Plaintiffs' claims because of any generalized pleading deficiency or failure of particularization, such motion is **DENIED**.

### 3. Whether the Statute of Limitations Bars Plaintiffs' Claims

Defendants move to dismiss any of Plaintiffs' claims, or portions thereof, premised on Defendants' conduct that occurred before October 21, 2012.[176] Defendants argue that Plaintiffs' claims for breach of contract, breach of fiduciary duty, aiding and abetting, and fraud are all barred by a 4-year statute of limitations and cannot be saved by "any limitations-tolling theory."[177] Defendants additionally argue that Plaintiffs' claims for tortious interference and conversion/civil theft are barred by a 2-year statute of limitations.[178] Plaintiffs respond that Defendants' statute of limitations theory is an affirmative defense not addressed at the motion to dismiss stage, and that Defendants' theory is foreclosed in any event by Defendants' concealment of wrongdoing, the discovery rule, the continuing tort doctrine, and the partnership agreements.[179] Defendants reply that limitations-tolling theories (the discovery rule and continuing tort doctrines) and the partnership agreements are not properly asserted and cannot save Plaintiffs' claims.[180]

Irrespective of the Court's choice of law analysis in Section II.b above, the Court is bound to apply the statute of limitations in the State in which it sits, here Texas.[181] "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's

---

[176] Dkt. No. 55 at 75, ¶ 122.

[177] *Id.* at 75–76, ¶¶ 122–24.

[178] *Id.* at 72–73, ¶ 116 & 75, ¶ 121.

[179] Dkt. No. 56 at 106–09, ¶¶ 184–90.

[180] Dkt. No. 57 at 34–39, ¶¶ 38–45.

[181] *In re BP p.l.c. Sec. Litig.*, 51 F. Supp. 3d 693, 697–98 (S.D. Tex. 2014) (Ellison, J.) (collecting cases); *see Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1103 (5th Cir. 1981) ("[A] federal court is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own state's statute of limitations or the statute of limitations of some other state."); *Hill v. Perel*, 923 S.W.2d 636, 639 (Tex. App.—Houston [1st Dist.] 1995, no writ) (citation omitted) ("[M]atters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained. The statute of limitations is a procedural issue.").

pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[182] However, "[d]etermining when a plaintiff has sufficient information for the limitations period to begin is often fact specific and inappropriate for a motion to dismiss pursuant to Rule 12(b)(6)."[183] The Court may await further factual development before ascertaining whether the statute of limitations bars Plaintiffs' claims. "Dismissal should be granted 'only when the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint.'"[184] In other words, the complaint itself must have effectively pled Plaintiff out of court for the statute of limitations to be grounds for dismissal.[185]

The statute of limitations begins running when a claim accrues, but accrual may be delayed. "[A]ccrual of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified."[186] "The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action."[187] The discovery rule applies broadly to statutory[188] and common law causes of

---

[182] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050–51 (5th Cir. 1982) (holding that, when a counterclaim showed that a contract was executed outside the limitations period, the "counterclaim on its face appears to reveal the existence of an affirmative defense to it, which would make the granting of a Rule 12(b)(6) dismissal proper").
[183] *In re Cobalt Int'l Energy, Inc.*, No. CV H-14-3428, 2016 WL 215476, at *9 (S.D. Tex. Jan. 19, 2016) (Atlas, J.) (citing *LC Capital Partners, LP v. Frontier Ins. Grp.*, 318 F.3d 148, 156 (2d Cir. 2003))
[184] *JNT Enters. v. Nationwide Prop. & Cas. Ins. Co.*, No. H-13-1982, 2014 U.S. Dist. LEXIS 199582, at *11 (S.D. Tex. Apr. 15, 2014) (Atlas, J.) (quoting *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011)).
[185] *Sivertson v. Clinton*, No. 3:11-cv-0836-D, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (collecting cases).
[186] *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).
[187] *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996); *accord Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) ("Courts applying . . . the discovery rule . . . must determine when a plaintiff knew or, in the exercise of reasonable diligence, should have known she has been injured.").
[188] *See Nelson v. Krusen*, 678 S.W.2d 918, 923 (Tex. 1984) (holding an insurance statute's limitations period unconstitutional "to the extent it purports to cut off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit").

action.[189] "In order to raise the discovery rule in federal court, the plaintiff need not expressly plead the rule; it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories upon which the complaint is based."[190] With respect to fraudulent concealment, "fraudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence."[191] "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action."[192]

While Defendants' argument may in time show merit, the Court holds that Defendants have not shown that the complaint itself establishes that Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations. Plaintiffs do allege that Defendants concealed facts, some of which may go to discovery of the claim itself and some of which may only go to discovery of damages. Defendants have not pointed to allegations which unambiguously plead Plaintiffs out of court.[193] Accordingly, the Court holds that dismissal under Rule 12(b)(6) is inappropriate at this stage when the allegations of the complaint do not clearly foreclose application of the discovery rule or the fraudulent concealment doctrine or any of Plaintiffs' potential rejoinders to Defendants' statute of limitations affirmative defense. To the extent Defendants move to dismiss Plaintiffs' complaint because of the statute of limitations, such

---

[189] *See Rogers v. Ricane Enters.*, 930 S.W.2d 157, 167 (Tex. App.—Amarillo 1996, writ denied) (collecting cases applying the discovery rule to medical malpractice claims, libel claims, fraud claims, etc.); *Friddle v. Fisher*, 378 S.W.3d 475, 483–84 (Tex. App.—Texarkana 2012, pet. denied) ("[I]t is well-settled law that the discovery rule applies to claims for breach of fiduciary duty.").

[190] *Askanase v. Fatjo*, 828 F. Supp. 465, 470 (S.D. Tex. 1993) (Crone, J.) (citing *Simpson v. James*, 903 F.2d 372, 375 (5th Cir. 1990)).

[191] *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015).

[192] *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983), *quoted in Valdez*, 465 S.W.3d at 229.

[193] *See supra* notes 184–185.

motion is **DENIED**. The Court has no occasion to reach, and thus makes no determination whether the continuing tort doctrine or any partnership agreement language tolls the applicable statute of limitations.[194]

### 4. Whether Plaintiffs' Tort Claims are Foreclosed as Duplicative

Defendants' argue that Plaintiffs have failed to allege any legal duty independent from Defendants' contractual duties, so the Court should dismiss all of Plaintiffs' tort claims.[195] Plaintiffs disagree.[196] Delaware law will permit parallel breach of contract and tort claims "if the plaintiff asserts that the alleged contractual breach was accompanied by the breach of an independent duty imposed by law."[197] In the case that Defendants cite for the proposition that tort claims are foreclosed when they fail to plead a duty independent of contract, the Court of Chancery of Delaware dealt with a plaintiff's claim against various defendants for conversion of funds in an investment capital account.[198] All of the relevant defendants had signed an LLC agreement which established the general partner of the fund and the general partner's managing members.[199] The court held that "to establish a claim for conversion apart from the contract claim, [plaintiff] would have to show that he had a right to the money—other than a right pursuant to the contract—that was violated by the defendants' exercise of dominion over the money."[200] Because the plaintiff only pled his right to the money pursuant to the contract and did not identify any interference with the money independent from the plaintiff's alleged contractual

---

[194] *See id.* at 108–09, ¶¶ 189–90.
[195] Dkt. No. 55 at 38–39, ¶¶ 53–55.
[196] *See* Dkt. No. 56 at 90, ¶ 152 (citing Texas law).
[197] *Data Mgmt. Internationale, Inc. v. Saraga*, No. CIV.A.05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007); *see Talley v. Christiana Care Health Sys.*, No. 17-926-CJB, 2019 U.S. Dist. LEXIS 25881, at *12–13 (D. Del. Feb. 19, 2019) (describing the "bootstrapping doctrine" as requiring allegations of a breach separate from the agreement of the parties); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (Plaintiffs need only allege "that the defendant violated an independent legal duty, apart from the duty imposed by contract").
[198] *See Kuroda*, 971 A.2d at 878.
[199] *Id.*
[200] *Id.* at 890.

right to the money, the court held that the conversion claim must be dismissed as duplicative of the breach of contract claim.[201]

Even if the Court were to apply this precedent broadly to all tort claims, instead of solely to conversion claims, the parties concur that Defendants AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc. are not parties to the limited partnership agreements.[202] Defendants do not explain why the "general duty grounded in tort law to refrain from converting another's property"[203] or otherwise committing a tort would not apply to those Defendants who are not bound by contractual duties.[204] In short, Defendants' precedent wherein all relevant parties had agreed to contractual duties is easily distinguishable. Except as elaborated in Section II.d.6 with respect to breach of fiduciary claims,[205] Defendants' motion to dismiss is **DENIED** to the extent it moves to dismiss tort claims as duplicative of contract claims.

---

[201] *Id.*
[202] Dkt. No. 57 at 29, ¶ 29 & n.51 (citing Dkt. No. 56 at 44, ¶ 60).
[203] *Data Mgmt. Internationale, Inc. v. Saraga*, No. CIV.A.05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007).
[204] *See* Dkt. No. 55 at 39, ¶ 55.
[205] *See infra* notes 285–286 and accompanying text.

5. *Breach of Contract Claim*

Turning to Plaintiffs' specific claims, the Court will first analyze Plaintiffs' breach of contract claim because whether Plaintiffs state a claim for breach of fiduciary duty depends partly upon whether the partnership agreements expressly address the alleged misconduct.[206] Plaintiffs bring claims for breach of the partnership agreements for the McAllen-Edinburg-Mission SMSA Limited Partnership, Texas RSA 18 Limited Partnership, and Texas RSA 19 Limited Partnership.[207] Plaintiffs point to terms of the partnership agreements that require the general partner of the partnerships, New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, to act in the best interests of the partnerships and provide the most profitable cellular service.[208] Defendants move to dismiss on the ground that Plaintiffs cannot state a breach of contract claim when Plaintiffs' allegations are "based on action that the Partnership Agreements expressly permit."[209] Defendants point to numerous provisions giving the general partner, New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, broad authority to act as it reasonably deems appropriate.[210] Plaintiffs respond in a weighty 40 paragraphs across 20 pages discussing at length the contractual terms and alleged breaches.[211] Defendants summarily reply that the partnership agreements empower New Cingular Wireless PCS, LLC d/b/a AT&T Mobility as general partner to exercise whatever actions or forbearances it "reasonably deem[s] . . . to be necessary or appropriate in furtherance of the purposes of the Partnerships."[212]

Perhaps because of the years of litigation that have elapsed since Plaintiffs' first complaint, both parties have missed the forest for the trees. The lengthy arguments made in the

---

[206] *See Nemec v. Shrader*, 991 A.2d 1120, 1129 & n.29 (Del. 2010).
[207] Dkt. No. 54 at 29–31, ¶¶ 84–90.
[208] *Id.* at 29, ¶¶ 85–86.
[209] Dkt. No. 55 at 56, ¶ 82.
[210] *Id.* at 56–60, ¶¶ 84–90.
[211] Dkt. No. 56 at 56–76, ¶¶ 80–120.
[212] Dkt. No. 57 at 40–42, ¶¶ 47–49.

briefs are light on *law* in favor of arguing the *facts*. It is apparent that the parties disagree on whether Defendants' conduct was "reasonable" within the scope of the partnership agreements. A Supreme Court of Delaware precedent that neither party cited tidily resolves this issue. Where a partnership agreement empowers the general partner to exercise discretion in a reasonable manner, "[r]easonableness is a question of fact to be determined by the finder of fact" "which cannot be resolved on a motion for judgment on the pleadings."[213] A motion for judgment on the pleadings and a motion to dismiss for failure to state a claim use the same legal standards.[214] Plaintiffs' allegations that Defendants are underpaying Plaintiffs in breach of the partnership agreements,[215] withholding partnership property in breach of the agreements,[216] and are otherwise breaching the agreements,[217] are sufficient to survive a motion to dismiss even if the Court doubts their authenticity.[218] Though Plaintiffs discuss at length the various partnership agreement language that Plaintiffs allege Defendants have violated, the Court is only concerned with whether Plaintiffs have stated a claim for breach of contract, which the Court holds Plaintiffs have. The Court **DENIES** Defendants' motion to dismiss with respect to Plaintiffs' breach of contract claim.

### 6.   *Breach of Fiduciary Duty Claim*

Plaintiffs bring claims for breach of fiduciary duty, breach of the "fiduciary duty of loyalty to the Partnerships and Limited Partners;" breach of the "fiduciary duty of care;" breach

---

[213] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1206 (Del. 1993); *see also BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, No. CIV.A. 20456, 2004 WL 1739522, at *6 (Del. Ch. Aug. 3, 2004) (holding that, if a plaintiff alleges a defendant exercised unreasonable discretion or acted with malintent under a term of an agreement requiring good faith or reasonable prudence, it is a question of fact that survives a motion to dismiss).

[214] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[215] Dkt. No. 54 at 5, ¶ 5.

[216] *Id.* at 9, ¶ 14.

[217] *See id.* at 29, ¶ 85.

[218] *See supra* note 103.

of Defendants' "fiduciary duties of good faith, fair dealing, and candor to the Partnerships and Limited Partners;" and breach of the implied covenant of good faith and fair dealing.[219] The Court will analyze Plaintiffs' claims against general partner New Cingular Wireless PCS, LLC d/b/a AT&T Mobility immediately below and defer analysis of Plaintiffs' claims against New Cingular Wireless PCS, LLC's managers and controllers to a later subsection. The Court will assess Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing in the last subsection.

> i.   *Breach of Fiduciary Duty Claim Against New Cingular Wireless PCS, LLC d/b/a AT&T Mobility*

Defendants move to dismiss Plaintiffs' claim for breach of fiduciary duty against the general partner because the partnership agreements at issue "have eliminated the General Partner's traditional fiduciary duties and imposed contractual duties instead."[220] Therefore, Defendants argue, no fiduciary "entire fairness standard" applies.[221] Defendants also argue that Section 16.1 of the partnership agreements exculpate New Cingular Wireless PCS, LLC d/b/a AT&T Mobility from liability unless the Defendant general partner acted with gross negligence or willful misconduct.[222] Plaintiffs respond that the partnership agreements do not eliminate or supplant fiduciary duties, so Defendants must meet the entire fairness standard, and Section 16.1 does not eliminate or exculpate Defendants from fiduciary duties.[223] Defendants reply that the breach of fiduciary duty claim impermissibly restates a claim for breach of contract and the entire fairness standard does not apply because the partnership agreements have supplanted

---

[219] Dkt. No. 54 at 17–28, ¶¶ 41–83.
[220] Dkt. No. 55 at 49, ¶ 72.
[221] *Id.* at 52–53, ¶¶ 76–77.
[222] *Id.* at 50, ¶ 73
[223] Dkt. No. 56 at 35–43, ¶¶ 44–58.

fiduciary duties.[224] Defendants also urge that Section 16.1 eliminates fiduciary duties and the implied covenant of good faith and fair dealing does not create fiduciary duties.[225]

In construing partnership agreements, Delaware statutory law seeks to "give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements,"[226] over and above the common law,[227] and specifically provides that when "a partner or other person has duties (including fiduciary duties) to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement, the partner's or other person's duties may be . . . restricted or eliminated by provisions in the partnership agreement."[228] This flexibility to contract freely "is precisely the reason why many choose the limited partnership form in Delaware."[229] In Delaware, because contract law is superior to fiduciary law, "if the duty sought to be enforced arises from the parties' contractual relationship, a contractual claim will preclude a fiduciary claim."[230]

---

[224] Dkt. No. 57 at 49, ¶¶ 61–62; *see id.* at 50–52, ¶¶ 63–65.

[225] *Id.* at 52–54, ¶¶ 66–68.

[226] DEL. CODE ANN. tit. 6, § 17-1101(c) (West 2020).

[227] *Id.* § 17-1101(b) ("The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this chapter.").

[228] *Id.* § 17-1101(d); *see In re Cencom Cable Income Partners, L.P. Litig.*, No. Civ.A.14634, 1996 WL 74726, at *4 (Del. Ch. Feb. 15, 1996) ("The parties may expressly modify traditional concepts of fiduciary duty . . . to define the parameters of due care within the structure of the relationship.").

[229] *Kahn v. Icahn*, No. CIV.A.15916, 1998 WL 832629, at *2 (Del. Ch. Nov. 12, 1998).

[230] *Solow v. Aspect Res., LLC*, No. Civ.A.20397, 2004 Del. Ch. LEXIS 151, at *18 (Oct. 19, 2004); *see also Sonet v. Timber Co., L.P.*, 722 A.2d 319, 323–24 (Del. Ch. 1998) ("It is evident . . . that the Delaware Legislature has seen fit to enact the Delaware Revised Uniform Limited Partnership Act and promoters and organizers have increasingly adopted that organizational form for their ventures. Once authorized by law, the decision to adopt and operate under a particular limited liability structure is the sort of fundamental business decision that courts routinely protect. As a general matter, courts should be, and are, reluctant to import [fiduciary] jurisprudence from one area of the law— which is loaded with notions of efficiency and fairness that are well developed for that particular context—into a separate area of the law—where many procedural and substantive aspects present in other legal regimes are only optional defaults. . . . When a particular limited partnership has plainly opted out of the statutory default scheme, judicial review, in my opinion, must look to the limited partnership's distinct doctrinal foundation in contract theory.").

However, any drafter of a partnership agreement must use great care to "supplant the operation of traditional fiduciary duties."[231] Delaware policy is that "[i]n view of the great freedom afforded to such drafters and the reality that most publicly traded limited partnerships are governed by agreements drafted exclusively by the original general partner, it is fair to expect that restrictions on fiduciary duties be set forth clearly and unambiguously. A topic as important as this should not be addressed coyly."[232] Therefore, "[i]n the contractual setting of a limited partnership agreement, the parties may define the parameters of fiduciary duties" with pellucid contractual provisions.[233] There are no separate fiduciary duties of loyalty when there are "clear and unambiguous modifications of fiduciary duties provided in a legally enforceable partnership agreement."[234] In short, whether parties to a partnership agreement are subject to fiduciary duties depends on whether the agreement clearly modifies fiduciary duties and to what extent.[235]

Key language of the partnership agreements is thus at issue. The threshold issue is whether Section 16.1 eliminates fiduciary duties as Defendants argue. That section is labeled "Exculpation of the General Partner." Section 16.1 of the McAllen-Edinburg-Mission SMSA Limited Partnership agreement provides:

> The General Partner will not be liable for any loss to the Partnership or the Limited Partners by reason of any act or failure to act unless the General Partner was guilty of willful misconduct or gross negligence.[236]

---

[231] *Miller v. Am. Real Estate Partners, Ltd. P'ship*, No. Civ.A.16788, 2001 WL 1045643, at *8, 2001 Del. Ch. LEXIS 116, at *27 (Sep. 6, 2001).

[232] *Id.* (footnote omitted).

[233] *In re Cencom Cable Income Partners, L.P. Litig.*, No. Civ.A.14634, 1996 WL 74726, at *4 (Del. Ch. Feb. 15, 1996).

[234] *Kahn v. Icahn*, No. Civ.A.15916, 1998 WL 832629, at *3 (Del. Ch. Nov. 12, 1998); *cf. Lee v. Pincus*, No. CV 8458-CB, 2014 WL 6066108, at *8 (Del. Ch. Nov. 14, 2014) (quotations omitted) ("[A] contract must expressly address an issue, and thereby create a right that is solely a creature of contract, for the contract to preempt the default fiduciary relationship between directors and stockholders.").

[235] *See In re Inergy L.P.*, No. CIV.A.5816-VCP, 2010 WL 4273197, at *12 (Del. Ch. Oct. 29, 2010).

[236] Dkt. No. 55-1 at 45, § 16.1.

Section 16.1 of the Texas RSA 18 Limited Partnership and Texas RSA 19 Limited Partnership agreements provides:

> The General Partner will not be liable for any loss or damage to the Partnership or the Limited Partners by reason of any act or failure to act unless a court determines by clear and convincing evidence that the General Partner was guilty of willful misconduct or gross negligence.[237]

An exculpatory provision or clause is "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act."[238] In general, exculpatory provisions are affirmative defenses that cannot provide a basis for dismissal.[239] To avoid the general rule, Defendants cite to *In re Lear Corp. Shareholder Litigation*[240] to argue that dismissal is appropriate because of this exculpatory provision.[241] In that case, the Lear Corporation's board entered into a revised merger agreement knowing its shareholders probably would not approve the merger and the corporation would be liable for $25 million for the failed merger to a bidder who proposed to acquire Lear Corporation.[242] The shareholders indeed did not approve, then brought a claim for breach of fiduciary duty for the board's approval of the merger.[243] The *Lear* court noted that, because the shareholder plaintiffs failed to make a demand of redress to the board, the plaintiffs had to meet a *heightened pleading standard* by alleging "particularized facts stating a *non-exculpated* breach of fiduciary duty by the Lear board" to satisfy a standard akin to the Federal Rule of Civil Procedure 23.1 requisites discussed in Section II.d.1 above.[244] The

---

[237] Dkt. No. 55-2 at 38, § 16.1; Dkt. No. 55-3 at 32, § 16.1.
[238] *Exculpatory Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[239] *Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 561 & n.161 (D. Del. 2008) (collecting cases); *In re Simplexity, LLC*, No. 14-10569(KG), 2017 WL 65069, at *6 (Bankr. D. Del. Jan. 5, 2017) ("An exculpatory clause is considered an affirmative defense and will not provide the basis for dismissal.") (collecting cases).
[240] 967 A.2d 640 (Del. Ch. 2008).
[241] Dkt. No. 55 at 50, ¶ 73 & n.144.
[242] 967 A.2d 640.
[243] *Id.* at 647.
[244] *Id.* (emphasis added); *see supra* notes 141–145.

caselaw that the *Lear* court and Defendants rely upon only concern this heightened pleading standard in the absence of a shareholder demand of redress.[245] Defendants' attempt to engraft this analysis to all instances in which an exculpatory clause exists contrasts with Delaware courts' unambiguous statement that exculpatory clauses are not bases for dismissal.[246] Thus, the *Lear Corp.* case is not persuasive. The Court is concerned with Federal Rules of Civil Procedure 8 and 12(b)(6) standards in this analysis.

Defendants also assert that Section 16.1 supplants fiduciary duties with a contractual standard.[247] However, a 2012 Court of Chancery of Delaware decision rejects this argument. In *Feeley v. NHAOCG, LLC*, the chancery court dealt with a contract provision that exempted Limited Liability Company Members from liability "unless the act or omission is attributed to gross negligence, willful misconduct or fraud or constitutes a material breach" of the contract.[248] The court held that such contract language did not eliminate fiduciary duties. "Rather than eliminating fiduciary duties, the exculpatory language of Section 2.10 recognizes their continuing existence. Gross negligence is the standard for evaluating a breach of the duty of care. Willful misconduct is one standard for evaluating whether a fiduciary breached the duty of loyalty by acting in bad faith."[249] In other words, far from eliminating fiduciary duties, Section 16.1's language is consistent with fiduciary duties. The Court agrees with Plaintiffs that Section 16.1 does not eliminate fiduciary duties.[250]

---

[245] *See Lear Corp.*, 967 A.2d at 648 n.26, *cited in* Dkt. No. 55 at 50, n.144.
[246] *See supra* note 239.
[247] Dkt. No. 55 at 50, ¶ 73.
[248] 62 A.3d 649, 664 (Del. Ch. 2012).
[249] *Id.* (citations omitted).
[250] *See* Dkt. No. 56 at 42, ¶ 57 & n.94.

Defendants also point to Sections 7.1, 7.5, 8.1, and 8.2 of the partnership agreements for the proposition that the agreements have eliminated fiduciary duties.[251] Section 7.1 is labeled "Partnership Powers" and provides that the partnership and general partner

> shall be empowered to do or cause to be done any and all acts reasonably deemed by the General Partner to be necessary or appropriate in furtherance of the purposes of the Partnership or forebear from doing any act if the General Partner reasonably deems such forebearance necessary or appropriate in furtherance of the purposes of the Partnership,

including a list of particular powers.[252] Section 8.2 similarly empowers the general partner to "execute all contracts, agreements and instruments as the General Partner reasonably may deem necessary or desirable to carry on the purpose of the Partnership."[253] Section 8.1 simply provides that "The General Partner will at all times act in the best interests of the Partnership."[254] Section 7.5, however, only appears in two of the three limited partnership agreements. In the Texas RSA 18 Limited Partnership and the Texas RSA 19 Limited Partnership agreements, Section 7.5 states:

> The General Partner and its Affiliates shall have the right to contract or otherwise deal with the Partnership for the sale or lease of real or personal property, the rendition of services and other purposes, and to receive payments and fees from the Partnership in connection therewith, provided that the terms and conditions of such transactions are comparable to, or not substantially less favorable than, similar arms'-length transactions between the General Partner or its Affiliate and unrelated third parties. The Partners recognize that the General Partner may have conflicting duties to its many Affiliates including without limitation in transactions between two of its Affiliates. In the absence of gross negligence or willful misconduct, the General Partner's resolution of such conflict of interest shall not constitute a breach of this Agreement or any other agreement contemplated herein. Nothing herein shall be construed to require the execution of written contracts in connection with management and operating services provided by the General Partner as contemplated in Sections 4.1 and 4.2.[255]

---

[251] Dkt. No. 55 at 50, ¶¶ 72–73; *id.* at 48 n.133.

[252] Dkt. No. 55-1 at 22, § 7.1; Dkt. No. 55-2 at 16, § 7.1; Dkt. No. 55-3 at 16, § 7.1.

[253] Dkt. No. 55-1 at 26, § 8.2; Dkt. No. 55-2 at 20, § 8.2; Dkt. No. 55-3 at 20, § 8.2.

[254] Dkt. No. 55-1 at 26, § 8.1; Dkt. No. 55-2 at 20, § 8.1; Dkt. No. 55-3 at 19, § 8.1.

[255] Dkt. No. 55-2 at 19, § 7.5; Dkt. No. 55-3 at 19, § 7.5.

The McAllen-Edinburg-Mission SMSA Limited Partnership agreement does not contain a Section 7.5 or otherwise have a provision specifically dealing with "conflicting duties" or transactions among affiliates.[256] Defendants assert that the contractual provisions just set forth "eliminate traditional fiduciary duties and impose a contractual duty in their place," so Plaintiffs' claim for breach of fiduciary duty should be dismissed.[257] Plaintiffs respond that the contractual provisions do not eliminate fiduciary duties and Section 7.5 actually adopts the fiduciary "entire fairness requirements."[258]

None of the partnership agreement provisions cited explicitly modify fiduciary duties by stating that they are doing so in precise terms. "[T]his [C]ourt faces a situation where an agreement which does not expressly preclude the application of default principles of fiduciary is argued to do so by implication."[259] However, again, displacement of fiduciary duties must be crystal clear.[260] Because this case concerns allegations of self-dealing transactions in the context of limited partnership agreements, the Court finds the following passage particularly illuminating:

> The arguments presented again place this court in the position of making a less-than-scientific judgment about the interplay between the contractual and fiduciary duties of general partners of limited partnerships. Determinations of whether the provisions of a limited partnership agreement are inconsistent with the application of default fiduciary duties are necessarily imprecise and often require close judgment calls. While demanding that the parties to a limited partnership agreement make their intentions to displace fiduciary duties "plain," the cases have erred on the side of flexibility regarding the type of evidence sufficient to support a judicial finding that such an intention existed. Resisting the temptation to resolve hairsplitting questions by reference to maxims of interpretation, our courts have thus far adhered as a general matter to a close examination of whether

---

[256] *See* Dkt. No. 55-1 at 26.
[257] Dkt. No. 55 at 50, ¶ 72; *accord* Dkt. No. 57 at 50–51, ¶¶ 63–64.
[258] Dkt. No. 56 at 69–70, ¶ 110.
[259] *Miller v. Am. Real Estate Partners, L.P.*, No. CIV.A.16788, 2001 WL 1045643, at *7 (Del. Ch. Sept. 6, 2001).
[260] *See supra* notes 231–234.

the application of default fiduciary duties can be reconciled with the practical and efficient operation of the terms of the limited partnership agreement. Where such a reconciliation is possible, the court will apply default fiduciary duties in the absence of clear contractual language disclaiming their applicability. But where the use of default fiduciary duties would intrude upon the contractual rights or expectations of the general partner or be insensible in view of the contractual mechanisms governing the transaction under consideration, the court will eschew fiduciary concepts and focus on a purely contractual analysis of the dispute. Put somewhat differently, the irreconcilability of fiduciary duty principles with the operation of the partnership agreement can itself be evidence of the clear intention of the parties to preempt fiduciary principles.[261]

In short, when a general partner acts in good faith reliance on the partnership agreement, the general partner should not be surprised by the application of default or different fiduciary standards than those set forth plainly by the partnership agreement.[262] Nevertheless, "efforts by a fiduciary to escape a fiduciary duty, whether by a corporate director or officer or other type of trustee, should be scrutinized searchingly."[263]

Accordingly, whether the fiduciary entire fairness standard applies to this dispute depends on how the contracts modify the entire fairness standard, if at all, and exactly how the contracts address the standard.[264] The entire fairness standard "has two components: fair dealing and fair price."[265] The Court of Chancery of Delaware elaborated:

Fair dealing embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. Fair price relates to the economic and financial considerations of the proposed merger, including all

---

[261] *R.S.M. Inc. v. All. Capital Mgmt. Holdings L.P.*, 790 A.2d 478, 497–98 (Del. Ch. 2001) (footnotes omitted) (collecting cases).

[262] *See U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 501 (Del. 1996) ("6 *Del.C.* § 17–1101(d) provides a safe harbor against claims of breach of fiduciary duty for general partners who act in good faith reliance on the partnership agreement.").

[263] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 168 (Del. 2002).

[264] *Id.* at 167–68 (footnote omitted) ("Section 17–1101(d)(2) states: 'the partner's or other person's duties and liabilities may be *expanded* or *restricted* by provisions in the partnership agreement.' There is no mention in § 17–1101(d)(2), or elsewhere in DRULPA at 6 *Del. C.*, ch. 17, that a limited partnership agreement may *eliminate* the fiduciary duties or liabilities of a general partner.").

[265] *Cole v. Kershaw*, No. Civ.A.13904, 2000 Del. Ch. LEXIS 117, at *25 (Aug. 15, 2000).

relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.[266]

Two Delaware Supreme Court cases illuminate how a partnership agreement modifies the entire fairness standard. In 2002, the Delaware Supreme Court dealt with two sections of a partnership agreement that the court held operated together "as a contractual statement of the traditional entire fairness standard [of fair price and fair dealing]."[267] One section permitted the partnership to enter into self-dealing transactions "provided that the terms of any such transaction are substantially equivalent to terms obtainable by the Partnership from a comparable unaffiliated third party," and the complementary section required an independent audit committee to review and approve any self-dealing transaction.[268] The court held that those two sections subjected the general partner "to a fairness standard akin to the common law one applicable to self-dealing transactions by fiduciaries,"[269] so the general partner could be "liable for breaching the contractually created fiduciary duties of entire fairness."[270] Similarly in 2012, the Delaware Supreme Court reviewed a limited liability company agreement for whether the member-manager of the LLC owed fiduciary duties to minority investors.[271] The court held that the agreement's requirement that any member-manager not "enter into any additional agreements with affiliates on terms and conditions which are less favorable to the Company than the terms and conditions of similar agreements which could then be entered into with arms-length third parties, without the consent of a majority of the non-affiliated Members," required application of the entire fairness standard because *both* the fair dealing (the consent of a majority of the non-

---

[266] *Id.* (footnotes omitted).
[267] *Gotham Partners*, 817 A.2d at 171 (alteration in original).
[268] *Id.*
[269] *Id.* (quotation omitted).
[270] *Id.* at 172.
[271] *Gatz Props., LLC v. Auriga Capital Corp.*, 59 A.3d 1206 (Del. 2012).

affiliated Members) and the fair price (arms-length dealing) prongs were present.[272] The court concluded that the agreement "contractually adopts the fiduciary duty standard of entire fairness."[273]

In this case, general grants of authority and standards to manage the business of the partnerships memorialized in sections 7.1, 8.1, and 8.2 cannot displace fiduciary duties.[274] Nothing in these sections indicates any attempt to displace fiduciary duties. Although Defendants are correct that fiduciary standards may be displaced by "sole discretion" or "good faith" standards,[275] such displacement is only effective when the contract provides that *all* judgments (or at least all judgments relevant to the disputed subject matter, such as a merger) are displaced by the contractual standard.[276] The Court holds that sections 7.1, 8.1, and 8.2 in the partnership agreements do not *clearly* displace fiduciary duties or are incompatible with default fiduciary duties.

However, section 7.5 is a different matter. The Court holds that section 7.5 does displace fiduciary duties. Section 7.5 specifically addresses "conflicting duties" and contains the "fair price" prong of the entire fairness standard, requiring transactions to be "comparable to, or not substantially less favorable than, similar arms'-length transactions."[277] Section 7.5 then provides that, even though the parties are aware of conflicting interests in self-dealing transactions, they

---

[272] *Id.* at 1213.

[273] *Id.*

[274] *See In re Inergy L.P.*, No. CIV.A.5816-VCP, 2010 WL 4273197, at *13 (Del. Ch. Oct. 29, 2010) ("I note that the general grant of authority to Inergy GP to manage the business of Inergy in § 7.1(a) does not provide the applicable standard. Neither party seriously advances that provision as the governing standard and other, more specific sections of [the contract] apply more directly to this case."); *Miller v. Am. Real Estate Partners, L.P.*, No. CIV.A.16788, 2001 WL 1045643, at *8 (Del. Ch. Sept. 6, 2001) (rejecting the argument that, where a contract supplies a "sole discretion" standard, such standard displaces all fiduciary duties).

[275] *See* Dkt. No. 55 at 49, ¶ 72.

[276] *See Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 361–62 (Del. 2013); *cf. Kahn v. Icahn*, No. CIV.A.15916, 1998 WL 832629, at *2–3 (Del. Ch. Nov. 12, 1998).

[277] Dkt. No. 55-2 at 19, § 7.5; Dkt. No. 55-3 at 19, § 7.5.

resolve that, "[i]n the absence of gross negligence or willful misconduct, the General Partner's resolution of such conflict of interest shall not constitute a breach."[278] Therefore, "the Partnership Agreement, and not default rules of fiduciary duty, control."[279] The "language cited . . . does in fact reduce the general partner's duties from a fiduciary duty to merely a duty of good faith," that is, to not act with gross negligence or willful misconduct.[280] This conclusion is consistent with the general partner's expectations under the agreements: even if a questioned transaction did not meet the "entire fairness standard," the transaction would be permissible under the partnership agreements so long as it was not accomplished by the general partner's gross negligence or willful misconduct and provided the transaction was consistent with all other applicable language, such as being not substantially less favorable than an arms'-length transaction.[281] The provision is enforceable, because it limits the general partner's "fiduciary duties with regard to an interested transaction with the company to a duty to negotiate the transaction on arms' length terms, instead of imposing a duty to assure that the transaction would be entirely fair" to the limited partners.[282] This holding is also consistent with the Court of Chancery of Delaware's admonishment:

> This court has made clear that it will not tempted by the piteous pleas of limited partners who are seeking to escape the consequences of their own decisions to become investors in a partnership whose general partner has clearly exempted itself from traditional fiduciary duties. The [Delaware Revised Uniform Limited Partnership Act] puts investors on notice that fiduciary duties may be altered by

---

[278] *Id.*

[279] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. CIV.A.15754, 2000 WL 1476663, at *12 (Del. Ch. Sept. 27, 2000).

[280] *In re Kilroy*, No. 05-90083-HD-7, 2008 WL 780692, at *6 (Bankr. S.D. Tex. Mar. 24, 2008).

[281] *See Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 105 (Del. 2013) ("It is entirely possible that a defendant may not subjectively believe that an action is in a partnership's best interests (as the contractual duty of subjective good faith requires), but nonetheless does not subjectively believe that the action is *against* the partnership's best interests.").

[282] *In re Atlas Energy Res., LLC*, No. CIV.A. 4589-VCN, 2010 WL 4273122, at *8 (Del. Ch. Oct. 28, 2010) (citing *Flight Options Int'l, Inc. v. Flight Options, LLC*, No. CIV.A. 1459-N, 2005 WL 6799224, at *7 (Del. Ch. July 11, 2005)).

partnership agreements, and therefore that investors should be careful to read partnership agreements before buying units. In large measure, the DRULPA reflects the doctrine of *caveat emptor*, as is fitting given that investors in limited partnerships have countless other investment opportunities available to them that involve less risk and/or more legal protection. For example, any investor who wishes to retain the protection of traditional fiduciary duties can always invest in corporate stock.[283]

Accordingly, section 7.5 of the Texas RSA 18 Limited Partnership and the Texas RSA 19 Limited Partnership "agreement[s] and fiduciary duties intersect at a precise and legally relevant point, reducing the question of whether the partnership agreement and fiduciary duties have been breached largely to a single inquiry in the first instance."[284] The single inquiry is whether Defendants breached the two partnership agreements in the context of a self-dealing transaction. "It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."[285] Because the inquiry with respect to the Defendants' alleged breach is addressed by contractual standards, Plaintiffs' claims for breach of fiduciary duty cannot survive in connection with the Texas RSA 18 Limited Partnership and the Texas RSA 19 Limited Partnership agreement where section 7.5 appears.[286]

However, as discussed above, the McAllen-Edinburg-Mission SMSA Limited Partnership agreement does not contain a section 7.5 or other language addressing self-dealing transactions and the parties have pointed to no provision that clearly displaces fiduciary duties.[287]

---

[283] *Miller v. Am. Real Estate Partners, Ltd. P'ship*, No. Civ.A.16788, 2001 Del. Ch. LEXIS 116, at *26–28 (Sep. 6, 2001).

[284] *R.S.M. Inc. v. All. Capital Mgmt. Holdings L.P.*, 790 A.2d 478, 498 (Del. Ch. 2001).

[285] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

[286] *See CIM Urban Lending GP, LLC v. Cantor Commercial Real Estate Sponsor, L.P.*, No. CV 11060-VCN, 2016 WL 768904, at *3 (Del. Ch. Feb. 26, 2016) (holding that contract claims prevail over fiduciary duty claims and that, when "the fiduciary duty claim duplicates the contract claim, it must give way to the contract claim").

[287] *See R.S.M.*, 790 A.2d at 497.

Defendants have not demonstrated why default fiduciary duties would be incompatible with the McAllen-Edinburg-Mission SMSA Limited Partnership agreement. Accordingly, default fiduciary duties attach to the general partner. "The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts."[288] Even if the McAllen-Edinburg-Mission SMSA Limited Partnership agreement grants the general partner discretion to enter self-dealing transactions, the general partner must abide by fiduciary duties of loyalty and care.[289]

Defendants' last stand is that the business judgment rule applies until rebutted, so the "entire fairness standard" of fiduciary duty cannot apply because Plaintiffs have failed to rebut the presumption that any business decision is subject to the business judgment rule unless the decision was plainly made in bad faith or constituted an abuse of discretion.[290] But "[g]eneral partners may not claim the protection of the business judgment rule when appearing on both sides of the transaction or when deriving a personal benefit in the sense of self-dealing."[291] The Court agrees with Plaintiffs that the entire fairness standard applies "when [controllers and directors] make decisions where the controller's self-interest conflicts with the best interests of the [limited partners]."[292] Because Plaintiffs have pled a conflict of interest in the transactions at issue,[293] Defendants are not entitled to the favorable presumption of the business judgment rule.

---

[288] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983); *see Gesoff v. IIC Indus.*, 902 A.2d 1130, 1144 (Del. Ch. 2006) (reaffirming the *Weinberger* formulation of the entire fairness standard).

[289] *Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, No. Civ.A.5502-CS, 2011 Del. Ch. LEXIS 116, at *114–15 (Aug. 8, 2011).

[290] Dkt. No. 57 at 55–56, ¶¶ 71–73.

[291] *Seaford Funding Ltd. P'ship v. M & M Assocs. II, L.P.*, 672 A.2d 66, 70 (Del. Ch. 1995).

[292] *Paige Capital*, 2011 Del. Ch. LEXIS 116, at *112 & n.192 (citing *In re Bos. Celtics Ltd. P'ship S'holders Litig.*, 1999 Del. Ch. LEXIS 166, 1999 WL 641902, at *4 (Del. Ch. Aug. 6, 1999) (noting that where a plaintiff can rebut the presumptions of the business judgment rule by pleading that the corporate general partner and its directors engaged in self-interested conduct, the court will review those actions under the entire fairness standard of review));

Accordingly, the Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' claims for breach of fiduciary duty against the general partner, New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, in connection with the Texas RSA 18 Limited Partnership and the Texas RSA 19 Limited Partnership, and **DENIES** Defendants' motion with respect to Plaintiffs' claims against the general partner for breach of fiduciary duty in connection with the McAllen-Edinburg-Mission SMSA Limited Partnership.

       ii.   *Breach of Fiduciary Duty Claim Against AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc.*

Defendants move to dismiss Plaintiffs' breach of fiduciary duty claims against the Defendants who are not the general partner New Cingular Wireless PCS, LLC d/b/a AT&T Mobility or the three limited partnerships, because, they argue, Plaintiffs' allegations of "control" are conclusory and any fiduciary duty the general partner owes cannot be extended to the general partner's controllers.[294] Defendants argue that Plaintiffs have failed to plead the elements for alter ego or veil piercing to reach the general partner's controllers for the general partner's alleged wrongdoing.[295] Plaintiffs point to section 1.4 of the partnership agreements to bind New Cingular Wireless PCS, LLC d/b/a AT&T Mobility's affiliates and further argue that Delaware precedent extends fiduciary duties to a general partner's controllers and that Plaintiffs have adequately alleged control.[296] Defendants reply that Plaintiffs have failed to "plead

---

*see Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) ("There is no 'safe harbor' for such divided loyalties in Delaware. When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain."), *quoted in Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1162–63 (Del. 1995).
[293] Dkt. No. 56 at 48, ¶ 66 & n.121 (summarizing Dkt. No. 54, ¶¶ 4–6, 17).
[294] Dkt. No. 55 at 48, ¶ 71.
[295] *Id.* at 35–37, ¶¶ 45–50.
[296] Dkt. No. 56 at 44–47, ¶¶ 59–64.

vicarious liability, alter ego, or sufficiently allege control" to hold them liable, and that section 1.4 cannot create fiduciary duties "for an entity that is not a party to that agreement."[297]

The Court agrees with Defendants that section 1.4 does not create fiduciary duties in the general partner's affiliates. Section 1.4 chiefly addresses Federal Communications Commission approvals for the partnerships' business operations, but contains the clause "[n]either the Partners nor any of their Affiliates shall take any action inconsistent with the provisions of this Agreement or contrary to the best interest of the Partnership at any time."[298] Even if the Court were to decontextualize this clause and apply its meaning generally, instead of specifically to FCC proceedings and applications, Plaintiffs cite no authority for the proposition that the clause could bind affiliate nonsignatories any more than the clause could bind the Queen of England.[299] Plaintiffs make a "fatal presumption that an agreement could create fiduciary duties for an entity that is not a party to that agreement."[300]

As for whether Plaintiffs' allegations can extend breach of fiduciary duty claims to the general partner's controllers, Plaintiffs rely heavily on a 1991 precedent, *In re USACafes, L.P. Litigation*.[301] As explained by the Court of Chancery of Delaware:

> In *In re USACafes, L.P. Litigation*, Chancellor Allen considered whether limited partners of USACafes, L.P., could sue the individuals who served as directors of USACafes General Partner, Inc., its corporate general partner, for breach of fiduciary duty related to the disposition of the Limited Partnership's property. The Chancellor held that "[t]he theory underlying fiduciary duties is consistent with recognition that a director of a corporate general partner bears such a duty towards the limited partnership."[302]

---

[297] Dkt. No. 57 at 27–33, ¶¶ 26–34.
[298] Dkt. No. 55-1 at 8, § 1.4; Dkt. No. 55-2 at 7, § 1.4; Dkt. No. 55-3 at 7, § 1.4.
[299] *See* Dkt. No. 56 at 44–45, ¶ 60.
[300] Dkt. No. 57 at 29, ¶ 29.
[301] 600 A.2d 43 (Del. Ch. 1991).
[302] *Friedman v. Aimco Props., L.P.*, No. 9934-VCP, 2015 Del. Ch. LEXIS 33, at *13-14 (Feb. 10, 2015) (alteration in original) (quotations and footnotes omitted).

Defendants mount a bizarre offensive against the *USACafes* precedent, arguing that it is a "less venerable" precedent, "runs contrary to the majority view under Delaware law," and is an "inapplicable standard."[303] Defendants conspicuously omit the rest of the quote: "Under the less venerable *but largely unquestioned* precedent of *USACafes*, the non-[general partner defendants] also owed fiduciary duties to the Partnership and its unitholders."[304] "In later cases involving limited partnerships, th[e Delaware Chancery] Court has followed *USACafes* consistently, holding that the individuals and entities who control the general partner owe to the limited partners at a minimum the duty of loyalty identified in *USACafes*. This Court's decisions also have extended the doctrine to other alternative entities, such as LLCs and statutory trusts . . . ."[305] Although Delaware courts have expressed misgivings about the *USACafes* precedent,[306] there is no indication that *USACafes* is a "minority" or dissenting view,[307] and Delaware precedent makes clear that the *USACafes* rule is thoroughly supported and consistently applied.[308] Accordingly, the applicable rule is that "[w]hile mere ownership—either direct or indirect—of the general partner does not result in the establishment of a fiduciary relationship, those affiliates of a general partner who exercise control over the partnership's property may find themselves owing fiduciary duties to both the partnership and its limited partners,"[309] such as when the general partner's controllers caused the general partner to enter self-interested transactions

---

[303] Dkt. No. 57 at 30–31, ¶¶ 31–32.
[304] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. CIV.A.15754, 2000 WL 1476663, at *19 (Del. Ch. Sept. 27, 2000) (emphasis added) (footnote omitted).
[305] *Friedman*, 2015 Del. Ch. LEXIS 33, at *13-14 (quotations and footnotes omitted).
[306] *Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, Civ.A.No. 5502-CS, 2011 Del. Ch. LEXIS 116, at *106–07 n.186 (Aug. 8, 2011).
[307] Dkt. No. 56 at 47 n.116.
[308] *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 671 n.7 (Del. Ch. 2012) (collecting cases applying *USACafes* to general partners, controllers, affiliates, and directors).
[309] *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*, No. CIV.A.16630-NC, 2001 WL 1641239, at *8 (Del. Ch. Dec. 4, 2001).

adverse to the limited partners,[310] or the general partner's controllers control partnership property.[311]

The Court finds the following Court of Chancery of Delaware passage markedly similar to and dispositive of the issue in this case:

> Plaintiff, in its Amended Complaint, has repeatedly lumped the many defendants together for purposes of alleging the existence of fiduciary duties and the breach of those duties. While it seems unlikely that the Amended Complaint will ever be cited as a model of clarity, it does allege that [Defendants] have controlled the day-to-day operations and affairs of the Partnerships. Plaintiff alleges, with specific potential transactions as examples, a long-term course of conduct by the . . . Defendants with the purpose of [manipulating partnership properties so] Defendants might continue to receive fees. Defendants are generally said to have used their control of the affairs of the Partnerships to receive unearned [benefits].
> . . . . Perhaps the [non-general partner] defendants do not, in fact, control the Partnerships and their properties, but, for purposes of a motion to dismiss, I must accept the allegation that the . . . Defendants together are able to exercise such control, and did exercise such control, for their benefit and to the detriment of the Limited Partners.[312]

Here, Plaintiffs' complaint refers to Defendants "as applicable"[313] and often lumps Defendants together, but Plaintiffs do allege that non-general partner Defendants exercise control over the partnerships and partnership property,[314] and Plaintiffs allege a course of conduct and specific transactions that indicate Defendants leveraged their control over the partnerships to receive illicit benefits.[315] Alleging that affiliates or directors of the general partner perform "management

---

[310] *Id.* at *8 n.42 (citing *Wallace v. Wood*, 752 A.2d 1175, 1180–82 (Del. Ch. 1999)).

[311] *James River-Pennington Inc. v. CRSS Capital, Inc.*, No. 13870, 1995 WL 106554, at *11 (Del. Ch. Mar. 6, 1995).

[312] *Bigelow/Diversified Secondary P'ship Fund 1990*, 2001 WL 1641239, at *8.

[313] Dkt. No. 54 at 2.

[314] *Id.* at 20, ¶ 49.

[315] *Id.* ¶¶ 5, 8, 17, 46, 70, 93, 104 (alleging that Defendants implemented a "data cost sharing process" to cheapen their use of customer data traffic on partnership networks, "negotiated spectrum agreements with itself at massive monthly cost to the McAllen Partnership," withheld information and undertook a plan to take partnership assets for itself, mixed officers and employees amongst the Defendant entities, and operated Cricket in competition with the partnerships).

functions" and "carry out the activities" of the general partner is sufficient,[316] and Plaintiffs have done so.[317] Plaintiffs also point to a public Federal Communications Commission filing by AT&T Teleholding, Inc. that states that "AT&T Mobility Corporation manages and controls . . . New Cingular Wireless PCS, LLC" and indicates that AT&T Inc. is the overall parent of those entities.[318] The Court may take judicial notice of this document.[319] Although the FCC filing does not show that Defendants control partnership assets,[320] it supports Plaintiffs' allegations that non-general partner Defendants controlled or influenced partnership affairs via the general partner. Plaintiffs need only allege some control for a breach of fiduciary claim against the general partner's controllers to survive a motion to dismiss; it would be unreasonable to expect Plaintiffs to allege in detail the control exercised by specific entities.[321] As Defendants admit, Plaintiffs' complaint does "vaguely alleg[e] that the Non-General Partner Defendants controlled the General Partner."[322] Again, although Plaintiffs' complaint is somewhat vague with respect to the exact elements of control, Plaintiffs do allege that non-general partner Defendants carried out the general partner's activities vis-à-vis the partnerships and are "generally said to have used their

---

[316] *In re Bos. Celtics Ltd. P'ship Shareholders Litig.*, No. Civ.A.16511, 1999 WL 641902, at *4 & n.19 (Del. Ch. Aug. 6, 1999).

[317] *See* Dkt. No. 54, ¶¶ 46, 49, 93, 104.

[318] Dkt. No. 56 at 93 n.320 (quoting https://wireless2.fcc.gov/UlsEntry/attachments/attachmentViewRD.jsp?applType=search&fileKey=386008086&attachmentKey=20527746&attachmentInd=applAttach).

[319] *DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Tr. Co.*, 958 F. Supp. 2d 738, 744 (W.D. Tex. 2013) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)) (approving judicial notice); *see* Dkt. No. 58-1 at 5 n.6 (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)) (the Court may take judicial notice under Federal Rule of Evidence 201 on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss).

[320] *See* Dkt. No. 57 at 32, ¶ 33.

[321] *Cf. Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842–44 (S.D. Tex. 2011) (Ellison, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) & *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 n.3 (2007)) (holding that, in the 42 U.S.C. § 1983 context, a plaintiff need not "plead specific factual details to which they do not have access before discovery" so long as the plaintiff alleges minimal facts or elaboration "to 'satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests,' and also to 'permit the court to infer more than the mere possibility of misconduct.'")

[322] Dkt. No. 55 at 54–55, ¶ 80 (citing Dkt. No. 54, ¶¶ 46, 49, 59, 69, 77, 104).

control of the affairs of the Partnerships to receive unearned" value from partnership properties.[323]

To counter the proposition that Plaintiffs have alleged adequate control to subject non-general partner Defendants to fiduciary duties, Defendants rely heavily on a 2015 Court of Chancery of Delaware case.[324] In *Lewis v. AimCo Properties, L.P.*, plaintiff limited partners sued the four general partners and the general partner's affiliates for an alleged undervaluation of the limited partnership stakes in a merger.[325] A parent company, AimCo, indirectly owned the four general partners and indirectly held a majority of the limited partnership units.[326] As relevant here, the *Lewis* court dealt with the plaintiffs' "confusin[g]" allegation that AimCo OP—an affiliate of AimCo—"controlled" the limited partnerships, even though plaintiffs merely alleged that "AimCo and its affiliates, which included Aimco OP, owned a majority of each limited partnership."[327] The court teased out that plaintiffs were trying to assert that, because parent AimCo owned majority stakes in the limited partnerships *through its affiliate* AimCo OP, therefore AimCo OP may be liable for breach of fiduciary duty to the limited partnerships.[328] But the *Lewis* court repeatedly held that plaintiffs had failed to state a claim for breach of fiduciary duty against AimCo OP because the plaintiffs had inadequately alleged AimCo OP's control in the limited partnerships.[329] The *Lewis* court contrasted its holding with *Cargill, Inc. v. JWH*

---

[323] *See supra* text accompanying notes 156–157 , 164–169, 312; *cf. Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1181 (Del. Ch. 1999) (finding sufficient for purposes of applying the *USACafes* rule that "Plaintiffs claim they were promised a relatively stable investment, but without their knowledge or consent, defendants engaged in wrongful self-interested acts which [damaged] the Limited Partnership . . . . Plaintiffs further contend that defendants, on two separate occasions, usurped business opportunities available to the Limited Partnership.").
[324] Dkt. No. 55 at 36 nn.89–90; Dkt. No. 57 at 31 nn.60, 62.
[325] No. CV 9934-VCP, 2015 WL 557995 (Del. Ch. Feb. 10, 2015).
[326] *Id.* at *1.
[327] *Id.* at *5 (emphasis deleted).
[328] *Id.*
[329] *Id.* at *6 ("There is no allegation in the Complaint that AimCo or Aimco OP is a general partner under those agreements, or that they have acted in a way that would subject them to liability as though they were general

*Special Circumstance LLC*,[330] because in the *Cargill* case, the Court of Chancery of Delaware held that the complaint "sufficiently pled non-conclusory facts that supported a reasonable inference that the Cargill entities 'exercised control' over the subject entity and its assets 'to facilitate the consummation' of the challenged transaction, [so] the Court found that a fiduciary duty conceivably could be owed under the *USACafes* line of cases."[331] In short, *Lewis* stands for the proposition that mere allegations of ownership stakes or affiliate relationships are insufficient to maintain a breach of fiduciary claim against non-general partner defendants without substantiating allegations of control.[332] Here, the Court holds that Plaintiffs have alleged sufficient control,[333] so the *Lewis* case is distinguishable. Although it may turn out that the non-general partner Defendants exercise little or no control and cannot be held liable for breach of fiduciary duty, for the purposes of a motion to dismiss, the Court accepts Plaintiffs' allegations, even if dubious, and views them in a favorable light.[334] Ultimately, the Court will "loo[k] to who wields control in substance" to impose "the risk of fiduciary liability on the actual controllers."[335]

Defendants point out in a footnote that Plaintiffs' claims for breach of fiduciary duty against the non-general partner Defendants, whatever their merits, cannot be extended beyond duty of loyalty claims.[336] This is a correct statement of law.[337] "If, after a more fulsome

---

partners."); *id.* at *7 ("The Complaint does not contain sufficient non-conclusory factual allegations about Aimco OP's 'control' of the [limited partnership] Defendants or of their respective [general partner] Defendants to justify extending those cases in this manner.").

[330] 959 A.2d 1096 (Del. Ch. 2008).

[331] *Lewis*, 2015 WL 557995, at *7 n.46 (quoting *Cargill, Inc.*, 959 A.2d at 1122).

[332] *See id.* (alteration in original) (quotation omitted) ("The bare conclusory allegation that a [defendant] possessed control is insufficient. Rather, the Complaint must contain well-pled facts showing that the alleged controller exercised actual domination and control over the subject entity . . . .").

[333] *See supra* notes 314–318 and accompanying text.

[334] *See supra* notes 103–104 and accompanying text.

[335] *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 668 (Del. Ch. 2012).

[336] Dkt. No. 57 at 31 n.60.

development of the record, Plaintiffs prove those allegations [of control] to be true, the *duty of loyalty* may be implicated."[338] To the extent Plaintiffs attempt to extend their claim for breach of the fiduciary duty of care, or breach of the "duties of good faith, fair dealing, and candor,"[339] to the non-general partner Defendants,[340] such an attempt is foreclosed by Delaware law.[341]

Defendants' final point urges a clarification of the *USACafes* rule[342]:

> The *USACafes* rule, however, has limited—if any—application where . . . the limited partnership agreement entirely eliminates the general partner's common law fiduciary duties to the limited partnership and its limited partners. In such a case, the corporate general partner owes no fiduciary duties that may be "extended" to its controllers. Thus, where the limited partnership agreement entirely eliminates the general partner's common law fiduciary duties, it is highly doubtful that the general partner's controllers owe *any* fiduciary duties to the limited partnership. Insofar as they do, however, those duties require only that the controllers refrain from self-dealing; *i.e.*, that they not ... use control over the [limited] partnership's property to advantage [themselves] at the expense of the partnership.[343]

Thus, affiliate controllers of a general partner may owe fiduciary duties to the partnership, but not when the partnership agreement disclaims fiduciary duties. This proposition is consistent with the Delaware Revised Uniform Limited Partnership Act in that duties "may be . . . restricted or eliminated by provisions in the partnership agreement."[344] Therefore, the Court's holding will be consistent with the analysis in Section II.d.6.i immediately above, finding that the Texas RSA

---

[337] *Goodman v. Dohmen*, No. CV 15-20 FFM, 2017 WL 3319110, at *18, 2017 U.S. Dist. LEXIS 123738, at *48 (C.D. Cal. Aug. 3, 2017) (citing *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 671–72 (Del. Ch. 2012); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180–81 (Del. Ch. 1999); *In re USA Cafes, L.P. Litig.*, 600 A.2d 43, 49–50 (Del. Ch. 1991)).
[338] *2009 Caiola Family Tr. v. PWA, LLC*, No. 8028-VCP, 2014 Del. Ch. LEXIS 261, at *31 (Dec. 18, 2014) (emphasis added).
[339] Dkt. No. 54 at 24, ¶ 68.
[340] *See id.* at 23, ¶ 59; 25, ¶ 69 ("This fiduciary duty [of care, good faith, fair dealing, and candor] extends to the AT&T Defendants controlling AT&T Mobility, including AT&T Parent, because those AT&T entities exercise control over the Partnerships and the Partnerships' property.").
[341] *See Feeley*, 62 A.3d at 671–72.
[342] Dkt. No. 55 at 37, ¶ 49; Dkt. No. 57 at 31, ¶ 32.
[343] *Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS, 2018 WL 3337531, at *17 (Del. Ch. July 6, 2018) (alterations in original) (quotations and footnotes omitted).
[344] DEL CODE ANN. tit. 6, § 17-1101(d) (West 2020).

18 Limited Partnership and the Texas RSA 19 Limited Partnership agreements did limit fiduciary duties to the contract terms, but the McAllen-Edinburg-Mission SMSA Limited Partnership agreement did not.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss with respect to Plaintiffs' claim for breach of fiduciary duty against AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; AT&T Inc. Plaintiffs' claims for breach of the duties of care and the "duties of good faith, fair dealing, and candor" against these Defendants are **DISMISSED**. Plaintiffs' claim against these Defendants for breach of the duty of loyalty in connection with or arising out of the Texas RSA 18 Limited Partnership and the Texas RSA 19 Limited Partnership or their respective agreements is **DISMISSED**. Plaintiffs' claim for breach of the duty of loyalty against these Defendants in connection with or arising out of the McAllen-Edinburg-Mission SMSA Limited Partnership or its agreement remains.

> iii.   *Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Against New Cingular Wireless PCS, LLC d/b/a AT&T Mobility; AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc.*

Defendants move to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because "there is no contractual gap to be filled by this implied duty."[345] Plaintiffs respond that the implied covenant cannot be eliminated by a partnership agreement, and that the implied covenant applies both because unforeseen circumstances have arisen and Defendants' discretion was impliedly limited by the contract terms.[346] Defendants reply that

---

[345] Dkt. No. 55 at 51–52, ¶ 75.
[346] Dkt. No. 56 at 51–53, ¶¶ 70–74.

there is no gap to be filled and the partnership agreements "expressly authorize the conduct that Plaintiffs assert justifies the application of the implied covenant."[347]

The Court first notes that the implied covenant of good faith and fair dealing is an implied or quasi-contractual term that the parties shall "cooperate . . . so that both parties may obtain the full benefits of the agreement" and "an implied covenant to refrain from any act that would injure a contracting party's right to receive the benefit of the contract."[348] The implied covenant is a doctrine that implies terms in a contract; it does not create any "free-floating" fiduciary duty,[349] so Plaintiffs' attempt to assert breach of the implied covenant as a component to Defendants' alleged breach of fiduciary duty is improper.[350]

Delaware law prohibits any partnership agreement from "eliminat[ing] the implied contractual covenant of good faith and fair dealing"[351] or "eliminat[ing] liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."[352] The Supreme Court of Delaware has rigorously enforced this statute.[353] However, the implied covenant of good faith and fair dealing "is a limited and extraordinary legal remedy"[354] only applied to infer "contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated."[355] In other words, there must be some gap to fill separate and apart from the contractual terms by the implied covenant.[356] Where

---

[347] Dkt. No. 57 at 53–54, ¶¶ 67–68.
[348] *Covenant*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[349] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (quotation omitted).
[350] *See* Dkt. No. 54 at 27, § 4.
[351] DEL. CODE ANN. tit. 6, § 17-1101(d) (West 2020).
[352] *Id.* § 17-1101(f).
[353] *See Gerber v. Enter. Prod. Holdings, LLC*, 67 A.3d 400, 419 n.48 (Del. 2013), *rev'd on other grounds*, *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013); *cf. Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 504 n.93 (Del. 2019).
[354] *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)
[355] *Id.* at 1125.
[356] *See Fortis Advisors LLC v. Dialog Semiconductor PLC*, No. CV 9522-CB, 2015 WL 401371, at *5 (Del. Ch. Jan. 30, 2015).

an agreement provides that a party shall use its "best efforts" to achieve some outcome, and a plaintiff's allegation is that the defendant arbitrarily or unreasonably failed to do so, the agreement itself supplies the contractual standard by which to ascertain if the failure was improper and no "interstitial space in which the doctrine of the implied covenant might operate" exists.[357]

Plaintiffs—probably unintentionally—have thoroughly convinced the Court that no interstitial gap in which the implied covenant of good faith and fair dealing could operate exists. Citing sections 1.4, 7.1, and 8.1 of the three limited partnership agreements, Plaintiffs explain that the general partner is empowered to do acts "reasonably deemed by the General Partner to be necessary or appropriate in furtherance of the purposes of the Partnership," and that grant of power is limited by sections 1.4 and 8.1 that require the general partner not to take actions inconsistent with the best interests of the partnerships.[358] Furthermore, section 3.3 of the partnership agreements requires the general partner and limited partners to "pledge their best efforts and mutual cooperation to . . . provide the best and most profitable Cellular Service, as the General Partner determines."[359] Accordingly, as Plaintiffs demonstrate, the partnership agreements themselves supply the standards and terms upon which to measure Defendants' conduct and there is no gap for the implied covenant to fill.[360] Accordingly, the Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. The Court **DISMISSES** Plaintiffs' claim for breach of the implied covenant.

---

[357] *Id.* (quotation omitted).

[358] Dkt. No. 56 at 52–53, ¶ 73.

[359] Dkt. No. 55-1at 12, § 3.3; Dkt. No. 55-2 at 9, § 3.3; Dkt. No. 55-3 at 9, § 3.3, *quoted in* Dkt. No. 54 at 29, ¶ 85.

[360] *Fitzgerald v. Cantor*, No. Civ.A.16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) ("The express terms of a contract and not an implied covenant of good faith and fair dealing, however, will govern the parties' relations when the terms expressly address the dispute.").

### 7. *Aiding and Abetting Breach of Fiduciary Duty Claim*

Plaintiffs allege that "[t]he AT&T Defendants and the Cricket Defendants knowingly induced and participated in the breach of fiduciary duties to the Partnerships and Limited Partners, which action constitutes aiding and abetting such wrongful conduct on the part of the AT&T Defendants and the Cricket Defendants."[361] Plaintiffs do not claim that Defendants McAllen-Edinburg-Mission SMSA Limited Partnership, Texas RSA 18 Limited Partnership, and Texas RSA 19 Limited Partnership are liable for aiding and abetting.[362] Defendants move to dismiss any aiding and abetting claim where no fiduciary duty was owed.[363] Defendants also argue that Plaintiffs' allegations fail to offer "a plausible basis to infer that the Non-General Partner Defendants had actual knowledge of the General Partner's actions in connection with the Partnerships."[364] Plaintiffs respond that they have made specific allegations of knowledge and aiding and abetting.[365] Defendants reply that the general partner cannot be liable for aiding and abetting, and Plaintiffs' other allegations are conclusory and do not "demonstrate actual or constructive knowledge of any improper conduct."[366]

Plaintiffs' first argument that "the AT&T General Partner [New Cingular Wireless PCS, LLC d/b/a AT&T Mobility] can aid and abet in breaches of fiduciary duties" flies in the face of Delaware law.[367] A claim for aiding and abetting requires Plaintiffs to show "(1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in a breach, and (4) damages to the plaintiff resulted from the

---

[361] Dkt. No. 54 at 33, ¶ 100.
[362] *Id.*
[363] Dkt. No. 55 at 54–55, ¶¶ 79–81.
[364] *Id.*
[365] Dkt. No. 56 at 77–78, ¶¶ 123–25.
[366] Dkt. No. 57 at 57–58, ¶¶ 75–77.
[367] Dkt. No. 56 at 77, ¶ 123.

concerted action of the fiduciary and the non-fiduciary."[368] These elements require "an underlying or predicate fiduciary breach" to be aided and abetted[369] and "knowing participation in that breach by the party not in direct fiduciary relationship,"[370] that is, knowing participation by a party that is not a fiduciary.[371] Here, Plaintiffs allege the general partner New Cingular Wireless PCS, LLC d/b/a AT&T Mobility "has a fiduciary duty of loyalty to the Partnerships and Limited Partners."[372] The Court has found Plaintiffs state a claim for breach of fiduciary duty against New Cingular Wireless PCS, LLC,[373] so that Defendant (New Cingular Wireless PCS, LLC) cannot also be liable for aiding and abetting under Delaware law. The general partner New Cingular Wireless PCS, LLC is in a direct fiduciary relationship with the partnerships and limited partners.

The Court holds that this reasoning extends to Defendants AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc. A "fiduciary" is "one who owes to another the duties of good faith, loyalty, due care, and disclosure,"[374] and a fiduciary relationship is merely "[a] relationship in which one person is under a duty to act for the benefit of another on matters within the scope of the relationship."[375] Under the *USACafes* rule, as explained above, Defendants AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc. *are* fiduciaries in a fiduciary relationship with the Plaintiffs and three limited partnerships, because these Defendants, at this stage, owe a fiduciary

---

[368] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002).

[369] *Higher Educ. Mgmt. Grp. v. Mathews*, No. CIV.A.9110-VCP, 2014 WL 5573325, at *13 & n.77 (Del. Ch. Nov. 3, 2014).

[370] *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984); *accord Malpiede v. Townson*, 780 A.2d 1075, 1096 & n.75 (Del. 2001).

[371] *Gotham Partners*, 817 A.2d at 172.

[372] Dkt. No. 54 at 19, ¶ 48.

[373] *See supra* Section II.d.6.i.

[374] *Fiduciary*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[375] *Fiduciary Relationship*, BLACK'S LAW DICTIONARY (11th ed. 2019).

duty of loyalty in connection with the McAllen-Edinburg-Mission SMSA Limited Partnership.[376] A claim for aiding and abetting must be targeted at a nonfiduciary, but there is no nonfiduciary involved with the alleged breaches by Defendants in connection with the McAllen-Edinburg-Mission SMSA Limited Partnership.[377] It follows that, as the Court has held, there is no predicate breach of fiduciary duty in connection with the Texas RSA 18 Limited Partnership and Texas RSA 19 Limited Partnership, so there is no fiduciary to aid or abet. Under the basic elements of a claim for aiding and abetting, Plaintiffs' claim fails. Accordingly, the Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' claim for aiding and abetting and **DISMISSES** Plaintiffs' claim for aiding and abetting in its entirety.

### 8. *Tortious Interference Claim*

Plaintiffs allege that Defendants AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc. "willfully and intentionally interfered and continue to interfere with the Partnership Agreements by participating in and/or benefiting from the data cost sharing process" and the operation of the Cricket networks.[378] Defendants move to dismiss on the ground that "Plaintiffs' tort claims impermissibly reframe alleged breaches of the Partnership Agreements as torts" and are therefore duplicative.[379] Defendants also argue that Plaintiffs' allegations are implausible and fail to show knowing or intentional interference or a nexus between the alleged interference and the harm.[380] Plaintiffs respond that their allegations are sufficient and "AT&T Inc. has chosen to advance Cricket's financial interests by causing the

---

[376] *See supra* Section II.d.6.ii.
[377] *See* Dkt. No. 55 at 19, ¶ 9 ("Plaintiffs' aiding and abetting breach of fiduciary duty claim must be dismissed because Plaintiffs have failed to state a predicate claim for breach of fiduciary duty.").
[378] Dkt. No. 54 at 31–32, ¶ 93.
[379] Dkt. No. 55 at 38, ¶ 53.
[380] *Id.* at 69–72, ¶¶ 111–15.

AT&T General Partner to breach the Partnership Agreements to Cricket's advantage."[381] Plaintiffs unfortunately rely on Texas law.[382] Defendants reply that corporate parents and affiliates cannot tortiously interfere with the contracts of a subsidiary or affiliate as a matter of law and that Plaintiffs' allegations are insufficiently specific to state a claim.[383]

Defendants' assertion that "corporate parents and affiliates are incapable of interfering with contracts of a subsidiary or affiliate"[384] is an inaccurate statement of Delaware law. If an affiliate "sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiff," Plaintiffs may state a claim for tortious interference.[385]

> Under Delaware law, the elements of a claim for tortious interference with a contract are: (1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury. To establish tortious interference with contract rights by a defendant corporation, the non-breaching party must show that the corporate defendant was not pursuing in good faith the legitimate profit seeking activities of [its] affiliated enterprise[] that was a party to the contract.[386]

"To properly allege an intentional act, the plaintiff must allege facts demonstrating, or that at least raise a reasonable inference, that the defendant 'knew an injury [was] certain or substantially certain to occur as a result of his action.'"[387]

---

[381] Dkt. No. 56 at 78–81, ¶¶ 128–35.

[382] *Id.* at 80 n.254 ("Plaintiffs do not address Defendants' references to Delaware law because it is Plaintiffs' assertion and belief that Texas law is controlling.")

[383] Dkt. No. 57 at 59–61, ¶¶ 80–84.

[384] Dkt. No. 55 at 71, ¶ 114; *accord* Dkt. No. 57 at 59, ¶ 80 ("[T]he Non-General Partner Defendants cannot be liable for tortious interference because corporate parents and affiliates cannot interfere with the contracts of a subsidiary or affiliate as a matter of law.").

[385] *Shearin v. E.F. Hutton Grp.*, 652 A.2d 578, 591 (Del. Ch. 1994); *accord Bhole, Inc. v. Shore Invs.*, 67 A.3d 444, 453 (Del. 2013).

[386] *Bhole, Inc.*, 67 A.3d at 453 (alterations in original) (quotation omitted).

[387] *Konstantino v. AngioScore, Inc.*, No. CV 9681-CB, 2015 WL 5770582, at *14 (Del. Ch. Oct. 2, 2015) (alteration in original) (quoting *UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697, at *6 (Del. Ch. Dec. 14, 2005)).

Defendants' argument that Plaintiffs' allegations are "not plausible on their face" is unpersuasive because Defendants acknowledge Plaintiffs make numerous allegations of interference.[388] As Plaintiffs put it:

> First, these Defendants [AT&T Inc.; AT&T Mobility Corporation; Cricket Communications, LLC; and Cricket Wireless LLC] have allowed AT&T affiliates to use and profit from the Partnership network assets at below-market and/or cost-based rates. Second, AT&T Inc. acquired and controls a competing wireless provider, Cricket Wireless, as a wholly-owned subsidiary, and operated that provider on the Partnership networks at below-market and at cost-based rates and in direct competition with the Partnerships. . . . Third, the Non-General Partner Defendants have, through the General Partner and other AT&T affiliate, used their superior position to acquire and withhold wireless spectrum and even began charging the Partnerships for that spectrum. In addition, the Non-General Partner Defendants established a number of revenue streams using the Partnerships' network and assets, while at the same time under-allocating revenue to the Partnerships and over-allocating costs.[389]

For example, Plaintiffs specifically allege that AT&T retained "spectrum in the Partnership service areas" and retained the Cricket business in willful disregard of "AT&T's duties to the Partnerships," all while "receiving payments from the Partnerships."[390] Plaintiffs further allege that "AT&T would not transfer spectrum to the Partnerships, even though such transfer is required by the respective Partnership Agreements" and by withholding limited partnership property, Defendants are "depressing the value of the Partnerships and profiting to the detriment of the Partnerships and Limited Partners."[391] Plaintiffs allege Defendants' willfulness: "AT&T intended to operate the Cricket assets in the Partnership service areas as a separate business in competition with the Partnerships using the Partnership's network to serve that business."[392]

---

[388] Dkt. No. 55 at 70, ¶ 112.

[389] Dkt. No. 56 at 79, ¶ 129 (citing Dkt. No. 54, ¶¶ 5–9, 11, 13–15, 17–18).

[390] Dkt. No. 54 at 10, ¶ 15.

[391] *Id.* at 9–10, ¶ 14.

[392] *Id.* at 5, ¶ 6.

Defendants do not demonstrate how these allegations are fanciful.[393] Plaintiffs allege (1) a contract (partnership agreement), (2) that Defendants were aware of (by using partnership property and receiving partnership payments) (3) but caused breaches of (by using the partnerships' service areas and property for Defendants' own benefit) (4) in order to aggrandize Defendants' profits (5) at the expense of the partnerships (by generating profits in contravention of the partnership agreements). Further, Plaintiffs' claim for violation of an independent duty to refrain from tortious interference,[394] may be duplicative of Plaintiffs' breach of contract claim,[395] but Plaintiffs may plead duplicative claims.[396]

Defendants argue that, even if Plaintiffs allege the other elements of tortious interference, Plaintiffs fail to plead that Defendants' actions were not justified profit-seeking activities under Delaware law.[397] The Court finds *Bandera Master Fund LP v. Boardwalk Pipeline Partners* particularly illuminating in this regard.[398] In that case, the court discussed the element of justification in the context of affiliated and controlling entities, held that the court must analyze the interests sought to be advanced by the actor and relations between the parties among other factors, and concluded that, "because of the fact-intensive nature of this inquiry, it is not possible to determine at the pleading stage" whether the defendant's conduct was "without justification."[399] Similarly here, the Court holds that Plaintiffs have adequately pled unjustified conduct on Defendants' part to survive a motion to dismiss, and a more fact-intensive inquiry may come at a later stage. The Court **DENIES** Defendants' motion to dismiss with respect to Plaintiffs' claim for tortious interference.

---

[393] Dkt. No. 55 at 70, ¶ 112 & n.220.
[394] *See* Dkt. No. 54 at 31–32, ¶ 93.
[395] *See supra* notes 202–204 and accompanying text (refusing to dismiss Plaintiffs' claims as duplicative).
[396] But Plaintiffs may not recover duplicative damages.
[397] *Id.* at 71, ¶ 114; Dkt. No. 57 at 60, ¶ 83.
[398] No. 2018-0372-JTL, 2019 WL 4927053, 2019 Del. Ch. LEXIS 1296, at *72–77 (Oct. 7, 2019).
[399] *Id.*

### 9. Conversion/Civil Theft Claim

Plaintiffs claim that Defendants, specifically New Cingular Wireless PCS, LLC d/b/a AT&T Mobility; AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc. are depriving the limited partnerships of customers, revenues, and spectrum licenses.[400] Defendants move to dismiss because, they argue, "Defendants acted according to their contractual rights" and Plaintiffs failed to allege violation of any independent legal duty or that Defendants intended to deprive Plaintiffs of any property they had a possessory right to.[401] Plaintiffs respond that phone customers, spectrum licenses, and partnership network data are all assets that Plaintiffs alleged that Defendants have wrongfully appropriated.[402] Defendants respond that Plaintiffs' claim fails because it is predicated on exclusively contractual duties and cannot state a claim for payment of lost profits.[403]

To state a claim for conversion, Plaintiffs must allege "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it" but independent of any duty imposed by contract.[404] "[T]here is a general duty grounded in tort law to refrain from converting another's property,"[405] but general partner New Cingular Wireless PCS, LLC d/b/a AT&T Mobility is bound by the partnership agreements. Plaintiffs do not point to any independent, noncontractual duty that New Cingular Wireless PCS, LLC d/b/a AT&T Mobility violated,[406] so the general partner cannot be liable for conversion. However, as

---

[400] Dkt. No. 54 at 32–33, ¶¶ 95–98.
[401] Dkt. No. 55 at 73–74, ¶¶ 117–120.
[402] Dkt. No. 56 at 82–83, ¶¶ 137–38.
[403] Dkt. No. 57 at 61–62, ¶¶ 86–88.
[404] *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (alteration in original) (quotation omitted).
[405] *Data Mgmt. Internationale, Inc. v. Saraga*, No. CIV.A.05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007).
[406] *See* Dkt. No. 56 at 82, ¶ 137 (discussing contractual duties).

the Court held in Section II.d.4,[407] the other Defendants are not bound by the partnership agreements and the attendant contractual duties. As Plaintiffs point out, they have alleged that Defendants converted partnership customers, spectrum, and access to partnership networks.[408] For example, Plaintiffs allege that "AT&T has withheld information as to Cricket customers, operations and profitability, notwithstanding repeated requests by the Limited Partners for candor and disclosure."[409] Plaintiffs further allege that "AT&T would not transfer spectrum to the Partnerships"[410] and have retained "Cricket business" in disregard of "AT&T's duties to the Partnerships."[411] Accordingly, the Court holds that Plaintiffs have adequately alleged wrongful dominion and stated a claim for conversion with respect to the non-general partner Defendants.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss with respect to Plaintiffs' claim for conversion. Plaintiffs' claim for conversion against Defendant New Cingular Wireless PCS, LLC d/b/a AT&T Mobility is **DISMISSED**. Plaintiffs' claim for conversion against Defendants AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc. remains.

### 10. Fraud Claim

Plaintiffs claim fraud in Defendants' alleged "material misrepresentations to the Limited Partners, which were known by the AT&T Defendants to be false at the time they were made" and in Defendants' concealing of material information relating to Defendants' transactions.[412] Defendants move to dismiss, arguing that Plaintiffs fail to meet the heightened fraud pleading

---

[407] *See supra* notes 195–204 and accompanying text.
[408] Dkt. No. 56 at 82 n.262 (citing Dkt. No. 54, ¶¶ 11, 13–15).
[409] Dkt. No. 54 at 8, ¶ 13.
[410] *Id.* at 9, ¶ 14.
[411] *Id.* at 10, ¶ 15.
[412] Dkt. No. 54 at 33–34, ¶¶ 103–04.

standards or allege adequate injury, and arguing that Plaintiffs have failed to show that the non-general partner Defendants owe any duty of disclosure.[413]

Plaintiffs' complaint must meet federal pleading standards to survive dismissal.[414] Plaintiffs strangely point to a 1993 Southern District of Texas case using Ninth Circuit precedent to articulate fraud pleading standards,[415] but this case is not binding or especially persuasive,[416] and the Court rejects the invitation to ignore controlling Fifth Circuit precedent. Federal Rule of Civil Procedure 9(b) requires that Plaintiffs, "[i]n alleging fraud or mistake, . . . must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The Fifth Circuit has interpreted Federal Rule of Civil Procedure 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. In short, plaintiffs must plead enough facts to illustrate the who, what, when, where, why and how of the alleged fraud."[417] To plead a claim for fraud by misrepresentation or omission, "Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."[418] The "particularity" required by Rule 9(b) also disallows collectivized or group allegations; Plaintiffs must delineate

---

[413] Dkt. No. 55 at 41–47, ¶¶ 57–68.

[414] *See supra* note 101.

[415] Dkt. No. 56 at 83 n.265 (citing *Askanase v. Fatjo*, No. H-91-3140, 1993 U.S. Dist. LEXIS 6634, at *9 (S.D. Tex. Mar. 25 1993)).

[416] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 Lawrence B. Solum, Moore's Federal Practice - Civil § 134.02[1][d] (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

[417] *Schott, Tr. for Estate of InforMD, LLC v. Massengale*, No. CV 18-759-JWD-RLB, 2019 WL 4738795, at *13 (M.D. La. Sept. 27, 2019) (internal quotation marks omitted) (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) & *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)).

[418] *Id.* (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)).

which Defendant is responsible for which allegedly fraudulent activity.[419] The allegations must "enlighten *each defendant* as to his or her particular part in the alleged fraud."[420]

Plaintiffs point to numerous allegations that they contend sufficiently plead fraud by nondisclosure.[421] However, every allegation referred to uses the defined term "AT&T" or "AT&T Defendants," which Plaintiffs have defined as "collectively AT&T Parent [AT&T Inc.] along with AT&T Mobility [New Cingular Wireless PCS, LLC d/b/a AT&T Mobility], AT&T Mobility Corporation and the Cricket Defendants [Cricket Communications, LLC and Cricket Wireless LLC], as applicable."[422] These are precisely the collectivized allegations not permitted under Rule 9(b). The Fifth Circuit has unequivocally rejected the idea that "group pleading" suffices under Rule 9(b).[423]

Plaintiffs also point to allegations of April and July 2015 meetings to support their fraud claims.[424] Plaintiffs allege that, at the meetings, Eric Wages, a representative of New Cingular Wireless PCS, LLC d/b/a AT&T Mobility "and presumably other AT&T Defendants" presented spreadsheets and customer data that purported to represent that the limited partnerships and limited partners would be more profitable by allowing Defendants to own and operate Cricket separate from the partnerships and pay the partnerships for Cricket and Cricket customers' use of partnership networks.[425] Eric Wages and other New Cingular Wireless PCS, LLC representatives also assured that marketing to Cricket customers "was different from Partnership customers such

---

[419] *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*, No. CV 2:16-463, 2017 WL 9535076, at *10 (S.D. Tex. June 30, 2017) (Ramos, J.) (citing *Southland Sec. Corp. v. INSpire Ins. Sols.*, 365 F.3d 353, 365 (5th Cir. 2004)).

[420] *Southland Sec. Corp.*, 365 F.3d at 365 (emphasis in original) (quotation omitted).

[421] Dkt. No. 56 at 87–88, ¶ 147 (citing Dkt. No. 54, ¶¶ 1, 4–5, 16–18, 104–05).

[422] Dkt. No. 54 at 2.

[423] *Southland Sec. Corp.*, 365 F.3d at 365 ("[W]e do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded.").

[424] Dkt. No. 56, ¶¶ 142, 146 (citing Dkt. No. 54, ¶¶ 11–14, 103).

[425] Dkt. No. 54 at 7–8, ¶ 11.

that there was not substantial risk of cannibalization of the Partnership customers by AT&T's Cricket marketing and operations in the Partnership service areas."[426] Plaintiffs allege that they became aware within a few months after the meetings that the representations made at the meeting were untrue or materially misleading and that Defendants have not corrected the statements.[427] Plaintiffs further allege that AT&T representatives including Eric Wages said at the meetings that AT&T "would not transfer spectrum to the Partnerships" and would impose "spectrum charges" on the partnerships. Plaintiffs finally allege that "[t]he AT&T Defendants made material misrepresentations to the Limited Partners, which were known by the AT&T Defendants to be false at the time they were made. The AT&T Defendants intended that the Limited Partners would rely and act on the misrepresentations, which the Limited Partners did," and which caused injury.[428]

The Court holds that these allegations miss the crucial "why" and "how" of pleading fraud. Plaintiffs' allegation that Defendants knew their representations were false and misleading and caused injury is conclusory because it pleads no facts to substantiate Plaintiffs' conclusions, such as how Plaintiffs' reliance on Defendants' statements manifested. Nothing in Plaintiffs' allegations "explain[s] why the statements were fraudulent"[429] or "the way in which [allegedly] omitted facts made the representations misleading."[430] Plaintiffs' allegations that AT&T representatives announced they would impose spectrum charges on the partnerships and withhold spectrum property seems to allege candid and informative discussions about what

---

[426] *Id.*
[427] *Id.* at 8, ¶¶ 12–13.
[428] *Id.* at 33–34, ¶ 103.
[429] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).
[430] *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quotation omitted).

Defendants intended; Plaintiffs do not allege misrepresentation or fraud.[431] Plaintiffs expect the Court to take it on faith that "public pronouncements of senior AT&T executives" made after the meetings somehow showed that representations at the meetings were untrue or misleading.[432] Plaintiffs argue that Defendants "withh[eld] the correct numbers,"[433] but Plaintiffs' actual allegation only conclusorily asserts that "representations made to the Limited Partners" at the meeting were materially misleading.[434] Plaintiffs fail to explain how and why the AT&T representatives' descriptions of revenue were materially misleading.[435] "Rule 9(b) compliance must be found in the complaints themselves, not in the opposition brief."[436]

Even if the Court held that Plaintiffs satisfy the federal pleading standard, the Court would still dismiss Plaintiffs' fraud claim. To state a claim for fraud, Plaintiffs must allege that they relied on Defendants' representations and doing so proximately caused Plaintiffs injury.[437] Plaintiffs argue that they relied on Defendants' alleged misrepresentations at the meetings and consequently "suffered injury including lost customers, lost revenue, and lost business opportunities."[438] But as Defendants point out, Plaintiffs actually allege that they "'became aware' of information purportedly inconsistent with the General Partner's alleged representations made a few months earlier" and therefore "cannot have reasonably relied upon those representations."[439] Plaintiffs plead no facts about how their reliance on alleged misrepresentations manifested in the time between the representations and Plaintiffs' awareness

---

[431] *See id.* at 9, ¶ 14.

[432] *See* Dkt. No. 54 at 8, ¶ 12.

[433] Dkt. No. 56 at 86–87, ¶ 146.a–146.b.

[434] Dkt. No. 54 at 8, ¶ 12.

[435] *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) ("A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail.").

[436] *Garcia v. Boyar & Miller, P.C.*, No. CIV.A.306CV1936D, 2007 WL 2428572, at *6 (N.D. Tex. Aug. 28, 2007).

[437] *Williams*, 112 F.3d at 177; *accord Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008).

[438] Dkt. No. 56 at 87, ¶ 146.d–146.e (citing Dkt. No. 54, ¶¶ 13, 103).

[439] Dkt. No. 55 at 43, ¶ 60 (quoting Dkt. No. 54 at 8, ¶ 12).

of being allegedly misled.[440] Plaintiffs do not actually allege that their reliance resulted in lost customers, lost revenue, and lost business opportunities. In short, Plaintiffs allegations are conclusory[441] and the Court would dismiss for the additional reason that Plaintiffs fail to state a claim for fraud. The Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' claim for fraud. Plaintiffs' claim for fraud is **DISMISSED**.

### 11. *Claim for Exemplary Damages and Attorneys' Fees*

Plaintiffs seek exemplary damages and reasonable attorneys' fees and expenses for this case.[442] Defendants move to dismiss this request because (1) Plaintiffs have failed to state any claim, (2) Plaintiffs cannot recover attorneys' fees from limited liability companies under Texas law, and (3) exemplary damages are not available for breach of contract under Texas law.[443] Defendants' argument calls for little discussion, because the Court holds that Plaintiffs have stated claims and Texas law is inapposite. Furthermore, Defendants do not address which specific claims do not entitle Plaintiffs to exemplary damages or point to supporting authority. The Court **DENIES** Defendants' motion to dismiss with respect to Plaintiffs' claim for exemplary damages and attorneys' fees.

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.[444] Plaintiffs' following claims are **DISMISSED WITH PREJUDICE**:

- Claim for breach of fiduciary duty against Defendants New Cingular Wireless PCS, LLC d/b/a AT&T Mobility; AT&T Mobility Corporation; Cricket

---

[440] *See* Dkt. No. 54 at 34, ¶ 103.
[441] *See supra* notes 107–108 (courts do not give any weight to conclusory allegations).
[442] Dkt. No. 54 at 36, ¶ 110.
[443] Dkt. No. 55 at 76–77, ¶¶ 125–27.
[444] Dkt. No. 55.

Communications, LLC; Cricket Wireless LLC; and AT&T Inc. in connection with or arising out of the Texas RSA 18 Limited Partnership or the Texas RSA 19 Limited Partnership or their respective agreements.

- Claim for breach of the fiduciary duties of care or "good faith, fair dealing, and candor" against Defendants AT&T Mobility Corporation; Cricket Communications, LLC; Cricket Wireless LLC; and AT&T Inc.
- Claim for breach of the implied covenant of good faith and fair dealing in its entirety.
- Claim for aiding and abetting breach of fiduciary duty in its entirety.
- Claim for conversion against Defendant New Cingular Wireless PCS, LLC d/b/a AT&T Mobility.
- Claim for fraud in its entirety.

Plaintiffs' claims for tortious interference; exemplary damages and attorneys' fees; breach of contract against Defendant New Cingular Wireless PCS, LLC d/b/a AT&T Mobility; breach of fiduciary duty against Defendant New Cingular Wireless PCS, LLC d/b/a AT&T Mobility in connection with or arising out of the McAllen-Edinburg-Mission SMSA Limited Partnership or its agreement; breach of the fiduciary duty of loyalty against all other Defendants[445] in connection with or arising out of the McAllen-Edinburg-Mission SMSA Limited Partnership or its agreement; and conversion against all Defendants except New Cingular Wireless PCS, LLC d/b/a AT&T Mobility survive.

The Court **DENIES** Plaintiffs' request for oral argument pursuant to Local Rule 7.5.A.[446] Requests to the Court must be made by motion,[447] not in a response, and no party should expect oral argument.

In light of this opinion, the Court **ORDERS** the parties to appear before the Court on **September 15, 2020 at 9:00 a.m.** for a pretrial conference[448] and to submit a renewed joint discovery/case management plan[449] no later than **September 4, 2020**.

---

[445] Defendants did not move to dismiss breach of fiduciary duty claims against the three limited partnerships. *See* Dkt. No. 55 at 14 & 48, ¶ 71.

[446] Dkt. No. 56 at 110, ¶ 194.

[447] FED. R. CIV. P. 7(b)(1).

IT IS SO ORDERED.

DONE at McAllen, Texas, this 4th day of August 2020.

_____
Micaela Alvarez
United States District Judge

---

[448] *Cf.* Minute Entry (Dec. 17, 2019) (postponing certain issues in the case until others were resolved).
[449] *See* Dkt. No. 26.